## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 19-24539-CIV-MORENO

**HAPPY TAX FRANCHISING, LLC, et al.,**

                    **Plaintiffs,**

     **v.**

**JAMES HILL, *et al*.,**

                    **Defendants.**

## MOTION OF MELISSA SALYER WITH INCOPROATED MEMORANDUM TO DISMISS SECOND AMENDED COMPLAINT OF HAPPY TAX FRANCHISING, LLC AND MARIO COSTANZ FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant Melissa Salyer, by her counsel and pursuant to Rules 8(a), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves the Court to dismiss the second amended complaint (the "Complaint") of the plaintiffs, Happy Tax Franchising, LLC ("Happy Tax") and Mario Costanz (together with Happy Tax, the "Plaintiffs"), as follows:

1.      The Plaintiffs fail to state any plausible claim of defamation claim against Ms. Salyer.

2.      The Plaintiffs fail to state a prima facie case of personal jurisdiction over Ms. Salyer and, indeed, this Court has no such personal jurisdiction over her.

3.      Ms. Salyer relies on her affidavit dated May 21, 2020 as well as the arguments made and authorities identified in the incorporated memorandum of law that follows.

Accordingly, for the foregoing reasons, the Court should enter an Order dismissing the Plaintiffs' Complaint and granting other such relief as the Court deems appropriate.

<u>FACTS TAKEN FROM AFFIDAVIT OF MELISSA SALYER</u>

Attached to this motion as Exhibit "A" is a true and correct copy of the affidavit of Melissa Salyer dated May 21, 2020 (the "Salyer Affidavit"), in which she attests to the following facts:

1.      Ms. Salyer made the Salyer Affidavit in support of this motion to dismiss the Complaint. The facts set forth in the Salyer Affidavit are based on her personal knowledge.

2.      Ms. Salyer lives at 2405 Mathews Green Road, Virginia Beach, VA 23456. She moved to Virginia in 1983 and has lived there ever since.

3.      Ms. Salyer formerly was the Executive Vice President of Business Development for Happy Tax before she resigned effective September 20, 2019. During her entire tenure with Happy Tax, she lived in Virginia.

4.      During her tenure at Happy Tax, the company had no staffed office in Florida and, instead, rented a WeWork space in Florida as a mail drop.

5.      Happy Tax corporate meetings were conducted in Virginia during Ms. Salyer's tenure with the company.

6.      While an employee of Happy Tax, Ms. Salyer's duties did not otherwise require her to work in the State of Florida.

7.      During Ms. Salyer's tenure at Happy Tax, the electronic files of the company were not maintained in Florida nor were its computer servers.

8.      During Ms. Salyer's tenure at Happy Tax, the company's email account was hosted by Gmail, an email service owned by Google, a company with its main corporate offices in California.

9.      Ms. Salyer's current business, Franchise Discovery, LLC, is a Virginia company

2

and has an office in Virginia only.

10.     Franchise Discovery is a service provider akin to a broker who matches potential franchisees with franchisors.

11.     Franchise Discovery is not a tax return preparation company.

12.     Franchise Discovery has brokered no deals with a Florida resident.

13.     The franchise expo referred to in the Complaint was conducted entirely virtually (on line), and there were no simultaneous presentations or activities at any physical location.

14.     Monica Poirier, referred to in the Complaint, is a resident of Walpole, Massachusetts.

15.     Ms. Salyer emailed promotional materials to Ms. Poirier at an email address Ms. Poirier used previously, which address was then captured and saved in Ms. Salyer's phone contacts.

16.     The father of Ms. Salyer's daughter lives in Key West, Florida and Ms. Salyer used to visit Key West for the summer season before her divorce and before she began working for Happy Tax.

17.     Ms. Salyer used to own a small pet store in Key West, Florida, but she sold that business in 2009, and has conducted no business or business activity in Florida since.

18.     Ms. Salyer now visits Florida only for vacations and to take her daughter to visit her father, approximately once every two years.

