## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-24539-CIV-MORENO

HAPPY TAX FRANCHISING, LLC *et al.*,

    Plaintiffs,
vs.

JAMEY HILL *et al.*,

    Defendants.
_____/

### PLAINTIFFS' RESPONSE TO MELISSA SALYER'S MOTION TO DISMISS [D.E. 51] *AND* PLAINTIFFS' MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY

    Plaintiffs, Happy Tax Franchising LLC ("**Happy Tax**") and Mario Costanz ("**Costanz**") (collectively, "**Plaintiffs**"), through undersigned counsel, file their Response to the Motion to Dismiss filed by Defendant, Melissa Salyer ("**Salyer**"), and file their Motion for Leave to Take Jurisdictional Discovery from Salyer prior to a ruling on Salyer's jurisdictional arguments.

### INTRODUCTION

    Salyer's Motion seeks dismissal for two reasons. Relying on her affidavit, Salyer argues the entire case against her should be dismissed because this Court lacks specific personal jurisdiction over her. [D.E. 51-1] ("**Affidavit**"). In contrast, Salyer's contentions in her Affidavit, along with the exhibits attached hereto, provide sufficient facts establishing a prima facie case of personal jurisdiction over Salyer under Florida's Long-Arm Statute and demonstrating that exercising personal jurisdiction over Salyer satisfies due process requirements. At a minimum, Salyer's Affidavit and the exhibits attached hereto inject issues and raise potential inconsistencies in Salyer's Affidavit that cannot be resolved by the Court, or adequately addressed by Plaintiffs herein, absent some limited jurisdictional discovery and supplemental briefing before the Court rules on Salyer's jurisdictional arguments.

Short of dismissing the entire action, Salyer contends Plaintiffs' defamation claims in Counts I and II of Plaintiffs' Second Amended Complaint ("**SAC**") do not state claims against her under Rule 12(b)(6). Salyer's Motion at 6-9. Salyer ignores the factual allegations in the SAC that more than provide her fair notice of the substance of the defamatory statements and the bases for Counts I and II, and establish plausible grounds for Plaintiffs' entitlement to relief on these claims. Notably, while the SAC also alleges claims against Salyer for Misappropriation of Trade Secrets (Count V) and Breach of Fiduciary Duty and Duty of Loyalty (Count VI), Salyer has not moved to dismiss these claims for failure to state a claim. Salyer's Motion at 6. For purposes of Salyer's Motion, the Court must therefore assume Counts V and VI of the SAC state viable causes of action.

For these and the other reasons set forth below, Salyer's request to dismiss Counts I and II should be denied, and Plaintiffs should be granted leave to conduct limited jurisdictional discovery from Salyer prior to a ruling on Salyer's jurisdictional arguments.

## PLAINTIFFS' RESPONSE TO SALYER'S MOTION TO DISMISS

### A.  Standard on a Motion to Dismiss For Lack of Personal Jurisdiction.

In *LS Energia, Inc. v. Geva Engineering Group LS Energia, Inc.*, the court stated:

> Under Florida law, a Florida court may exercise personal jurisdiction over a nonresident defendant pursuant to a two-prong test: first, whether plaintiff has alleged sufficient facts to satisfy the requirements of Florida's long-arm statute, Florida Statute § 48.193; second, whether plaintiff has demonstrated that defendant has sufficient minimum contacts' with Florida to satisfy due process requirements….
>
> …The court accepts the facts in the complaint as true, unless those allegations are controverted by the defendant's affidavits. In the event of a conflict, all reasonable inferences should be made in favor of the plaintiff. The Court may make factual findings so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop the record.

