**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 19-24539-CIV-MORENO/LOUIS

HAPPY TAX FRANCHISING, LLC, *et al.*,

     Plaintiffs,

v.

JAMEY HILL et al.,

     Defendants.

                                  /

## <u>REPORT AND RECOMMENDATION</u>

THIS CAUSE comes before the Court upon Defendants Jamey Hill, The JL Hill Group, LLC ("Hill Group"), Tricia Drago, Banyan Accounting, LLC ("Banyan") and Sean McDonald's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 41); Defendant Melissa Salyer's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51); and Defendants Johnnie Jemel Mainer-Smith and Bottom Line Tax Services, LLC's ("Bottom Line") Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 58). These matters were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) by the Honorable Federico A. Moreno, United States District Judge, to decide all pretrial matters (ECF No. 49). Having carefully considered the Motions, responses thereto, and with the benefit of oral argument conducted on August 27, 2020, the undersigned recommends that Defendants' Motions be **GRANTED**; Plaintiffs' Second Amended Complaint be dismissed without prejudice; and that Defendant Salyer be dismissed with prejudice.

## I.     BACKGROUND

### A.  Factual Background

The following facts are derived from Plaintiffs Happy Tax Franchising LLC ("Happy Tax") and Mario Costanz's Second Amended Complaint (ECF No. 36). Since 2015, Happy Tax has operated a nationwide network that provides tax preparation services to consumers through franchisees and certified public accountants (*id.* at ¶ 18). Between 2015 and 2018, Happy Tax entered into separate Franchise Agreements with Defendants Hill Group, McDonald, Greene, Banyan and Bottom Line (collectively "Franchisee Defendants") (*id.* at ¶ 22). In connection with its Franchise Agreement, Hill Group also executed a Promissory Note guaranteed by Hill (*id.* at ¶¶ 31, 35). Each Franchise Agreement contained an identical non-disparagement clause that was to survive termination (*id.* at ¶¶ 22, 23), and also included covenants not to take any actions that would injure or prejudice the goodwill associated with Happy Tax's business model (*id.* at ¶ 25).

In 2019, Tricia Drago, owner/operator and sole member of Banyan (*id.* at ¶ 8), began forming a group of investors to purchase Costanz's ownership interest in Happy Tax (*id.* at ¶ 58). Costanz provided Drago with the required due diligence concerning Happy Tax's finances and business operations, yet the two were unable to reach an agreement (*id.* at ¶ 59). Plaintiffs allege that Drago was upset by her inability to acquire ownership interest in Happy Tax, and as a result, Drago began recruiting other Happy Tax franchisees to take part in an unlawful scheme to destroy the company (*id.* at ¶¶ 60). In mid-2019, she and "other Franchisee Defendants whom Drago recruited" allegedly began a "destructive campaign of defamation and commercial disparagement" (*id.* at ¶ 61).

The Second Amended Complaint alleges that on numerous occasions, Defendants Salyer and Pevin, among other Happy Tax team members, informed Costanz that Drago and each of the

Defendants that Drago had recruited were making and publishing false, defamatory and injurious statements regarding Happy Tax and Costanz (*id*. at ¶ 62). These defamatory statements included falsely telling Happy Tax team members and potential investors that there was criminal activity at the company, that Costanz was a fraud and was dishonest, that Happy Tax's financials and franchise disclosures were fraudulent, and that a big class action type lawsuit was coming against the company and its team members (*id*.). The Second Amended Complaint further alleges that this campaign to destroy the company and ruin Costanz's business reputation went on for months, and included, among others, Drago (individually and on behalf of Banyan), Hill (individually and on behalf of Hill Group), Mainer-Smith (individually and on behalf of Bottom Line), McDonald and Greene (*id*. at ¶ 64).

The Second Amended Complaint describes six specific defamatory emails that were sent either by "Drago and each of the Defendants that Drago had recruited" (*id*. at ¶ 62), "a person or entity or group of persons acting in concert" (*id*. at ¶ 79), or "by Defendants" (*id*. at ¶¶ 82, 84). These emails were allegedly sent to "Happy Tax franchisees, employees, board members and others" (*id*. at ¶ 79), including: Knox Wimberly, Happy Tax's Chief Tax Officer (*id*. at ¶ 84); Nathan Pratt, Happy Tax's Director of Marketing (*id*. at ¶ 89); "a new major investor in Happy Tax" (*id*. at ¶ 91) and other "third parties" (*id*. at ¶ 82).