19.     Ms. Salyer has never voted in Florida.

20.     Ms. Salyer has never held a Florida driver's license.

21.     Ms. Salyer has never owned real property in Florida.

22.     Ms. Salyer has no Florida mailing address.

<u>MEMORANDUM OF LAW</u>

I.     <u>APPLICABLE LEGAL STANDARDS GOVERNING THIS MOTION TO DISMISS</u>

When a defendant moves to dismiss a complaint on personal jurisdiction grounds pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court will engage in a two-step analysis. <u>See</u>, <u>e.g.</u>, <u>Miller v. Gizmodo Media Group, LLC</u>, 383 F. Supp.3d 1365, 1371 (S.D. Fla. 2019); <u>Klayman v. Judicial Watch, Inc.</u>, No. 13-20610-CIV-ALTONAGA, 2013 WL 4780139, at * 5 (S.D. Fla. Sept. 5, 2013).  First, the Court will determine if the local jurisdiction's long-arm statute is satisfied and then, if the exercise of jurisdiction over the movant comports with the Due Process Clause of the Fourteenth amendment to the United States Constitution. <u>Id</u>. In Florida, a United States District Court will only assert jurisdiction over a nonresident defendant if both prongs of this analysis are met. <u>See</u>, <u>e.g.</u>, <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990) ("Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.").  In response to Salyer's motion to dismiss, then, this Court must consider the Plaintiff's complaint through the lens of Florida's long-arm statute, Fla. Stat. §48.193(1) – (2), and then, only if the long-arm statute is satisfied, engage in a minimum contacts analysis.

Florida's long-arm statute recognizes both specific and general jurisdiction. <u>Gizmodo</u>, 383 F.Supp.3d at 1370.  Specific jurisdiction allows the Court to preside over nonresident defendants when the asserted cause of action arises from that defendant's conduct in the forum state. <u>Id</u>.  General jurisdiction, on the other hand, attaches when the defendant "engage[s] in substantial and not isolated activity within [the] state … whether or not the claim arises from that activity." Fla. Stat. §48.193(2). The Plaintiffs in this matter base their assertion of jurisdiction upon specific jurisdiction only: "This Court has personal jurisdiction over each Defendant

4

because … each Defendant's tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida were Defendants know Happy Tax is located… ." See [DE 36 ¶16]. See Fla. Stat. §48.193(1)(b) (commission of tort within the state).[1] As such, this Court must determine if Florida's specific long-arm statute applies, taking its guidance from the Florida Supreme Court or other Florida appellate courts absent any indication that the Florida Supreme Court would diverge from the holdings of those intermediate appellate courts. Klayman, 2013 WL 4780139, at *5.

The burden of proof scheme in this context places the initial burden on the plaintiff who is asserting personal jurisdiction. Gizmodo, 383 F.Supp.3d at 1370-71. The plaintiff must assert sufficient material facts in its complaint such that the question of personal jurisdiction would survive a directed verdict if the complaint's jurisdictional facts are accepted as true. Id. Only if the plaintiff satisfies this initial requirement does the burden then shift to the defendant who is contesting the Court's jurisdiction. Id. That defendant must submit affidavits or other evidence challenging the Plaintiff's jurisdictional allegations. Id. If the defendant satisfies its consequent burden, then the burden returns once more to the plaintiff who must substantiate the jurisdictional allegations of its complaint with affidavits or other competent evidence. Klayman, 2013 WL 4780139, at *5, *10 ("[I]t was [plaintiff's] burden to 'affirmatively support his' jurisdictional allegations and not merely rely on the allegations of the Amended Complaint.") (quoting Kim v. Keenan, 71 F. Supp.2d 1228, 1231 (M.D. Fla. 1999)).

---

[1] The Plaintiffs also assert in their Complaint that the so-called Franchisee Defendants have consented to this Court's jurisdiction through their franchise agreements, but because Ms. Salyer is not a Franchise Defendant and has executed no contract with the Plaintiff containing a Florida forum selection clause, this alternative jurisdictional avenue does not apply to her.

II.     THE COURT MUST FIRST DETERMINE IF THE PLAINTIFFS' COMPLAINT
        STATES A SUSTAINABLE CLAIM FOR RELIEF AGAINST MS. SALYER – THE
        RULE 12(b)(6) ANALYSIS

As noted by this Court in Klayman v. Judicial Watch, Inc.,

> The Court's consideration of whether personal jurisdiction exists
> over the Individual Defendants must be undertaken in the light of
> the claims presented, and the Court should therefore first
> determine whether the Amended Complaint states any claim for
> relief against the Individual Defendants, and if so, on what
> theories.