2013 WL 12145901, at *2 (S.D. Fla. Oct. 24, 2013).

2

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

"There are two types of personal jurisdiction: specific and general." *Miller v. Gizmodo Media Group, LLC,* 383 F. Supp. 3d. 1365, 1370 (S.D. Fla. 2019) (granting a motion to dismiss on jurisdictional grounds "**[f]ollowing jurisdictional discovery**"); *see also* Salyer's Motion at 4, 5, 8 n.2, 11 (citing *Gizmodo Media Group, LLC*). "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose, whereas specific jurisdiction authorized jurisdiction over causes of action arising from or related to the defendant's actions within [a state.]" *Gizmodo Media Group, LLC,* 383 F. Supp. 3d. at 1370 (citations omitted). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant." *Id.* "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.*

As set forth below, Plaintiffs submit they have established a prima facie case for both general and specific personal jurisdiction over Salyer. Alternatively, Plaintiffs should be afforded a reasonable opportunity to further develop the record through limited jurisdictional discovery upon Salyer prior to a ruling on her jurisdictional arguments. *See* Plaintiffs' Motion for Leave to Take Jurisdictional Discovery at 13, *infra.*

**B.     Salyer is Subject to Personal Jurisdiction Even on This Limited Record.**

    **i.     Salyer's Affidavit and the Exhibits Attached Hereto Establish a Prima Facie Case of General Personal Jurisdiction Under Section 48.193(2).**

Under Florida's Long-Arm Statute "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Salyer's contentions in her Affidavit, along with the exhibits attached hereto, provide sufficient facts establishing a prima facie case of general personal jurisdiction over Salyer under Florida's Long-Arm Statute.

For example, Salyer previously owned a business in Florida which she sold in 2009. Salyer's Affidavit at ¶ 16; *see also* "Business Spotlight-Dog 30." Keynoter (June 21, 2008) at 22 (discussing Salyer's Key West pet store), attached as **Exhibit "1."** According to Salyer's Linkedin profile, Salyer currently has a Florida telephone number with a (305) area code ("**Linkedin Profile**"), attached as **Exhibit "2."**[1] Salyer's Linkedin Profile shows a gap in her employment history from 1998 through 2010 which coincides with her owning her pet store in Key West, Florida. Linkedin Profile at 3. During the time Salyer owned her Florida pet store, Salyer received at least one Florida Uniform Traffic Citation in Key West, Florida ("**Traffic Citation**"), attached as **Exhibit "3."** To this day, Salyer still travels to Florida every other year to vacation and "to take her daughter to visit her father" who still resides in Key West, Florida. Salyer Affidavit at ¶ 18. In fact, her present employer, The Franchise Consulting Company, currently maintains an office in South Miami, Florida ("**Franchise Consultants Webpages**"), attached as **Exhibit "4."**[2]

In sum, these undisputed facts demonstrate Salyer operated a business in Florida for some time, resided in Florida and/or spent considerable time in Florida, is currently employed by a company that maintains an office in South Miami, Florida, and still travels to Florida at least every other year to vacation and because of her familial ties to Florida. Together, these facts are sufficient to establish a prima facie case of general personal jurisdiction over Salyer under section 48.193(2) of Florida's Long-Arm Statute.[3]

---

1. *https://www.linkedin.com/in/melissasalyer*.

2. *https://www.thefranchiseconsultingcompany.com/*.

3. Salyer's Motion does not analyze whether she is subject to general personal jurisdiction under section 48.193(2) because "Plaintiffs in this matter base their assertion of jurisdiction upon specific jurisdiction only…." Salyer's Motion at 4. Because Salyer's Affidavit raises new facts that establish a case for general personal jurisdiction over Salyer, or at a minimum warrant limited jurisdictional discovery on these issues, Plaintiffs will be seeking leave to amend their SAC to assert general personal jurisdiction as an additional basis to support jurisdiction over Salyer.

### ii. Plaintiffs Allege a *Prima Facie* Case of Specific Personal Jurisdiction Under Section 48.193(1)(a)(2).

A court may exercise specific personal jurisdiction over a non-resident defendant who engaged in one of the enumerated acts listed under Florida's Long-Arm Statute:

> (1)(a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself, and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action from the doing of any of the following acts:
> \*   \*   \*   \*
> (2) Committing a tortious act within this state….