Plaintiffs contend that as a result of this defamation campaign, they sustained damages in excess of $5,000,000: (i) Happy Tax suffered losses of at least approximately $1-2 million in franchise sales fees in 2019 alone because Happy Tax could not onboard any new franchisees under these conditions; (ii) Happy Tax lost significant future royalties and note payments associated with new franchisees; (iii) numerous key Happy Tax team members refused to sell any new franchises, and resigned their positions with the company for fear of these Defendants'

defamatory and destructive actions; and (iv) numerous existing franchisees terminated their business relationships with Happy Tax due to Defendants' continued interference with the company's business operations (*id*. at ¶ 66). It is also alleged that this defamation campaign caused Salyer, Happy Tax's Executive Vice President of Business Development, to resign on September 9, 2019 (*id*. at ¶ 71).

Plaintiffs aver that just days prior to her departure, Salyer, acting alone and in concert with Pevin, Happy Tax's Vice President of Operations, misappropriated and diverted confidential business materials belonging to Happy Tax to Salyer's personal email (*id*. at ¶ 73). These misappropriated materials included protected and non-public customer data and information regarding the Happy Tax Model (*id*). Salyer and Pevin allegedly utilized these misappropriated materials in connection with a business they jointly established called "Franchise Discovery" (*id*. at ¶ 75). Accordingly, Pevin was fired shortly thereafter (*id*. at ¶ 76).

### B. Procedural Background

These claims were originally brought in two separate lawsuits. Plaintiffs initially filed this lawsuit in state court on October 4, 2019, against Defendants Jamey Hill and the Hill Group only. The suit was removed to this Court on November 1, 2019 (ECF No.1). On November 4, 2019, Plaintiffs also filed a related case before this Court, *Happy Tax Holding Corp. et al. v. Jamey Hill et al.*, Case No. 19-cv-24552-JEM ("Related Case"), against all the Defendants presently named in the instant action (Related ECF No. 1). The Related Case was dismissed without prejudice due to its overlap with the instant action, and Plaintiffs were given leave in the instant action to amend the Complaint to include all claims and defenses raised in the Related Case (Related ECF No. 57). The Second Amended Complaint, which encompasses claims initially raised in the Related Case, was filed on April 10, 2020 (ECF No. 36).

The Second Amended Complaint contains nine counts against the various Defendants: Count I – Defamation Per Se (Plaintiffs Against Hill, Drago, Mainer-Smith, McDonald, Greene, Salyer and Pevin); Count II – Defamation (Plaintiffs Against Hill, Drago, Mainer-Smith, McDonald, Greene, Salyer and Pevin); Count III – Breach of Franchise Agreements (Happy Tax Against Franchisee Defendants); Count IV – Tortious Interference With Advantageous Business Contracts and Relationships (Happy Tax Against Franchisee Defendants); Count V – Misappropriation of Trade Secrets Pursuant to Florida's Uniform Trade Secret Act (Happy Tax Against Salyer and Pevin); Count VI – Breach of Fiduciary Duty and Duty of Loyalty (Happy Tax Against Salyer and Pevin); Count VII – Aiding and Abetting a Breach of Fiduciary Duty (Happy Tax Against Pevin); Count VIII – Breach of Promissory Note (Happy Tax Against Hill Group); and Count IX – Breach of Guaranty (Happy Tax Against Hill).

Defendants Jamey Hill, Hill Group, Tricia Drago, Banyan and Sean McDonald filed their Motion to Dismiss Plaintiffs' Second Amended Complaint on April 27, 2020 (ECF No. 41). The Hill Group Defendants argue that the Second Amend Complaint should be dismissed pursuant to Rules 8 and 12(b)(6), Federal Rules of Civil Procedure, for Plaintiffs fail to state a facially plausible legal claim for defamation, and further contend that the Single Publication Rule bars all other remaining claims (ECF No. 41). Defendant Salyer's Motion to Dismiss similarly argues that Plaintiffs' Second Amended Complaint should be dismissed under Rule 12(b)(6) and 8(a) for failure to state a claim for defamation (ECF No. 51). Salyer additionally argues that the Court lacks personal jurisdiction over her (*id.*). Finally, Defendants Mainer-Smith and Bottom Line filed a Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 58), which raises the arguments presented by the Hill Group and further argues that the Court should take judicial notice of pleadings and admissions filed in the Related Case and, in turn, dismiss the current claims as

factually inconsistent on the basis of judicial estoppel (ECF No. 58). The Bottom Line Defendants also aver that Plaintiffs failed to state a claim for Tortious interference (*id*.).