2013 WL 4780139, at *7.  Here, the Plaintiffs advance two groups of related claims against Ms.

Salyer. They advance misappropriation and breach of fiduciary duty claims against her arising

out of the alleged copying of business records. See [DE 36 ¶¶127-139 (Complaint Counts V and

VI]. The Plaintiffs also allege defamation claims against the "Defendants" which, presumably,

includes Ms. Salyer, arising from the alleged publication of defamatory emails concerning Mr.

Costanz and Happy Tax. See [DE 36 ¶¶102-113 (Complaint Counts I and II)]. It is this second

group of claims that cannot withstand a Rule 12(b)(6) examination.

According to Federal Rule of Civil Procedure 12(b)(6), Ms. Salyer is entitled to dismissal

if she can show that the Plaintiffs have not alleged sufficient facts with sufficient specificity such

that their entitlement to relief can be said to be more than speculative. Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007).   ). "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at

556). The allegations of the claim must be taken as true and must be read to include any theory

on which the plaintiff may recover. Masvidal v. United States Dep't of Justice, No. 09-61485-

CIV-DIMITROULEAS, 2010 WL 11606119, at *2 (S.D. Fla. Mar. 29, 2010) (citing Linder v.

Portocarrero, 963 F.2d 332, 334-36 (11th Cir. 1992) (in turn citing Robertson v. Johnston, 376

F.2d 43 (5th Cir. 1967)).  However, the Court's deference to the plaintiff's pleading does not extend to mere "threadbare recitals of a cause of action's elements, supported by mere conclusory statements ... ." Iqbal, 556 U.S. at 678. See also 2 Coquillette, et al., Moore's Federal Practice, at ΄12.34[1][b] and cases cited in n.13 (3d ed. 2009) ("Additionally, '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"); Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff=s obligation to provide 'grounds' for his 'entitle[ment] to relief= requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do... .").

It is acknowledged that Federal pleading is notice pleading. Nonetheless, a plaintiff must do more than make unsupported conclusions that it is entitled to relief. Indeed, the Supreme Court decision in Bell Atlantic Corp. v. Twombly began a movement toward a more careful contemplation of the standards of dismissal, and a more exacting consideration of the sufficiency of pleadings even in the notice pleading system of the Federal Courts. 550 U.S. 544 (2007). Recognizing that the District Courts "must retain the power to insist upon some specificity in pleadings before allowing a potentially massive factual controversy to proceed," id. at 558 (citing Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 528 n.17 (1983)), the Supreme Court has made clear that the rote regurgitation of the elements of a cause of action giving rise to, at best, only the merest possibility of relief is not sufficient under Rule 8 of the Federal Rules of Civil Procedure. Id. at 554-560. Rather, the facts alleged in a complaint must be sufficiently specific such that they "state a claim to relief that is plausible on its face." Id. at 570. See also Owens-Benniefield v. BSI Fin. Servs., No. 19-13962, 2020 WL 1527721, at

7

*1 (11th Cir. Mar. 31, 2020) ("To be considered plausible, the allegations in the complaint must raise the right to relief beyond a speculative level.").

To state a claim for defamation, the Plaintiffs must allege, among other things, that "'the defendant published a false statement… .'" Alan v. Wells Fargo Bank, N.A., 604 F. App'x 863, 865 (11th Cir. Mar. 24, 2015) (quoting Valencia v. Citibank Int'l, 728 So.2d 330, 330 (Fla. 3rd DCA 1999)). To make out the claim against Ms. Salyer, then, these Plaintiffs have to identify in their Complaint a false statement that was published by Ms. Salyer. Alleged defamatory statements are mentioned in two parts of the Complaint.  A nondescript reference to such statements is contained in paragraphs 61 through 65 where the statements are attributed to the Franchisee Defendants. [DE 36 ¶¶61-65]. Ms. Salyer is mentioned only in connection with her alleged role in bringing the defamation to the attention of Costanz and another franchisee. [Id. at ¶62]. She is certainly not alleged to have been a participant in the making and publication of the alleged defamatory statements. [Id].