Fla. Stat. § 48.193(1)(a)(2). "The Eleventh Circuit has consistently applied the broader construction of [this subsection] and found personal jurisdiction over someone who commits a tortious act outside the state that results in harm inside the state." *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329 (S.D. Fla. 2010). "[W]e are bound in this case to follow this court's firmly established precedent, which interprets subsection [48.193(1)(a)(2)] to apply to defendants committing tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

" 'Under Florida law, a nonresident defendant commits a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Focus Management Group USA, Inc. v. King,* 2014 WL 12639960, at *4 (M.D. Fla. May 13, 2014) (emphasis in original) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013) (citing *Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008)). Thus, in *Focus Management Group USA, Inc.* the court held that the defendant's "alleged conduct of tortuously interring with [the plaintiff], although not actually taking place in Florida, is sufficient to satisfy the long-arm because [the plaintiff] is a Florida company and the injury resulting from that conduct caused injury to [the plaintiff] in Florida." *Focus Management Group USA, Inc.*, 2014 WL 12639960 at *4.

Similarly, in *Enviracarbon, Inc. v. Couch* the court found that "regardless of the failure to plead that Defendants were present in Florida when they committed the offending acts," the Long-Arm Statute had been met because the complaint "pleads that Plaintiff's principal place of business is in Florida and pleads that it suffered injuries in Florida as a result of the torts alleged." 2011 WL 4501058, at *3-4 (M.D. Fla. June 20, 2011) (denying a motion to dismiss for lack of personal jurisdiction). These cases compel the same result here.

It is undisputed Happy Tax is a Florida company with its principal place of business in this state. SAC at ¶ 3 [D.E. 36]. The SAC alleges the Court has personal jurisdiction over Salyer because her "tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida where Defendants know Happy Tax is located…." *Id.* at ¶ 16. To that end, Count V of the SAC states a valid claim against Salyer for Misappropriation of Trade Secrets alleging as follows: "As a direct and proximate result of Salyer and Pevin's misappropriation of trade secrets belonging to Happy Tax, Happy Tax has, and <u>continues to suffer, damages in the State of Florida</u>." *Id.* at ¶ 134 (emphasis added).

Count VI of the SAC then states a valid claim against Salyer for Breach of Fiduciary Duty and Duty of Loyalty alleging: "As a direct and proximate result of Salyer and Pevin's breach of fiduciary duty and breach of loyalty, Happy Tax has, and <u>continues to suffer, damages in the State of Florida</u>." *Id.* at ¶ 139 (emphasis added). More importantly Count VI alleges:

> 136. While acting as officers of Happy Tax, Salyer and Pevin each owed Happy Tax a duty of loyalty <u>not to unfairly compete with Happy Tax by carrying on a competing business while still employed by Happy Tax</u>.
>
> \*         \*         \*         \*
>
> 138. Salyer and Pevin each breached their duty of loyalty each owed to Happy Tax <u>when they unfairly competed with Happy Tax by carrying on a competing business while still employed by Happy Tax</u> and using the ill-gotten Happy Tax confidential and proprietary business information they misappropriated before leaving the company.

SAC at ¶¶ 136, 138 (emphasis added).

Thus, while Count V seeks damages due to Salyer's misappropriation of confidential business information and trade secrets belonging to Happy Tax (where the location from which the ill-gotten documents were improperly acquired and the place of disclosure may be relevant to determining jurisdiction), in contrast Count VI seek damages sustained by Happy Tax in Florida resulting from Salyer's unlawful competition with Happy Tax (allegations that are not rebutted by Salyer's Affidavit).[4] Because Salyer ignores the basis for Count VI, and only focuses on the allegations underlying Count V, Salyer's argument that "the tort of misappropriation of trade secrets is not a tortious act with the state where the improper disclosure occurs outside of Florida" is misplaced and should be rejected.

The SAC alleges Salyer directed an intentional tort towards Happy Tax which Salyer knew was principally located in Florida, the effects of which were suffered by Happy Tax in this forum. *See* SAC at ¶¶ 16, 127-139. Thus, regardless of where Salyer claims she committed the tortious acts, she is subject to this Court's specific jurisdiction under Section 48.193(1)(a)(2) because "[u]nder Florida law, a nonresident defendant commits a tortious act within [Florida] when he commits an act *outside* the state that causes *injury within Florida*." *Focus Management Group USA, Inc.,* 2014 WL 12639960 at *4; *see also Future Technology Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247, 1250 (11th Cir. 2000) (holding a motion to dismiss a tort claim for lack of personal jurisdiction does not require a full-scale inquiry into whether the defendant committed a tort; rather when a plaintiff alleges a claim, and the record is in dispute as to the accuracy of the