Plaintiffs filed Responses in opposition to both the Hill Group and Bottom Line Defendants' Motions to Dismiss (ECF Nos. 50, 55). Plaintiffs responded to Salyer's Motion to Dismiss, and further sought leave to take jurisdictional discovery from Salyer (ECF Nos. 59, 60). I granted leave to take judicial discovery (ECF No. 63), and Plaintiff thereafter filed a Supplemental Response to Salyer's Motion to Dismiss based on the newly discovered facts (ECF No. 71). Defendants have all replied (ECF Nos. 55, 67, 73). The Motions are now fully briefed.

## II.    DISCUSSION

Defendants, in all three of their Motions to Dismiss, assert the following grounds for dismissal: (1) the Amended Complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure; and (2) the Amended Complaint fails to state a claim for which relief can be granted in violation of Rule 12(b)(6) of the Federal Rules of Civil Procedure. Two of the Motions to Dismiss further argue that all claims other than defamation should be dismissed under the Single Publication Rule. Because these Motions raise many of the same grounds for dismissal, the Court will jointly address the issues raised in all three Motions in this Report and Recommendation.

### A.  Rule 8(a)(2)

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires a "short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A shotgun complaint is one that, for example: (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants

6

without specifying which defendant is responsible for which act." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019).

Plaintiffs' Second Amended Complaint's initial 101 paragraphs attempt to lay out the history, background and numerous misdeeds of the various Defendants. These paragraphs are ripe with overly broad and conclusory statements, as well as contradicting facts and assertions. For example, it is averred that "Drago and other Franchisee Defendants whom Drago recruited to take part in her scheme began a destructive campaign of defamation and commercial disparagement against Plaintiffs" (ECF No. 39 at ¶ 61). The allegation fails to specify which other Franchisee Defendants participated in the alleged scheme, but indicates that not all Defendants participated. It is then alleged that "[o]n numerous occasions, Salyer and Pevin, among other Happy Tax team members, informed Costanz that Drago, and each of the Defendants that Drago had recruited, were making and publishing false, defamatory and injurious statements regarding Happy Tax and Costanz" (*id*. at ¶ 62). This again fails to specify which Defendants other than Drago were involved, but seems to indicate that Salyer and Pevin did not participate in the defamation scheme – rather, they alerted Plaintiffs to it. Plaintiffs then put forth the vague assertion that "a person or entity or group of persons acting in concert" were responsible for the publication of defamatory statements, indicating Plaintiffs do not in fact know who was responsible (*id*. at ¶ 79). Yet, Plaintiffs generally allege that all Defendants were part of the defamation scheme (*id*. at ¶¶ 82, 84).

The Complaint's deficiency caused by the failure to allege facts specific to each Defendant's conduct is exacerbated by Plaintiffs' incorporation of all paragraphs into each count. This makes it impossible to decipher which Defendants are responsible for which act. Plaintiffs may not abrogate their duty to allege specific acts for which each Defendant is accountable by

generically alleging that each Defendant participated in the conspiracy to defraud; yet that is precisely what the Second Amended Complaint does. Furthermore, by incorporating the first 101 paragraph into each count, Plaintiffs incorporate conclusory, vague, and immaterial facts not obviously connected to that particular claim. "This characteristic alone constitutes a shotgun pleading." *Lacayo v. Wells Fargo Bank, N.A.*, No. 16-CV-23187, 2018 WL 6807344, at *10 (S.D. Fla. Nov. 30, 2018), *report and recommendation adopted*, No. 16-23187-CIV, 2019 WL 1115880 (S.D. Fla. Jan. 14, 2019), *appeal dismissed*, No. 19-10550-AA, 2019 WL 2214122 (11th Cir. Apr. 18, 2019) (holding the reincorporation of the first 112 numbered paragraphs into each of its numerous causes of actions against numerous and distinct defendants alone constituted a shotgun pleading).