Later in the Complaint, the Plaintiffs describe an alleged campaign of defamatory emails sent anonymously from international email accounts. [DE 36 ¶¶79-99].[2] Of course, because the emails were anonymous, the Plaintiffs do not identify their author. Indeed, Plaintiffs do not even attempt to make a circumstantial case that the author was Ms. Salyer. Because Plaintiffs have utterly failed to allege any facts tending to show that Ms. Salyer was an author and publisher of any of the alleged defamatory emails, their claim against her is nothing more than speculation and does not satisfy the pleading standard set down in Twombly. As such, the defamation claims

---

[2]  Curiously, the Plaintiffs do not allege that the emails were sent to or read by a Florida resident. [DE 36 ¶¶79, 81, 84 - 85, 88 – 89, 91, 94, 96]. This alone is grounds for dismissing the defamation claims. See, e.g., Gizmodo, 383 F.Supp.3d at 1372 ("Plaintiff does not allege [defendant's] Twitter post was accessed by a third party in Florida. … Although Plaintiff need not reside in Florida to benefit from the long-arm statute, Plaintiff does have to allege harm in Florida which he does not do. Plaintiff thus fails to show the Court has long-arm jurisdiction over [defendant]." (emphasis in the original).

against Ms. Salyer may be dismissed even before the Court engages in its analysis of personal jurisdiction, which is addressed next.

III.     THE COURT HAS NO PERSONAL JURISDICTION OVER MS. SALYER

    A.     The Facts of the Case against Ms. Salyer do not Satisfy Florida's Long-Arm Statute

Florida's long-arm statute is strictly construed. Rexam Airspray, Inc. v. Arminak, 471 F. Supp.2d 1292, 1298 (S.D. Fla. 2007); Cosmopolitan Health Spa, Inc. v. Health Indus., Inc., 362 So.2d 367, 368 (Fla. 4th DCA 1978). Thus, some courts have held that section (1)(b), which affords the court jurisdiction over defendants who commit torts "within this state," does not apply when the alleged tort has been committed outside of Florida as is alleged here.  There is, admittedly, a split among the authorities, and other courts have concluded that subsection (1)(b) might nonetheless apply to a tort committed outside the forum state by a nonresident so long as the harm is directed to Florida.  Compare, e.g., Texas Guaranteed Student Loan Corp. v. Ward, 696 So.2d 930, 932 (Fla. 2nd DCA1997) ("The occurrence of injury alone in Florida does not satisfy section 48.193(1)(b)") with Wood v. Wall, 666 So.2d 984, 986 (Fla. 3rd DCA1996) (allegations that tort committed outside of Florida by nonresidents sufficient to create jurisdiction under subsection (1)(b) when the wrongdoing was calculated to cause injury in Florida).  See generally Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999) (Court describes the split among Florida courts).  The Eleventh Circuit adopted the alternative, targeted harm view in its Posner decision, and, in the absence of guidance from the Florida Supreme Court, the Florida federal District Courts follow Posner. Therefore, when a non-forum tort committed by a nonresident is directed to a Florida resident or corporation, and the resulting harm is felt "exclusively or primarily in Florida," the Florida federal District Courts have concluded that subsection (1)(b) of Florida's long-arm statute is satisfied.  See, e.g., White Wave Int'l Labs, Inc.

v. Lohan, No. 09-CV-1260-T-33MAP-HERNANDEZ COVINGTON, 2011 WL 2669658, at *3
(M.D. Fla. July 7, 2011) ("However, the cases in which the Eleventh Circuit has applied section
(1)(b) to foreign torts causing injury within Florida, the conduct was directed at Florida residents,
corporations, or property, and the harm was felt exclusively or primarily in Florida."); Kernel
Records Oy v. Mosley, No. 09-21597-CIV-TORRES, 2010 WL 2812565, at *5 (S.D. Fla. July 5,
2010) ("In cases where the Eleventh Circuit applied section (1)(b) to foreign torts causing injury
within Florida, that conduct was directed at Florida residents, corporations, or property, and the
harm was felt exclusively or primarily in Florida."). See also Klayman, 2013 WL 4780139, at *8
("Although the term 'arising from' [contained in Fla. Stat. §48.193(1)] is somewhat broader than
the concept of proximate cause, under Florida law there must nevertheless be some 'direct
affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities
within the state.") (quoting Sun Trust Bank v. Sun Int'l Hotels Ltd., 184 F. Supp.2d 1246, 1269
(S.D. Fla. 2001)).