---

4. Salyer's Affidavit alleges that "Franchise Discovery has brokered no deals with a Florida resident." Salyer Affidavit at ¶ 13. This statement, however, does not rebut the allegations in Count VI that Salyer unfairly competed with Happy Tax and harmed the company in Florida. Indeed, even if Franchise Discovery has not yet brokered any deals with a Florida resident, Salyer's contention does not tell us the extent to which Salyer improperly used Happy Tax's ill-gotten confidential business materials to compete with Happy Tax by marketing and soliciting Florida residents to purchase a franchise other than a Happy Tax franchise. These issues are further addressed in Plaintiffs' request for jurisdictional discovery. *See* Plaintiffs' Motion for Leave to Take Jurisdictional Discovery at 13, *infra.*

claim, the court may construe the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long–Arm Statute).

### iii. Exercising Personal Jurisdiction Over Salyer Satisfies Due Process Because Salyer Has Minimum Contacts With Florida.

Florida courts have recognized the term 'substantial and not isolated activity,' in the long arm statute to be the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Due Process Clause of the Fourteenth Amendment." *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1327 n.2 (S.D. Fla. 2009). "Therefore, the analyses of jurisdiction under § 48.193(2) and the Due Process Clause merge." *Id.*

Here, the Due Process requirements are satisfied because, as argued above, Salyer's contacts with this forum are sufficient to establish a prima facie case of general personal jurisdiction over Salyer. *See* Section B(i), *supra*. Indeed, it is undisputed that Salyer previously owned a business in Florida for many years, maintains a current Florida phone number, travels to Florida every other year for vacation and to visit her ex-husband, and previously received a Florida Uniform Traffic Citation which itself could have resulted in a court hearing if Salyer chose to dispute it. *Id.* Salyer's contention that her "few contacts with the state of Florida are not such that she might expect to be haled into a Florida Court" must be squarely rejected. Salyer's Motion at 15.[5]

---

5. Salyer also argues that proceeding in Florida would offend "traditional notions of fair play and substantial justice" because she "lives in Virginia and would have to travel approximately 1000 miles for Court appearances [and] is a single parent and would have to leave her young daughter to do so." Salyer's Motion at 14-15. However, modern technology minimizes these concerns by allowing Salyer to attend hearings, if any, telephonically or through other electronic means, such as attending proceedings or depositions through Zoom. Thus, while proceeding in Florida may be inconvenient to Salyer, because of technology it does not impose a burden in violation of any Due Process concerns. In any event, since Salyer's current employer maintains a Florida office such that Salyer may also travel to Florida for business, limited jurisdictional discovery is further warranted to flesh out these Due Process issues prior to a ruling on Salyer's Motion.

### C. Plaintiffs' Defamation Claims are Facially Plausible, Well Pled and Factually Supported.

Salyer does not dispute Plaintiffs have sufficiently described "the content of the alleged defamatory statement[s], the timeframe of publication, and the manner of damage to the plaintiff." *SZS Solutions, Inc. v. Brother Int'l Corp.*, 2018 WL 3126220, at *2 (S.D. Fla. June 26, 2018). Indeed, Plaintiffs specify precisely when these statements were made, quote these statements verbatim, identify the groups of people who received them, and the defamatory nature of the statements at issue and the harm flowing from them are self-evident. *See* SAC at ¶¶ 79-94.

Instead, Salyer argues Plaintiffs' defamation claims do not state plausible claims against her because Plaintiffs have not alleged "any facts tending to show that Ms. Slayer was an author and publisher of any of the alleged defamatory emails." Slayer Motion at 8. Plaintiffs submit the SAC as currently pled provides factual support sufficient to state plausible defamation claims against Salyer pursuant to Rule 8. *See, e.g., Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at *1-2 (M.D. Fla. July 25, 2017) ("The standard on a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail on his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations."); *SZS Solutions, Inc.*, 2018 WL 3126220 at *2 ("[A] well-pleaded complaint under Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.").