In short, the Second Amended Complaint constitutes a shotgun pleading, subject to dismissal. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("Each count incorporates by reference the allegations made in a section [. . .] which comprises 146 numbered paragraphs [. . . ] [t]he result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."); *see also Merchant One, Inc. v. TLO, Inc.*, No. 19-CV-23719, 2020 WL 248608, at *3 (S.D. Fla. Jan. 16, 2020) ("Overall shotgun pleadings fail to make the connection between the substantive count and the factual predicates . . .." (internal citations omitted)). Accordingly, dismissal is warranted. *See Marrero v. Benetiz*, 17-CV-21026, 2017 WL 7796341, at *4 (S.D. Fla. Aug. 3, 2017) (dismissing amended complaint as a shotgun pleading where plaintiffs improperly grouped twelve plaintiffs and five defendants, thereby failing to allege which plaintiffs were bringing claims against specific Defendants or how each plaintiff had been injured by a defendant's conduct).

Dismissal for failure to satisfy Rule 8 generally requires that the court afford the plaintiff leave to amend a first complaint. "When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendants' motions to dismiss based on Rule 12(b)(6), as repetition of such deficiencies would again warrant dismissal. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018) ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading…").

### B. Rule 12(b)(6)

Defendants additionally contend that the Second Amended Complaint should be dismissed for failure to state a claim in violation of Federal Rule of Civil Procedure 12(b)(6). To survive a 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). This requires a plaintiff to allege facts sufficient to raise grounds for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the reviewing court is limited to the facts contained in the complaint and the attached exhibits. *See Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009). The facts alleged are taken as true and all reasonable inferences are drawn in plaintiffs' favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

### 1. Defamation Claims

All three Motions move for dismissal on the basis that Plaintiffs failed to allege a facially

plausible legal claim for defamation. "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (citation omitted). As previously addressed, the Second Amended Complaint fails to allege facts sufficient to attribute publication of the defamatory statements to any named Defendant.

Rather, Plaintiffs allege that "upon information and belief" the Defendants acted in concert to publish the defamatory emails, which were all sent anonymously (ECF No. 36 at ¶ 82). Yet, Plaintiffs fail to sufficiently allege the basis for this belief, or provide any information that would implicate all Defendants. While pleading "on information and belief" is permitted, "a plaintiff is still required to allege with particularity the factual basis upon which the information and belief was founded." *Five for Entm't S.A.* 877 F. Supp. 2d at 1329 (finding there were not sufficient allegations, other that bare assertions on "information and belief" to implicate the defendants in the publication of defamatory statements). The only information provided within the Second Amended Complaint on which this belief seems to be based is that the emails are written in the first person plural ("we") and Plaintiffs surmise thus that multiple people are responsible for their publication (ECF No. 36 at ¶ 82); that the email author(s) claimed to be franchisees and area representatives for Happy Tax (*id.* at ¶¶ 91, 93); the authors were aware of this lawsuit (*id.* at ¶ 97); and a letter sent to the anonymous email account was opened somewhere in Canada and in France (*id.* at ¶ 98).

These facts are insufficient to allege that every and all Defendants are responsible for the publication of the false statements. The Second Amended Complaint alleges that Happy Tax was a "nationwide network" and one of the "fastest growing" tax franchises (*id.* at ¶¶ 18, 19). The

Second Amended Complaint also makes clear that Happy Tax had numerous other employees and franchisees, besides the named Defendants (*id*. at ¶ 66). Thus, just because there were multiple people behind the emails addresses who claimed to be "former and current Happy Tax Partners" (*id*. at ¶ 93) does not in any way indicate that it was specifically the named Defendants that were involved. Lastly, the fact that an email sent by Plaintiffs' counsel to the anonymous email account was opened in Canada and France, and one of the ten Defendants resides in France (*id*. at ¶ 98), is not enough to implicate them all. Plaintiffs have failed to sufficiently identify the specific publishers of each defamatory email; have failed to state ant facts which would lead them to believe Defendants were responsible for the defamatory emails; and thus have failed to state a facially plausible claim for defamation in violation of Federal Rule of Civil Procedure 12(b)(6).

## 2. Tortious Interference

For the same reasons Plaintiffs' defamation claims fail, so too must Plaintiffs' claim for tortious interference.  "The elements of tortious interference with a contract or with a business relationship are: (1) the existence of either a contract or a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff." *Dick's Sporting Goods, Inc. v. Forbes/Cohen Fla. Properties, L.P*., No. 9:20-CV-80157, 2020 WL 1536443, at *3 (S.D. Fla. Mar. 30, 2020). Plaintiffs allege that Defendants interfered with Happy Tax's business relationships "by continuously publishing false and defamatory statements regarding Happy Tax (ECF No. 36 at ¶ 125). But because the Second Amended Complaint fails to adequately identify which, if any, of the Defendants published the anonymous emails, they cannot establish the third element of their tortious interference claim as pled.