As noted previously, the burden rests with the Plaintiff to assert sufficient material facts
in the complaint to make out a plausible basis for personal jurisdiction.  The Complaint in this
case, however, contains no such facts.  First, as argued in Section II, no facts are advanced
concerning the author of the alleged anonymous, defamatory emails and all other allegedly
defamatory statements are attributed to the Franchisee Defendants. Certainly no facts concerning
that alleged tort tie Ms. Salyer to the alleged wrongdoing.  If no relief can be granted to the
Plaintiffs on the Complaint's defamation related claims as alleged, then the same Complaint
allegations cannot satisfy the Plaintiffs' initial burden of alleging sufficient facts to make out
person jurisdiction over Ms. Salyer on those same claims.

Consequently, the only remaining tort claims against Ms. Salyer are the misappropriation and breach of fiduciary duty claims arising out of the alleged copying of Happy Tax customer information. [DE 36 ¶¶70-78, 127-139].  The only allegation in the Complaint concerning the locus of those torts and the alleged target of the resulting harm is the following unsupported conclusion advanced at the very beginning of the pleading: "[E]ach Defendant's tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida… ." [Id. at ¶16]. The use of the phrase "specifically designed" seems to imply a significant quantum of supporting detail, but one searches in vain to find it in the pleading. Even the description of the alleged harm, such as it is, is not specific to Florida or even felt disproportionately there. Id. at ¶66. See, e.g., Gizmodo, 383 F.Supp.3d at 1373-74 ("In short, unlike the defendants in Calder [v. Jones, 465 U.S. 783 (1984)], [the defendant here] had no reason to believe the 'brunt' of Plaintiff's injury would be felt in Florida. … Plaintiff thus cannot establish [defendant] purposefully directed his Twitter post to Florida under the Calder effects test."). Indeed, the Plaintiffs appear to blame the alleged harm on the Franchisee Defendants, [DE 36 ¶¶67-68], and further suggest that the harm was visited on Mr. Costanz only, a New York resident. [Id. at heading preceding ¶60 ("Defendants Deliberately Destroy Happy Tax and *Injure Costanz*") (emphasis added)].[3] The Complaint acknowledges that Ms. Salyer is a Virginia resident and that the alleged tort she is accused of was committed outside of Florida. [DE 36 ¶¶ 13, 16]. The Complaint, however, does not describe the alleged harms resulting from the tort

---

[3]  Indeed, both the United States Supreme Court and the United States District Court for the Southern District of Florida have concluded that the forum court has no personal jurisdiction over a nonresident defendant when the plaintiff, who is also a nonresident, "does not claim to have suffered harm in Florida more than anywhere else, and the conduct giving rise to Plaintiff's claim occurred elsewhere." Gizmodo, 383 F. Supp.3d at 1375. See also Bristol-Myers Squibb Company v. Superior Court of California, ___ U.S. __, 137 S. Ct. 1773 (2017) (holding that a California court had no jurisdiction over a nonresident defendant because the plaintiffs were "not California residents and d[id] not claim to have suffered harm in that State … [and] all the conduct giving rise to the nonresidents' claims occurred elsewhere.").

much less put forth a factual case that Florida was the target of those alleged harms. As such, Plaintiffs have failed to meet their initial burden of demonstrating the Court's personal jurisdiction over Ms. Salyer.

Even if this Court determines that the bald conclusion in paragraph 16 of the Complaint satisfies the Plaintiffs' initial burden, Ms. Salyer's affidavit effectively rebuts any assertion of personal jurisdiction. According to the Salyer Affidavit, Ms. Salyer has lived in Virginia for 37 years including the time of her entire tenure with Happy Tax (Salyer Affidavit at ¶¶3-4). While employed by Happy Tax, she never worked in Florida nor does Happy Tax even have staffed offices in the state (Id. at ¶¶5-7). The electronic files of Happy Tax are not stored in servers located in Florida, and its email service provider is located in California (Id. at ¶¶8-9). The only alleged use of Happy Tax customer information described in the Complaint is an email sent by Ms. Salyer to a Massachusetts resident about a franchise expo that was to be conducted entirely on-line (Id. at ¶¶14-15). Moreover, Ms. Salyer's affidavit indicates that she obtained the email of the Massachusetts resident from her phone contacts. (Id. at ¶16). Finally, Ms. Salyer's new business does not, in fact, compete with Happy Tax or any other tax preparation business, is located in Virginia, has no ties to Florida and has yet to provide any services to a Florida resident. (Id. at ¶¶10-13). The alleged misappropriation and duty breach torts, then, involve no contacts with Florida, and the Plaintiffs cannot satisfy even the permissive Florida long-arm statute.