In *Five for Entertainment S.A. v. Rodriguez,* the plaintiff brought a defamation claim asserting that various defendants published false and defamatory statements concerning plaintiff in a press release provided to the media, which was also posted online and available to the public at large. 877 F. Supp. 2d 1321, 1326 (S.D. Fla. 2012). "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Id.* (citations omitted). Finding the plaintiff "fails to allege facts to support any of the elements of a defamation claim[,]" the court held:

> The defamation claim here involves both the press release and a number of statements Baldiri purportedly uttered in the days or weeks following the November 17, 2010 announcement. With respect to the statements made by Baldiri, Plaintiffs failed to allege when those statements were made and failed to include a sufficient description of the statements….In the absence of the necessary facts—when the statements were made—and an adequate description of the statements, the defamation claim as it relates to Baldiri's statements must be dismissed with leave to plead anew.
>
> The defamation claim based on the press release must also be dismissed. Plaintiffs have alleged 'on information and belief' that the statements made in the press release were made with the knowledge, consent and approval of all of the Defendants. **While this form of pleading is permitted, a plaintiff is still required to allege with particularity the factual basis upon which the information and belief was founded. Plaintiffs have merely alleged that the press release on Icaro's letterhead was published on Daddy Yankee and Icaro's website. There are not allegations, other than Plaintiffs' bare assertion on 'information and belief' that would implicate EC Records, Ayala or Baldiri in the publication of those statements**….Accordingly, the Court will dismiss the defamation claim with leave to re-plead….

*Id.* at 1328-29 (emphasis added) (internal citations omitted).

Here, however, Plaintiffs' SAC clearly describes the content of the defamatory statements, describes the context in which such statements were made, and precisely dates when such statements were published. *See* SAC at ¶¶ 79-94. The SAC also alleges that the defamatory statements were "created and published in concert by Defendants, and each Defendant knowingly disseminated it to third parties." *Id.* at ¶ 82; *accord id.* at ¶ 84 ("On October 14, 2019, another anonymous email believed to have originated from and/or been disseminated by Defendants coming from 'Team Happy Tax happytax@protonmail.com,' containing no subject line, was sent to Knox Wimberly….").

Because the defamatory emails were sent anonymously, the SAC then provides facts supporting Plaintiffs' plausible belief that the defamatory content at issue was created, published and originated with Defendants (which include Salyer). *See id.* at ¶ 80, 82, 93, 94, 96, 97. Indeed, while *Five for Entertainment S.A.* did not involve *anonymous* publications, this case does—a fact Defendants are each using to their advantage. Unlike the scant allegations in the

*Five for Entertainment S.A.* complaint, which failed to allege any of the elements needed to sustain a defamation claim, the SAC in this case does. The fact Plaintiffs cannot yet definitively say that Salyer is responsible for disseminating the anonymous defamatory statements, and at this point are forced to allege certain matters upon information and belief pending further discovery, do not preclude Plaintiffs' defamation claims under these facts.

"Here, Plaintiff has supplied a majority of the information that was absent in *Five for Entertainment S.A.*" *SZS Solutions, Inc.*, 2018 WL 3126220 at *2. As held in *SZS Solutions, Inc.*:

> …Brother argues that Plaintiff has failed to state a [defamation] claim because the Complaint does not set forth the identity of the speaker, the content of the alleged defamatory statement, the timeframe of publication, and the manner of damage to the plaintiff.
>
> Defendant relies heavily on *Five for Entertainment S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012), which dismissed a defamation claim because the plaintiff failed to identify the defamatory statement, its context, when it was made, and the speaker. However, the Court finds several distinguishing facts between *Five for Entertainment* and the instant case and is therefore unpersuaded by Defendant's argument. Here, Plaintiff has supplied a majority of the information that was absent in *Five for Entertainment*. Plaintiff identified the defamatory statements as Brother's false reports to Amazon that Plaintiff was infringing on its intellectual property. Plaintiff provided May 9, 2017 and September 12, 2017 as the dates around which the purported defamatory statements were made. Plaintiff identified the Defendant as the party that made the defamatory statements. Finally, Plaintiff referenced the loss of sales, when Amazon froze Plaintiff's listings of Brother products, and the injury to Plaintiff's reputation with Amazon, when Amazon threatened to remove all SZS listings from its website, as the damage suffered.
>
> \*       \*       \*       \*
>
> In this case, Plaintiff's original complaint satisfied the liberal pleading standard required by *Iqbal*: the Complaint described the allegedly defamatory statement and stated when it was communicated to Amazon by Brother. The information in the Complaint is sufficient to give Brother fair notice of the basis of Plaintiff's claim. Therefore, Rule 8(a) is satisfied.