### C.  Single Publication Rule

Defendants argue that the Single Publication Rule requires dismissal of all remaining counts against them. "Florida courts[1] have held that a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong. A contrary result might very well enable plaintiffs in libel to circumvent the notice requirements of Fla. Stat. 770.01 by the simple expedient of redescribing the libel action to fit a different category of intentional wrong." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (finding "if the sole cause of action for the false light invasion of privacy claim is the same defamatory publication that gives rise to the defamation claim (i.e., the Press Release), the false light claim is precluded.") (citations omitted); *see also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("[I]f the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply."). Counts V – IX are not derived from the conduct arising from the alleged defamatory publications, and thus the Single Publication rule is inapplicable to these claims. Defendants advanced no other basis for dismissal with respect to these counts.

### D.  Judicial Notice and Estoppel

The doctrine of judicial estoppel may by applied at a court's discretion "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *2 (S.D. Fla. June 28, 2018), *report and recommendation adopted*, No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd*, 778 F. App'x 680 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 560,

---

[1] The Parties all agree that Florida law applies to the substantive claims.

205 L. Ed. 2d 358 (2019) (citation omitted). The party's latter position must be "clearly inconsistent" with its earlier position. *Id.* Defendants Mainer-Smith and Bottom Line argue that Plaintiffs are judicially estopped from alleging that Defendants sent the defamatory emails because Plaintiffs took a contrary position in the Related Case: Plaintiffs sought leave to take expedited discovery from Defendants to identify who sent the emails. Defendants urge the Court to recognize that such a request inherently admits that Plaintiffs know it was *not* the Defendants who sent the emails (ECF No. 58 at 5-6). Defendants' argument asks the Court to consider facts outside the Second Amended Complaint and indeed outside the allegations pled by Plaintiffs in the Related Case. Even if argument made in pursuit of expedited discovery could be the basis for applying judicial estoppel, Defendants' argument mischaracterizes Plaintiffs' position. The undersigned has declined to take judicial notice of the requested facts, and rejects Defendants' request to dismiss based on the doctrine of judicial estoppel.

### E. Personal Jurisdiction Over Salyer

Defendant Salyer alleges that the Plaintiffs fail to state a *prima facie* case of personal jurisdiction over her and that this Court has no jurisdiction over her (ECF No. 51 at ¶ 2). In support of this position, Salyer submitted an Affidavit as an attachment to her Motion to Dismiss, which attests to the following relevant facts: she resides in Virginia, and has lived there since 1983 (*id.* at ¶ 2); during her entire tenure with Happy Tax, she lived in Virginia (*id.* at ¶ 3); Happy Tax did not have a staffed office in Florida during her tenure with the company, but rather its presence was limited to a rented "WeWork" space used as a mail drop (*id.* at ¶ 4); her duties while at Happy Tax did not require her to work or attend meetings in the State of Florida (*id.* at ¶ 6); Happy Tax's electronic files and servers were not maintained in Florida (*id.* at ¶ 7); and she has never owned real property or had a mailing address in Florida (*id.* at ¶¶ 21, 22). Despite the opportunity to

conduct jurisdictional discovery and submit a supplemental response, Plaintiffs have not refuted any of these facts.

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). If the defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal citation omitted). If the plaintiff's allegations and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Thereafter, if such inferences are sufficient to defeat a motion for judgment as a matter of law, "the court must rule for the plaintiff, finding that jurisdiction exists." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.C.*, 598 F.3d 802, 810 (11th Cir. 2010). "But, when the plaintiff offers no competent evidence to the contrary, a 'district court may find that the defendant's unrebutted denials [are] sufficient to negate plaintiff's

jurisdictional allegations.'" *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019) (citing *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013)).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274. "The Due Process Clause requires that the defendant have minimum contacts with the forum state so that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1287 (S.D. Fla. 2014) (citing *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 858-59 (11th Cir. 2013)). "Both parts [of the test] must be satisfied for a court to exercise personal jurisdiction over a non-resident." *Am. Fin. Trading Corp. v. Bauer,* 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002).