The facts of the case at bar are on all four with those considered by the Court in White Wave Int'l Labs, Inc. v. Lohan, No. 09-1260-T-33MAP – HERNANDEZ COVINGTON, 2010 WL 3835873 (M.D. Fla. Sept. 29, 2010). There, a Florida company sued a residents of Nevada and California for misappropriation of confidential information and violation of the Uniform

12

Trade Secrets Act. Id. at *1.  The defendants moved to dismiss the complaint arguing that the United States District Court for the Middle District of Florida had no personal jurisdiction over them. Id. The plaintiff, in reply, argued that the Court's exercise of personal jurisdiction would satisfy Florida's long-arm statute and, specifically, Fla. Stat. §48.193(1)(b), because the defendants' alleged tort "caused injury to Plaintiff within Florida" and because "defendant does not have to be physically present in the state to commit a tort under §48.193(1)(b)." Id. at *2-*3.

The District Court agreed with the defendants that "the tort of misappropriation of trade secrets is not a 'tortious act within the state' where the improper disclosure occurs outside of Florida" relying on the Florida intermediate appellate decision in Arch Aluminum & Glass Co., Inc. v. Haney, 964 So.2d 228 (Fla. 4th DCA 2007). Id. at *3. Acknowledging Posner, the District Court nonetheless observed that the harm directed at the forum state must be "felt exclusively or primarily in Florida." Id. at *4.  Like the misappropriation in Arch Aluminum, where the "distribution of the confidential information occurred in Nevada and Arizona, and therefore, the acts of the defendant did not result in a tortious act in Florida," the District Court concluded that "the alleged misappropriation which occurred outside of the state … was not directed at Florida residents, corporations or property." Thus, the Court concluded that the alleged misappropriation of trade secrets "occurring outside of the state and leading to the damages alleged is not sufficient to satisfy Florida's long-arm statute." Id.

It is respectfully submitted that there is no principled distinction between the facts of White Wave and those before this Court.  A similar outcome therefore should result – the dismissal of the Plaintiff's Complaint for lack of personal jurisdiction over Ms. Salyer. See id. at *5.

B.      The Facts of the Case against Ms. Salyer Do Not Satisfy Due Process
        under the Fourteenth Amendment of the United States Constitution

Even if this Court determines that the Eleventh Circuit's more permissive approach to the

Florida long-arm statute is satisfied here on Plaintiffs' anemic Complaint allegations, the

Plaintiffs still must satisfy the stricter[4] minimum contacts analysis of the Fourteenth

Amendment.

> In specific personal jurisdiction cases, the Eleventh Circuit applies
> a three-part due process test examining whether (1) the plaintiff's
> claims arise out of or relate to at least one of the defendant's
> contacts with the forum; (2) the nonresident defendant
> purposefully availed himself of the privilege of conducting
> activities within the forum state, thereby invoking the benefit of
> the forum state's laws; and (3) the exercise of personal jurisdiction
> comports with traditional notions of fair play and substantial
> justice.

Gizmodo, 383 F.Supp.3d at 1372. See also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

(1945). In essence, this analysis requires that the nonresident defendant's contacts with the forum

state be such that she "should reasonably anticipate being haled into court there." World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Louis Vuitton Malletier, S.A. v.

Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013). The nonresident's contacts with the forum state

must be "continuous and systematic." Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010)

(quoting Helicpteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). Indeed,

the contacts "must be so extensive to be tantamount to [a defendant] being constructively present

---

[4]  "If the long-arm statute applies, the second step requires the trial court to decide whether 'minimum
contacts' exist between the defendant and the forum state to satisfy due process. … The due process
analysis is 'a more restrictive requirement' than the 'broad grant of jurisdiction' under the long-arm
statute and is governed by precedent from the Supreme Court of the United States interpreting the Due
Process Clause of the United States Constitution." Marina Dodge, Inc. v. Quinn, 134 So. 3d 1103, 1106
(Fla. 4th DCA 2014) (quoting Caiazzo v. Am. Royal Arts Corp., 73 So.3d 245, 250-51 (Fla. 4th DCA
2011)) (some citations omitted, emphasis added).