*SZS Solutions, Inc.*, 2018 WL 3126220 at *2-3 ("In fact, *Five for Entertainment* explicitly states that a complaint 'does not need detailed factual allegations,' but rather must provide the general grounds for plaintiff's entitlement to relief.").

And in *Walter v. Jet Aviation Flight Servs., Inc.,* the court denied a motion seeking to dismiss a defamation claim stating:

> …Rather, as Defendants emphasize, a claim for defamation must 'give the defendant fair notice of what the claim is and the grounds upon which it rests' and must contain enough factual allegations to 'raise a right to relief above the speculative level.' Plaintiff has done so.  While the Court acknowledges the facial validity of Defendants' argument, and while certain areas of the complaint do lack specificity, Plaintiff's Complaint must be viewed in its entirety and it must be viewed with all inferences taken in Plaintiff's favor. Viewed in that light, Plaintiff's Complaint establishes a cohesive narrative.  That narrative is that Defendants acted with malicious ill will to manufacture a way to both terminate Plaintiff and to ruin Plaintiff's reputation with a critical third party, Mr. Bruce Kovner. While certain portions of Plaintiff's narrative lack specificity, the Plaintiff has also explained in the Complaint by implication why that is so.  In sum, Plaintiff has alleged enough factual content to raise his right to relief above a speculative level and, as a result, Defendants' arguments pertaining to specificity are rejected.

2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016) (internal citations omitted); *accord Ward*, 2017 WL 3149431 at *3 (finding that "while [plaintiff's] complaint is certainly not a model of clarity, it is sufficient to give [defendant] fair notice of the substance of the alleged defamatory statements").

Plaintiffs' defamation claims in Counts I and II properly state the elements of such claims, provide sufficient factual support for those claims, and clearly provide Salyer with notice of the bases of such claims in compliance with Rule 8.  Salyer's request to dismiss Counts I and II should be denied.  *See Taslidzic v. Luther*, 2018 WL 3134419, at *7 (S.D. Fla. May 21, 2018) (rejecting the defendant's contention that the plaintiff's defamation claim lacks the requisite level of specificity and holding: "The Complaint details the content of the statements made by Defendant Luther to particular identified contractors and the time frame when the statements were made.  No more is required at this stage.").

## PLAINTIFFS' MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY

In the event the Court finds Salyer has sufficiently shifted the burden back to Plaintiffs to come forth with facts/evidence establishing personal jurisdiction, Plaintiffs should be afforded a reasonable opportunity to test Salyer's assertions and glean additional supporting facts through limited jurisdictional discovery before the Court rules on Salyer's jurisdictional arguments.

"[T]he rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction." *Blanco v. Carigulf Lines*, 632 F.2d 656, 658 (5th Cir. 1980)). Accordingly, "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Elardi v. I.S. Makinen Oy*, 2019 WL 6003210, *2 (S.D. Fla. Nov. 14, 2019) (citing *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729 (11th Cir. 1982)). "Plaintiffs have a 'qualified right' to jurisdictional discovery if the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation." *Elardi,* 2019 WL 6003210 at *2 (citations omitted). As the *Elardi* court stated:

> We note, however, that it is not accurate that a district court has complete discretion to grant or deny a request for jurisdictional discovery when the jurisdictional facts are in dispute. It is more appropriate to say that discretion is limited 'to the form that the discovery will take,' as opposed to whether there will be jurisdictional discovery. **Thus, '[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum.'**

*Id.* (emphasis added) (quoting *Diamond Chem. Co. v. Atofina Chems., Inc*., 268 F. Supp. 2d 1, 15 (D.C. Cir. 2003)).