### 1. Florida's Long-Arm Statute

Florida's long-arm statute provides for two theories of jurisdiction: (1) specific jurisdiction, if the suit that arises out of or is related to a defendant's contacts with Florida in one of a number of enumerated ways, Fla. Stat. § 48.193(1)(a); or (2) general jurisdiction, if the defendant engages in "substantial and not isolated activity" in Florida, *id*. § 48.193(2). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015). Florida's long-arm statute is to be strictly construed, any doubts about the applicability of the statute are resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007) (citing *Seabra v. Int'l Specialty Imp., Inc.*, 869 So. 2d 732, 733 (Fla. 4th DCA 2004)).

Plaintiffs' Second Amended Complaint alleges that the Court has personal jurisdiction over Salyer because her "tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida," where Salyer knows Happy Tax is located (ECF No. 39 at ¶ 16). In Plaintiffs' response and supplemental response to Salyer's Motion to Dismiss, Plaintiffs claim to have established a *prima facie* case for both general and specific personal jurisdiction over Salyer (ECF Nos. 59 at 3, 71 at 3).

### 2. Due Process Requirements for Specific Jurisdiction

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (citation omitted). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990). "[A] court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The requirement that there be minimum contacts is grounded in fairness," *id.*, and assures that "the defendant's conduct and connection with the forum State [is] such that [it] should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Fraser v. Smith*, 594 F.3d 842, 847-48 (11th Cir. 2010) (discussing specific jurisdiction under Florida's long-arm statute); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (discussing minimum contacts for purposes of specific jurisdiction consistent with due process). Accordingly, the Due Process Clause "imposes a more restrictive requirement than does Florida's Long-Arm

Statute." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (citation omitted).

### 3.   General Personal Jurisdiction Over Salyer

Under Florida's long-arm statute "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "Florida courts have recognized the term 'substantial and not isolated activity,' in the long arm statute to be the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1327 (S.D. Fla. 2009).

Second Amended Complaint fails to allege facts sufficient to give base this Court's exercise of general personal jurisdiction. However, in Plaintiffs' initial response to Salyer's Motion to Dismiss, Plaintiffs aver that Salyer's own affidavit, along with other attached exhibits, provide a *prima facie* case of general jurisdiction. (ECF No. 59 at 3-4). Plaintiffs point to the fact that Salyer previously owned a business in Florida which she sold in 2009; that she received a traffic ticket in Florida sometime prior to selling her business in 2009; that she vacations in Florida every other year; and that her current employer maintains an office in Florida (*id*. at 4). After receiving leave from Court to conduct jurisdictional discovery (ECF No. 63), Plaintiffs filed a supplemental motion reiterating and elaborating on the same facts in support of general personal jurisdiction (ECF No. 71 at 3-5). Plaintiffs additional advance the fact that Salyer maintained a Florida phone number; "held whichever state or local licenses or permits that were required to run the Pet Shop until such time as she sold it in 2009"; and executed an Independent Consultant Agreement with the Franchise Consulting Company ("FCC"), a Florida Company (*id*.). This

Consultant Agreement requires notices to be sent to Florida, states that the "laws of the State of Florida shall apply in any action or proceeding arising from or in connection with" the Consultant Agreement, and requires disputes arising from the Consultant Agreement to be mediated in Florida (*id*.).

In her reply, Salyer argues that her contacts with the State of Florida are insubstantial, isolated, and do not subject her to the Court's jurisdiction (ECF No. 73). The undersigned again agrees. Salyer rightfully points out that the question is not whether she could have been subject to the Court's jurisdiction over ten years ago, but whether she is now subject to it now (*id.* at 4). Thus, assuming without finding that owning a business in Florida may have subjected Salyer to general personal jurisdiction when she owned it from 2008-2009, it does not continue to do so over a decade later. *See Crowe v. Paragon Relocation Res., Inc*., 506 F. Supp. 2d 1113, 1122 (N.D. Fla. 2007) ("In considering a defendant's contacts, courts must look at the defendant's activities collectively over a relevant period of years leading up to the lawsuit.").