in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Exhibit Icons, LLC v. XP Cos., LLC, 609 F. Supp.2d 1282, 1295 (S.D. Fla. 2009) (*quoting* Baker v. Carnival Corp., No. 06-21527-CIV-HUCK, 2006 WL 3360418, at *2 (S.D. Fla. Nov. 20, 2006)). Further, under Florida law, the contacts must be of a business nature. Crowe v. Paragon Relocation Res., Inc., 506 F. Supp.2d 1113, 1122 (N.D. Fla. 2007) ("Florida courts have interpreted 'substantial and not isolated activity' to mean 'continuous and systematic general business contact.'") (*quoting* Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D. Fla.2003)). The Plaintiff bears the burden on the first two prongs of the analysis, and the defendant the third. Louis Vuitton, 736 F.3d at 1355.

As argued above, there are no tort-related contacts with the State of Florida. See, supra, Section III.A of this Memorandum.   Moreover, the Complaint is entirely devoid of facts describing any general contacts Ms. Salyer may have with Florida.  In fact, her contacts with the state are inconsequential, not business related and have no connection to the causes of action raised in the Complaint. (See generally, Exhibit "A," Salyer Affidavit).  She occasionally visits Florida for vacation or to take her daughter to visit her father who resides in Key West (Id. at ¶¶17, 19). She once owned a small pet shop in Key West but sold that business eleven years ago (Id. at ¶18). She has never voted in Florida or held a Florida driver's license (Id. at ¶¶20-21). She does not own property in Florida and does not have a mailing address there (Id. at ¶¶22-23). Quite simply, Ms. Salyer's few contacts with the state of Florida are not such that she might expect to be haled into a Florida Court. Klayman, 2013 WL 4780139, at *11-*12.

Moreover, proceeding in Florida would not comport with "traditional notions of fair play and substantial justice." Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008). Ms.

Salyer lives in Virginia and would have to travel approximately 1000 miles for Court appearances. She is a single parent and would have to leave her young daughter to do so. Finally, Happy Tax's operations, in fact, are centralized in New York where Mr. Costanz resides, so litigation in this Court would not only require travel to Florida to the South, but also New York to the North – an area spanning some 1300 miles. This significant and costly inconvenience, coupled with Florida's minimal interest in resolving this dispute, tips the scale of fair play and substantial justice decidedly in Ms. Salyer's favor. Accord <u>Gizmodo</u>, 383 F.Supp.3d at 1375-76; <u>Klayman</u>, 2013 WL 4780139, at *12.

IV.     <u>CONCLUSION</u>

For all of the foregoing reasons, Ms. Salyer respectfully requests this Court to dismiss all claims against her contained in the Plaintiffs' Complaint.

Respectfully submitted,                    */s/ Ellen M. McDowell*
                                            Ellen M. McDowell
                                            emcdowell@mcdowelllegal.com
                                            **McDOWELL LAW, PC**
                                            46 West Main Street
                                            Maple Shade, NJ 08052
                                            Telephone: (856) 482-5544
                                            Facsimile: (856) 482-5511
                                            Admitted *Pro Hac Vice*
                                            *Lead Counsel for Melissa Salyer*

                                            Lonnie L. Simpson, Esq., FBN 821871
                                            lsimpson@shutts.com
                                            **SHUTTS & BOWEN LLP**
                                            4301 W. Boy Scout Blvd., Suite 300
                                            Tampa, Florida 33607
                                            Telephone: (813) 229-8900
                                            Facsimile: (813) 229-8901
                                            *Local Counsel for Melissa Salyer*

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 22, 2020, I electronically filed Melissa Salyer's Motion to Dismiss Second Amended Complaint, Incorporated Memorandum of Law and Exhibit with the Clerk of the Court via CM/ECF which will send an electronic notice to counsel for the plaintiff, Jeffrey M. Berman, Esq., 1722 Sheridan Street No. 225, Hollywood, Florida 33020, jeff@jmbermanlaw.com, telephone: (305) 834-4150.

*/s/ Lonnie L. Simpson*
ATTORNEY