For these reasons, courts in this circuit routinely permit limited jurisdictional discovery before ruling on a jurisdictional motion to dismiss. *See, e.g. Kilma v. Carnival Corp.*, 2008 WL 4559231, at *1 (S.D. Fla. Oct. 10, 2008) (permitting jurisdictional discovery prior to ruling on a motion to dismiss); *Sierra Equity Group, Inc., v. White Oak Equity Partners, LLC*, 2008 WL 1771857, *2

(S.D. Fla. April 15, 2008) ("[J]urisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants.") *Eaton*, 692 F.2d at 729 (holding it was premature to dismiss a claim for lack of jurisdiction where plaintiffs were not given an opportunity to elicit material through discovery to support a determination on jurisdiction); *Blanco Lines,* 632 F.2d at 657 (reversing a dismissal on jurisdictional grounds because "Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue" where the dismissal was entered before Plaintiff had an adequate opportunity to take jurisdictional discovery).

Here, limited jurisdictional discovery upon Salyer is warranted because personal jurisdiction is genuinely in dispute and cannot be resolved by relying solely on the untested and conclusory assertions contained in Salyer's Affidavit.  For example, Salyer's Affidavit raises questions regarding Salyer's ownership of her Florida pet store that are relevant to a jurisdictional analysis (such as the nature of Salyer's ownership interest in the pet store, how long she owned the pet store, Salyer's day-to-day role and responsibilities with the pet store, the nature and scope of the services provided by the pet store, whether Salyer obtained and held any business licenses in connection with owning the pet store, and what other contracts Salyer entered with Florida residents or businesses related to the pet store in which she previously submitted to jurisdiction in this forum, among others).  Salyer Affidavit at ¶ 18.

While Salyer states that she has "never owned real property in Florida," it is unclear whether she owns any personal property in Florida (such as a boat), or whether she ever executed any lease, either personally or in connection with her pet store, under which Salyer submitted to jurisdiction in Florida.  *Id.* at ¶ 22.  There are also questions whether Salyer resided in Florida during the entire time she owned the pet store (a reasonable inference given the significant gap in her employment history provided in her Linkedin Profile).  *See* Exhibit "2"; Section B(i), *supra.*

Moreover, there are questions regarding Salyer's current Florida telephone number (such as how long she has held that (305) phone number, whether she uses her phone number for pecuniary gain in Florida, and why she obtained that phone number in the first place if she truly has no connections with Florida). There are questions regarding Salyer's consistent visits to Florida and the amount of time she has spent in Florida in connection with those visits. Salyer Affidavit at ¶ 19. There are questions regarding Salyer's relationship with the father of Salyer's daughter (such as where/when Salyer met this person, whether they were married and where, whether there were any divorce or other related proceedings were held in Florida, and whether Salyer and this person have any agreements that are relevant to a jurisdictional analysis). *Id.* at ¶ 17.

Furthermore, while Salyer's Affidavit states she has "never voted in Florida," Salyer's Affidavit does not state that Salyer has never registered to vote in Florida. *Id.* at ¶ 20. And while Salyer's Affidavit states that "Franchise Discovery, LLC, is a Virginia company and has an office in Virginia only," *id.* at ¶ 11, according to Salyer's Linkedin Profile she is also a Senior Consultant for The Franchise Consulting Company, which according to the Franchise Consultants Webpages, does maintain an office in Florida. *See* Exhibit "4." This raises further questions regarding the relationship between Franchise Discovery, LLC and The Franchise Consulting Company, the scope and extent of those companies' business operations in Florida, Salyer's role with those companies as it relates to their Florida operations, and Salyer's marketing and solicitation efforts to Florida residents using Happy Tax's ill-gotten confidential business material on behalf of those companies (even if those efforts did not result in any formal deals with Florida residents).

Thus, Plaintiffs submit limited jurisdictional discovery may reveal:

- Salyer owned and operated a business in Florida for pecuniary gain for many years and generated substantial revenues from conducting such business.

- Salyer resided in Florida for many years while she owned and operated her pet store.