Nor does the Court find Salyer's more recent contacts with the state to be "substantial and not isolated." As for Salyer's position as an independent contractor for FCC, she asserts that she does not conduct business, advertise or seek business in Florida and Plaintiff has not provided any facts to show otherwise. Nor does the Court find that Salyer is subject to general personal jurisdiction based on her Independent Consultant Agreement with FCC, which contains a Florida forum selection and mediation clause. In Florida, "a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction over an objecting, non-resident defendant." *iRenew Bio Energy Sols., LLC v. Harvest Direct, LLC*, No. 11-81310-CIV, 2012 WL 13019219, at *2 (S.D. Fla. May 25, 2012) (citing *McRae v. J.D./M.D., Inc*., 511 So. 2d 540, 544 (Fla. 1987)). Occasional vacations likewise fail to subject Salyer to general

personal jurisdiction. *See Pathman v. Grey Flannel Auctions, Inc.*, 741 F.Supp.2d 1318, 1323 (S.D.Fla.2010) (finding defendant's "two to three" yearly business trips to Florida insufficient for exercise of general jurisdiction); *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1389 (S.D. Fla. 2014) ("[A]nnual trips to Florida . . . do not constitute 'substantial activity' in the state sufficient to establish general personal jurisdiction.").

### 4.  Specific Personal Jurisdiction Over Salyer

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a non-resident defendant who is engaging in one of the enumerated acts listed under Fla. Sta. § 48.193(1)(a). The scope of the Florida long-arm statute is a question of Florida law. *See Madara* 916 F.2d at 1514. If Florida's long-arm statute authorizes specific personal jurisdiction over a defendant, courts must then determine whether that reach comports with due process. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630 (11th Cir. 1996).

The specific jurisdiction portion of the long-arm statute lists certain acts which may subject nonresident defendants to the jurisdiction of Florida courts. *See* Fla. Stat. § 48.193(1)(a). Plaintiffs' Second Amended Complaint only provides one basis for personal jurisdiction over Salyer – that her "tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida," where Salyer allegedly knows Happy Tax is located (ECF No. 39 at ¶ 16). This basis would fall under specific personal jurisdiction, pursuant to Fla. Stat. § 48.193(1)(a)(2), which has been held by the Eleventh Circuit "to apply to defendants committing tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

Salyer argues that the Second Amended Complaint fails to provide any details to support Plaintiffs' allegation that the harm was specific to Florida or felt disproportionally there. The

undersigned agrees. While Plaintiff avers that its main place of business is Miami Beach, Florida, this assertion has been rebutted by Salyer's Affidavit attesting that at the time of her employment, Happy Tax did not have any staffed Offices in Florida but rather rented a WeWork space in Florida as a mail drop (ECF No. 51 at ¶ 4). Furthermore, Plaintiff Costanz – the founder, former Chief Executive Officer of Happy Tax and sole member of Happy Tax – is a citizen of New York (ECF No. 39 at ¶ 4); no factual basis is alleged for his injury being felt in Florida.  Other than the conclusory assertion that Salyer's acts were designed to harm Plaintiffs' in Florida, the Second Amended Complaint fails to allege facts sufficient to support this assertion.

Nor does Plaintiffs' response or supplemental response provide any evidence to rebut Salyer's sworn statements. Both responses merely reiterate the claims within the Second Amended Complaint that Happy Tax is a Florida company with its principal place of business in Florida and that Happy Tax has a continues to suffer damages in the State of Florida. These unsubstantiated averments are insufficient in light of the evidence advanced by Defendant Salyer that undermines Plaintiffs' allegations regarding where Plaintiffs felt injury. Accordingly, Florida's long-arm statute does not authorize specific jurisdiction over Salyer on these claims.

Finally, Plaintiffs have failed to allege facts sufficient to satisfy the more restrictive Due Process Clause. The only facts proffered by Plaintiffs to meet the minimum contacts requirement are those same facts that failed to meet the requirements for general jurisdiction. Just as these facts were insufficient to show Salyer had non-isolated contacts with the state, they too cannot show that Salyer purposefully availed herself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Because the Court does not have specific or general personal jurisdiction over Salyer, I recommend that the Motion be granted, and the Second Amended Complaint be dismissed with respect to Defendant Salyer.

### III.     CONCLUSION

For the forgoing reasons, I recommend that Defendants' Motions (ECF Nos. 41, 51, 58) be

**GRANTED**; Plaintiffs' Second Amended Complaint be dismissed without prejudice; and that

Defendant Salyer be dismissed with prejudice.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and

file written objections, if any, with the Honorable Federico A. Moreno, United States District

Judge. Failure to file objections by that date shall bar the parties from de novo determination by

the District Judge of any factual or legal issue covered in the Report and shall bar the parties from

challenging on appeal the District Judge's Order based on any unobjected-to factual or legal

conclusions included in the Report. See 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; Patton v.

Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 2nd day of

September, 2020.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

21