- Salyer has traveled to Florida for the purpose of conducting business on behalf of Happy Tax, and either or both Franchise Discovery, LLC and The Franchise Consulting Company.

- In connection with Salyer's pet store, other agreements exist between Salyer and Florida-based businesses or Florida residents wherein Salyer agreed to submit to jurisdiction in Florida.

- Salyer had regular, systematic and routine telephonic, electronic and written communications directed to businesses and residents located in Florida for the purposes of conducting business.

- Salyer held business or other licenses in Florida in connection with her pet store.

- Salyer has agreements with the father of her daughter that create a further nexus between Salyer and Florida.

- Salyer has received traffic tickets, or other state imposed fines or penalties, that demonstrate Salyer has previously submitted to the jurisdiction of Florida in some capacity.

Plaintiffs should have the opportunity to conduct jurisdictional discovery before the Court rules on Salyer's jurisdictional arguments:

> **Although it is unlikely that general jurisdiction exists based on the facts pleaded, the possibility is no so remote so as to justify a finding that jurisdictional discovery is unwarranted**. If other agreements negotiated in Florida exist between Thriller and other Florida-based cruise lines, if Carnival or other Florida-based cruise lines have agreements to insure and indemnify Thriller for services provided by Thriller to cruise passengers, or if there are other relevant contacts between Thriller and the State of Florida, these activities may be sufficient to establish general jurisdiction under the long-arm statute. Therefore, Plaintiffs may conduct jurisdictional discovery to ascertain whether personal jurisdiction exists over Thriller.

*Kilma v. Carnival Corp.*, 2008 WL 4559231 at *3 (emphasis added).

Plaintiffs' request for jurisdictional discovery is timely and appropriate, and Plaintiffs should be afforded forty-five (45) days to conduct such discovery from Salyer and file their Supplemental Response to Salyer's Motion. *See, e.g., Blanco,* 632 F.2d at 658 ("[T]he rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction."); *Elardi*, 2019 WL 6003210 at *3 ("Here, Plaintiff's motion is well taken because there is a genuine dispute as to whether I.S. Makinen availed itself of the Court's jurisdiction. While I.S. Makinen suggests that the record is undisputed and that Plaintiff's request rises to the level of a fishing expedition, that argument is premature as Plaintiff has not even had the chance to seek limited jurisdictional discovery. Plaintiff's request is also unlike other cases where parties either waited a substantial amount of time to seek discovery or failed to file a formal motion to take discovery.").

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court enter an Order denying Salyer's request to dismiss Counts I and II of the SAC, finding the record already contains sufficient facts to establish a *prima facie* case of personal jurisdiction over Salyer and granting Plaintiffs leave to amend their SAC with the additional facts raised by Salyer that establish general personal jurisdiction. Alternatively, Plaintiffs respectfully request they be permitted forty-five (45) days to conduct limited jurisdictional discovery upon Salyer prior to a ruling on Salyer's jurisdictional arguments.

## S.D. FLA. LOCAL RULE 7.1(a)(3) CERTIFICATION

Prior to filing the instant request to take jurisdictional discovery, on June 11, 2020 the undersigned conferred by email with Salyer's counsel, Ellen McDowell, Esq., who advised the undersigned she was "trying to reach our client and will let you know as soon as we have the chance to speak with her." As of the filing of this Motion, the undersigned has yet to receive Salyer's position on Plaintiffs' request for limited jurisdictional discovery. Once the undersigned

is advised of Salyer's position, undersigned counsel will separately file a Notice advising the Court of Salyer's position on Plaintiffs' request for limited jurisdictional discovery.

Respectfully Submitted,

**JEFFREY M. BERMAN, P.A.**
*Counsel for Plaintiffs*
1722 Sheridan Street No. 225
Hollywood, Florida 33020
Tel 305.834.4150
Fax 305.832.0145

By: *JMBerman*
JEFFREY M. BERMAN
Fla. Bar No.: 14979
*jeff@jmbermanlaw.com*

**CERTIFICATE OF SERVICE**

**I CERTIFY** that on June 11, 2020 the foregoing was served through CM/ECF to all those authorized to receive such electronic notices.

By: *JMBerman*
Jeffrey M. Berman