## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-24539-CIV-MORENO

HAPPY TAX FRANCHISING, LLC,
a Florida limited liability company and
MARIO COSTANZ, individually,

      Plaintiffs,

vs.

JAMEY HILL, individually,
THE J L HILL GROUP, LLC,
a Nevada limited liability company,
TRICIA DRAGO, individually,
BANYAN ACCOUNTING, LLC,
a Hawaii limited liability company
and CHAD GREENE, individually,

      Defendants.      /

### THIRD AMENDED COMPLAINT

Plaintiffs, HAPPY TAX FRANCHISING, LLC ("**Happy Tax**") and MARIO COSTANZ ("**Costanz**") (collectively, "**Plaintiffs**"), hereby sue Defendants, JAMEY HILL ("**Hill**"), THE J L HILL GROUP, LLC ("**Hill Group**"), TRICIA DRAGO ("**Drago**"), BANYAN ACCOUNTING, LLC ("**Banyan Accounting**") and CHAD GREENE ("**Greene**") (collectively, **Defendants**").

### NATURE OF THE ACTION

1.      Hill, Hill Group, Drago and Banyan Accounting (collectively, "**Defamation Defendants**"), along with Greene, are a group of former and current franchisees and area representatives of Happy Tax.  Acting individually and in concert, Defamation Defendants employed an unlawful scheme to take over and assume control of Happy Tax.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

2.      When that did not work, Defamation Defendants sought to sabotage and destroy Happy Tax and injure Costanz by disseminating false and defamatory statements about Plaintiffs and breaching the parties' franchise documents in multiple respects.

3.      As alleged in more detail below, Defamation Defendants' unlawful actions caused numerous Happy Tax franchisees, employees and board members to not market or sell franchises and ultimately resign or terminate their relationships with the company for fear of Defamation Defendants' disparaging and illegal conduct, and caused Happy Tax to sustain damages in excess of $5,000,000 consisting of at least approximately $1-2 million in lost franchise sales fees in 2019 alone, millions in lost future royalties and note payments associated with new franchisees, and significant harm to Plaintiffs' reputations and ability to generate revenue for the company.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff, Happy Tax, is a Florida limited liability company with its principal place of business in Miami Beach, Florida.

5.      Plaintiff, Costanz, is the founder and former Chief Executive Officer of Happy Tax, is a citizen of New York and is *sui juris*.

6.      Defendant, Hill Group is a Nevada limited liability company and a former Happy Tax franchisee.

7.      Defendant, Hill, is the owner/operator and only member of Hill Group, is a citizen of Nevada and is *sui juris*.

8.      Defendant, Banyan Accounting, is a Hawaii limited liability company and is a current Happy Tax franchisee.

9.      Defendant, Drago, is the owner/operator and only member of Banyan Accounting, is a citizen of Hawaii and is *sui juris*.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

10. Defendant, Greene, is a current Happy Tax franchisee, is a citizen of North Carolina and is *sui juris*.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(a) as the matter in controversy exceeds the value of $75,000.00, exclusive of interest and costs and, as set forth above, is an action between citizens of different states.

12. This Court has personal jurisdiction over each Defendant because: (i) each Defendant's tortious and improper acts occurring outside of Florida were specifically designed to harm and did harm Plaintiffs within Florida where Defendants know Happy Tax is located; and (ii) the Franchise Agreements referenced herein contain a provision whereby each Defendant agreed to submit to the jurisdiction of this Court.

13. Venue for this action is proper in this Court because: (i) each of the operative Franchise Agreements contains a venue selection clause requiring this action be brought in this Court; (ii) each Franchise Agreement includes a choice of law provision designating Florida law as the governing law; (iii) each Franchise Agreement involves consideration of more than $250,000.00 or relates to an obligation arising out of a transaction involving in excess of $250,000.00; (iv) this action involves at least one party who is incorporated in the State of Florida; and (iv) Defendants are each subject to the Court's personal jurisdiction such that venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

## GENERAL ALLEGATIONS

### A. Happy Tax.

14. Happy Tax was founded in 2014 to operate a nationwide network to provide tax preparation services to consumers through franchisees and certified public accountants.

15. Happy Tax created and owns a unique and highly sought-after proprietary business model that differentiates Happy Tax from other tax preparation services with its first to market virtual tax system, use of CPAs and audit assistance that had become a huge draw for potential

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

clientele throughout the income tax preparation industry, and previously made Happy Tax the fastest growing tax franchise by Entrepreneur Magazine three years in a row ("**Happy Tax Model**").

16.     Happy Tax franchisees contract with Happy Tax for the right to use the Happy Tax Model, brand, trademarks and trade dress in selling tax preparation services, and Happy Tax franchisees provide assisted tax preparation services both online and in-person, through professional CPAs.

> **B.**     **The Franchise Agreements.**

17.     Since commencing operations in 2015, Happy Tax has provided the Defendants with the right to operate a Happy Tax income tax preparation franchise pursuant to individual Franchise Agreements:

a.     Franchise Agreement between Happy Tax and Hill Group dated September 28, 2015.

b.     Area Representative Agreement between Happy Tax and Hill Group dated July 13, 2017.

c.     Area Representative Agreement between Happy Tax and Greene dated July 14, 2017.

d.     Franchise Agreement between Happy Tax and Greene dated August 3, 2017.

e.     Franchise Agreement between Happy Tax and Banyan Accounting dated October 20, 2017.

f.     Area Representative Agreement between Happy Tax and Banyan Accounting dated December 11, 2017.

g.     Area Representative Agreement between Happy Tax and Greene dated December 12, 2017.

h.     Renewed Franchise Agreement between Happy Tax and Hill Group dated August 13, 2018.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

18.     Each Franchise Agreement contains an identical non-disparagement clause that provides: "Non-Disparagement. Franchisee agrees that at no time will it disparage Franchisor or its officers, members, agents, employees, and franchisees."

19.     Each Franchise Agreement provides that the non-disparagement clause survives termination of the agreement and is enforceable against any terminated Happy Tax franchisee.

20.     In each Franchise Agreement the franchisee covenants to not directly or indirectly "take any action injurious or prejudicial to the goodwill associated with the [Happy Tax Model]."

**C.      Hill and Hill Group.**

21.     On September 15, 2015, Happy Tax and Hill Group entered into a Franchise Agreement (**"First Hill Franchise Agreement"**).

22.     The First Hill Franchise Agreement provided "[t]his Agreement, including the exhibits, and all ancillary agreements executed contemporaneously with this Agreement is the entire agreement between the parties…." First Hill Franchise Agreement at § 17.1.

23.     To secure Hill Group's performance of its contractual obligations, in the First Hill Franchise Agreement Hill personally guaranteed Hill Group's performance of "each and every obligation in this Agreement." First Hill Franchise Agreement at § 21 (Guarantee).

24.     As part of the First Hill Franchise Agreement, on July 13, 2017 Happy Tax and Hill Group executed an Area Representative Agreement whereby Happy Tax provided Hill Group with a specific geographic territory from which Hill Group could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Hill Group (**"Hill Group Area Representative Agreement"**).

25.     In exchange for the right to recruit new franchisees and receive a portion of their royalties paid to Happy Tax, section 4.1 of the Hill Group Area Representative Agreement required Hill Group to pay Happy Tax an initial fee in the amount of $39,000.00 ("**Initial Hill Area Fee**").

26.     In conjunction with the Hill Group Area Representative Agreement, on July 13, 2017 Hill Group executed a Promissory Note in favor of Happy Tax, which Hill personally guaranteed pursuant to Sections 17.1 and 21 of the First Hill Franchise Agreement and pursuant to Section 29 of the Hill Group Area Representative Agreement ("**Hill Promissory Note**").

27.     The Hill Promissory Note set forth the payment terms for Hill Group's required payment of the Initial Hill Area Fee to Happy Tax, and stated as follows:

> 4.     "Maker represents and warrants to [Happy Tax] that this Note is being made in consideration for granting a Happy Tax franchisee to Maker….
>
> \*          \*          \*          \*
>
> 6.     It shall be deemed a default of this Note if…(iii) Maker shall fail to make any payment due under this Note.  If Maker defaults under this Note, then the Payee may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable.
>
> 7.     All costs, expenses and expenditures including, and without limitation, the costs and attorney fees incurred by the Payee in enforcing this Note as a result of any default by the Maker, will be added to the principal then outstanding and will immediately be paid by the Maker. In the case of the Maker's default and the acceleration of the amount due by the Payee all amounts outstanding under this Note will bear interest at the rate of ten percent (10%) per annum from the date of demand until paid.
>
> \*          \*          \*          \*
>
> 12.     The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment or adjustment whatsoever.

Hill Promissory Note at §§ 4, 6, 7, 12.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

28.    On June 13, 2018, Happy Tax and Hill Group executed a renewed Franchise Agreement wherein Happy Tax agreed to provide Hill Group with the continued right to operate a Happy Tax franchise ("**Second Hill Franchise Agreement**").

29.    The Second Hill Franchise Agreement again provided "[t]his Agreement, including the exhibits, and all ancillary agreements executed contemporaneously with this Agreement is the entire agreement between the parties…."  Second Hill Franchise Agreement at § 17.1.

30.    To secure Hill Group's performance of its obligations under the Second Hill Franchise Agreement and the ancillary agreements incorporated therein (such as the Hill Group Area Representative Agreement), in the Second Hill Franchise Agreement Hill again personally guaranteed Hill Group's performance of "each and every obligation in this Agreement" ("**Hill Guarantee**").

31.    As part of the Second Hill Franchise Agreement, on August 8, 2018 Happy Tax (as "Franchisor"), Hill Group (as "Area Representative") and Hill (as "Guarantor") executed an amendment agreement which Hill executed both Individually and as President for Hill Group ("**Hill Group Amendment Agreement**").

32.    In the Hill Group Amendment Agreement, Hill Group and Hill agreed and acknowledged:

a.    Hill Group entered into the Hill Group Area Representative Agreement with Happy Tax dated July 7, 2017.

b.    Hill Group executed the Hill Promissory Note payable to Happy Tax in the amount of $39,000.00.

c.    Hill personally guaranteed Hill Group's obligations under the Hill Group Area Representative Agreement and the Hill Promissory Note.

d.    The Initial Hill Area Fee due to Happy Tax, as secured by the Hill Promissory Note, would be increased from $39,000.00 to $224,000.00 with a new payment schedule in exchange for Hill Group receiving a larger geographic territory from which Hill Group could recruit new franchisees.

    e.       Except as modified in the Hill Amendment Agreement, the terms, provisions and obligations contained in the Hill Area Representative Agreement and the Hill Promissory Note "remain in full force and effect."

33.      After receiving and operating its franchise, Hill Group breached the Hill Group Franchise Agreement by failing to pay Happy Tax the contractual sums due thereunder.

34.      On September 16, 2019, Hill sent Happy Tax an email stating, "My agreements are terminated."

35.      Responding on September 17, 2019, Happy Tax sent Hill Group and Hill a letter as stating as follows:

> In regard to your Area Representative Agreement, you do have the right to terminate the agreement subject to all other provisions including payment of all monies owed to Happy Tax.
>
> **14.1 Termination by You.**
> *You may terminate this Agreement at any time by giving us written notice of termination. Termination of this Agreement will be effective upon our receipt of your termination notice.  If you terminate pursuant to this paragraph, you must still comply with all of the provisions of this Agreement that require performance post termination.*

("**Hill Group Termination Notice**").

36.      The Termination Notice also advised Hill Group and Hill as follows:

> Happy Tax hereby accepts your termination of the Area Representative Agreement and brings to your attention that the outstanding amount of $224,000.00 remains due to Happy Tax.  Happy Tax intends to collect such funds.  Additionally, Happy Tax is investigating whether you have made illegal and improper representations to prospective franchisees in violation of the following clauses in your Area Representative Agreement. These would be serious violations for which Happy Tax would seek to hold you liable:
>
> Finally, regarding your Area Representative Agreement, please be reminded that, although the Agreement is in the name of your company, you have personally guaranteed all obligations of the agreement as per the following clause.

**29. GUARANTY.**
The Area Representative named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

37.     The Termination Notice also reminded Hill Group and Hill of their contractual obligations to pay these amounts post-termination under Section 14.4 of the Hill Group Franchise Agreement, which states that within fifteen (15) days of termination or expiration of the Franchise Agreement Hill Group and Hill must pay Happy Tax "all sums owed to [Plaintiff], its affiliates, or Suppliers which are then unpaid."

38.     Despite the Termination Notice, Hill Group and Hill have refused failed to pay the Area Fee when due, as required by the Hill Group Franchise Agreement and the Guarantee, have failed to pay the amounts due under the Promissory Note, and are jointly and severally liable to Happy Tax in the liquidated amount of $224,000.00, excluding interest, attorney's fees and costs.

### D.     Banyan Accounting and Drago.

39.     In 2017, Hill solicited Drago through LinkedIn and advised her about the Happy Tax Model.

40.     Thereafter, in 2017 Drago was introduced to Melissa Salyer ("**Salyer**"), Happy Tax's former Executive Vice President of Business Development.  Drago and Salyer spoke numerous times wherein Drago continuously expressed interest in purchasing a Happy Tax franchise and in ultimately having a bigger role with Happy Tax in the future.

41.     Working with Salyer on behalf of Happy Tax, over the coming months Drago and Bayan Accounting performed due diligence and continuously expressed interest to Salyer in becoming a Happy Tax franchisee, and one day possibly becoming part of the Happy Tax management team.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

42.     At that time Happy Tax was planning its inaugural convention to be held with the next month or so, and Slayer asked Costanz whether Drago could attend.  Although the convention was only for existing Happy Tax franchisees, which Bayan Accounting and Drago were not at that time, Costanz agreed to allow Drago to attend the conference based on the large investment Bayan Accounting and Drago were considering making into Happy Tax with a purchase of a franchise and a large exclusive territory in which to operate.

43.     In and around mid-2017, Drago attended the Happy Tax convention along with approximately 100 other Happy Tax franchisees, area representatives, employees and vendors, and she asked a number of questions throughout the varied presentations.

44.     At a team building event at Top Golf, Drago and Costanz spoke for a short time wherein Drago expressed how impressed she was with the Happy Tax Model and team, but also displayed emotional swings being overjoyed and overly excited one minute and overcome with emotions and bouts of uncontrollable crying the next minute when discussing her deceased parents.

45.     Drago's emotional outbursts raised concerns for Costanz regarding Drago's emotional state and made Costanz question her candidacy to become a Happy Tax franchisee.

46.     On the last day of the convention, a few Happy Tax team members invited Drago to lunch prior to heading to the airport.  As they were leaving lunch, Costanz commented to Drago that based on her interest and exuberance in the business he could one day see her becoming the Chief Executive Officer of Happy Tax.

47.     Drago immediately lit up with excitement, and from that point forward Drago set her sights on taking over and seizing control of Happy Tax.

48.     Following the conference, Drago and Bayan Accounting continued to work with Salyer towards structuring a franchise relationship whereby Drago and Bayan Accounting would have the exclusive right to operate a Happy Tax franchise in Hawaii and a large territory in the San Francisco Bay Area.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

49.     At that time, Costanz learned that Drago was considering using parts of her inheritance or settlement from the death of her parents to invest in a Happy Tax franchise. After learning this and based on his own conversation with Drago during the conference wherein Drago was overly emotional, Costanz discussed with Salyer and others whether the company should take such a large investment from such an emotionally charged prospect.

50.     Consequently, in mid to late 2017 Costanz had a one-on-one call with Drago wherein he advised her that he was concerned with her making such a large investment in Happy Tax after being so emotional during the recent conference. Costanz told Drago to think about whether or not she could conduct herself professionally so she could figure out for herself whether she wanted to proceed with purchasing a Happy Tax franchise.

51.     Following those discussion, Drago contacted Costanz and Salyer, stated she felt strongly about the business and her ability to be part of the team and make it successful, and tried to convince Costanz and Salyer to allow her and Banyan Accounting to make a large investment in the company by purchasing a Happy Tax franchise and a large franchise territory.

52.     Believing Drago would be able to conduct herself in a professional, positive and productive manner, negotiations re-commenced and on October 20, 2017 Happy Tax entered into a Franchise Agreement with Bayan Accounting ("**Banyan Franchise Agreement**").

53.     The Banyan Franchise Agreement provided "[t]his Agreement, including the exhibits, and all ancillary agreements executed contemporaneously with this Agreement is the entire agreement between the parties…." Banyan Franchise Agreement at § 17.1.

54.     To secure Banyan Accounting's contractual performance of its obligations, in the Banyan Franchise Agreement Drago personally guaranteed Banyan Accounting's performance of "each and every obligation in this Agreement" ("**Banyan Guarantee**").

55.     As part of the Banyan Franchise Agreement, on December 11, 2017 Happy Tax and Banyan Accounting executed an Area Representative Agreement whereby Happy Tax provided Banyan with a specific geographic territory from which Banyan could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Banyan Accounting ("**Banyan Area Representative Agreement**").

56.     In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the Area Representative Agreement required Banyan Accounting to pay Happy Tax an initial fee in the amount of $1,984,600.00 ("**Initial Banyan Area Fee**").

57.     In conjunction with the Banyan Area Representative Agreement, on December 11, 2017 Banyan Accounting executed a Promissory Note in favor of Happy Tax, which Drago personally guaranteed pursuant to Sections 17.1 and 21 of the Banyan Franchise Agreement, and pursuant to Section 29 of the Banyan Area Representative Agreement ("**Banyan Promissory Note**") (Banyan Area Representative Agreement at Exhibit "F").

58.     The Banyan Promissory Note set forth the payment terms for Banyan Accounting's required payment of the Initial Banyan Area Fee to Happy Tax, and stated as follows:

> 4.     "Maker represents and warrants to [Happy Tax] that this Note is being made in consideration for granting a Happy Tax franchisee to Maker….
>
> \*          \*          \*          \*
>
> 6.     It shall be deemed a default of this Note if…(iii) Maker shall fail to make any payment due under this Note.  If Maker defaults under this Note, then the Payee may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

7.      All costs, expenses and expenditures including, and without limitation, the costs and attorney fees incurred by the Payee in enforcing this Note as a result of any default by the Maker, will be added to the principal then outstanding and will immediately be paid by the Maker. In the case of the Maker's default and the acceleration of the amount due by the Payee all amounts outstanding under this Note will bear interest at the rate of ten percent (10%) per annum from the date of demand until paid.

    *    *    *    *

12.     The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment or adjustment whatsoever.

Banyan Promissory Note at §§ 4, 6, 7, 12.

59.     On May 31, 2018, Happy Tax (as "Franchisor"), Banyan Accounting (as "Area Representative") and Drago (as "Guarantor") executed an amendment agreement to the Banyan Franchise Agreement which Drago executed both Individually and as President for Banyan ("**First Banyan Amendment Agreement**").

60.     In the First Banyan Amendment Agreement, Banyan Accounting and Drago agreed and acknowledged:

a.      Banyan Accounting entered into the Banyan Area Representative Agreement with Happy Tax dated December 11, 2017.

b.      Banyan Accounting executed the Banyan Promissory Note payable to Happy Tax in the amount of $1,587,68.00.

c.      Drago personally guaranteed Banyan Accounting's obligations under the Banyan Area Representative Agreement and the Banyan Promissory Note.

d.      The Principal on the Banyan Promissory Note due to Happy Tax would be decreased from $1,587,680 to $920,080 with a new payment schedule in exchange for Banyan Accounting receiving a smaller geographic territory from which Banyan Accounting could recruit new franchisees.

e.      In exchange for allowing this Amendment, Area Representative and all of Area Representative's guarantors, members, officers, directors, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge Franchisor, its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates

(collectively "Franchisor Released Parties") from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

  f.  Except as modified in the Banyan Amendment Agreement, the terms, provisions and obligations contained in the Banyan Area Representative Agreement and the Banyan Promissory Note "remain in full force and effect."

61.  On January 9, 2019, Happy Tax (as "Franchisor"), Banyan Accounting (as "Area Representative") and Drago (as "Guarantor") executed a second amendment agreement to the Banyan Franchise Agreement which Drago executed both Individually and as President for Banyan Accounting ("**Second Banyan Amendment Agreement**").

62.  In the Second Banyan Amendment Agreement, Banyan Accounting and Drago agreed and acknowledged:

  a.  Banyan Accounting entered into the First Amendment Agreement with Happy Tax with the payable amount of $920,080.00 to Happy Tax.

  b.  Drago personally guaranteed Banyan Accounting's obligations under the Banyan Area Representative Agreement and the Banyan Promissory Note.

  c.  The Principal on the Banyan Promissory Note due to Happy Tax would be decreased by $102,231.11with a new payment schedule in exchange for Banyan making a payment of $50,000.00 on or before January 9, 2019.

  d.  In exchange for allowing this Amendment, Area Representative and all of Area Representative's guarantors, members, officers, directors, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge Franchisor, its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates (collectively "Franchisor Released Parties") from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

e.    Except as modified in the First Banyan Amendment Agreement, the terms, provisions and obligations contained in the Banyan Area Representative Agreement, Amendment and the Banyan Promissory Note "remain in full force and effect."

63.    On February 27, 2019, Happy Tax (as "Franchisor"), Banyan Accounting (as "Area Representative") and Drago (as "Guarantor") executed a third amendment agreement to the Banyan Franchise Agreement which Drago executed both Individually and as President for Banyan ("**Third Banyan Amendment Agreement**").

64.    In the Third Banyan Amendment Agreement, Banyan and Drago agreed and acknowledged:

a.    Banyan Accounting entered into the First Amendment Agreement with Happy Tax.

b.    Banyan Accounting executed the First Amendment Agreement with the payable amount of $920,080.00 to Happy Tax.

c.    Drago personally guaranteed Banyan Accounting's obligations under the Banyan Area Representative Agreement and the Banyan Promissory Note.

d.    The Principal on the Banyan Promissory Note due to Happy Tax would be decreased by $300,000.00 with a new payment schedule in exchange for Banyan making a payment of $150,000.00 on or before April 8, 2019.

e.    In exchange for allowing this Amendment, Area Representative and all of Area Representative's guarantors, members, officers, directors, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge Franchisor, its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates (collectively "Franchisor Released Parties") from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

f.    Except as modified in the Banyan Amendment Agreement, the terms, provisions and obligations contained in the Banyan Area Representative Agreement, Amendment and the Banyan Promissory Note "remain in full force and effect."

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

65.    On April 2, 2019, Happy Tax (as "Franchisor"), Banyan Accounting (as "Area Representative") and Drago (as "Guarantor") executed a fourth amendment agreement to the Banyan Franchise Agreement which Drago executed both Individually and as President for Banyan ("**Fourth Banyan Amendment Agreement**").

66.    In the Fourth Banyan Amendment Agreement, Banyan Accounting and Drago agreed and acknowledged:

   a.    Banyan Accounting entered into the First Amendment Agreement with Happy Tax with the payable amount of $920,080.00 to Happy Tax.

   b.    Drago personally guaranteed Banyan Accounting's obligations under the Banyan Area Representative Agreement and the Banyan Promissory Note.

   c.    The current outstanding principal balance on the Banyan Promissory Note due to Happy Tax is $517,848.89.

   d.    Except as modified in the Banyan Amendment Agreement, the terms, provisions and obligations contained in the Banyan Area Representative Agreement, Amendment and the Banyan Promissory Note "remain in full force and effect."

   e.    In exchange for allowing this Amendment, Area Representative and all of Area Representative's guarantors, members, officers, directors, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge Franchisor, its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates (collectively "Franchisor Released Parties") from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

67.    After receiving and operating its franchise, Banyan Accounting breached the Banyan Franchise Agreement in multiple respects.

68.    For example, Banyan Accounting violated Section 5.1(g) of the Banyan Franchise Agreement by mentioning Happy Tax on an unauthorized website promoting other services.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

69.     Banyan Accounting further breached Section 7.7 of the Banyan Franchise Agreement by failing to report to Happy Tax by the 5th of each month Banyan Accounting's Gross Revenues for Happy Tax to prepare a reconciliation.

70.     Moreover, from the very beginning of her franchise relationship with Happy Tax Drago, acting individually and on behalf of Banyan Accounting, terrorized, harassed, intimidated and pressured the Happy Tax team with a barrage of requests, demands and special treatment requirements.

71.     As a result of Drago's incessant and unruly behavior towards Happy Tax team members and others, some Happy Tax team members advised Costanz they intended to quit if Drago continued her disruptive and destructive conduct.

72.     Thus, in early 2018 Costanz and others met Drago in Las Vegas to discuss Drago's destructive conduct that was negatively impacting Happy Tax team members and the Happy Tax operations as a whole.

73.     Following that meeting, for a short period of time, Drago became less combative and curtailed her disruptive and unruly behavior that was detrimental to the success of the company.

74.     Plaintiffs later learned Drago ceased her disruptive conduct because during that time Drago and Bayan Accounting had been secretly working on a separate accounting business in direct breach of Sections 7.4, 7.13 and 9.1(a)(1) of the Banyan Franchise Agreement.

75.     Accordingly, on September 16, 2019 Costanz sent Drago an email in "a final attempt to repair and improve the relationship between you and Happy Tax," advising Drago:

a.      "…we have lost several important team members over the past 2 weeks because of your communications to others about threats";

b.      "The barrage of emails is not helping, only making things much worse at the company.";

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

c.   "At each step we have been faced with being under siege primarily from you and one other franchisee that is distracting management and impacting our results.";

d.   "The company cannot withstand the instability created by the disinformation that is circulating.  I am writing in a last attempt to resolve things."; and

e.   "I am only trying to protect the company, its shareholders, its franchisees and its customers.  I very much hope we can come to a resolution that is the company's and your best interest.  I won't however let this continue as it has.  Please let us know which of the above scenarios is your preference to explore as the next step.  Thank you."

76.   On February 28, 2020, Banyan Accounting defaulted on the April 2, 2019 Fourth Amendment Agreement (incorporated into the Banyan Franchise Agreement) and Banyan Promissory Note by not paying the annual Promissory Note payment of $64,731.11 plus interest.

77.   Despite the payment being due and acknowledged multiple times by Banyan Accounting and Drago in various documents, Banyan Accounting and Drago have failed to pay the Area Fee when due, as required by the Banyan Franchise Agreement, Area Representative Agreement and the Guarantee, have failed to pay the amounts due under the Promissory Note, and are jointly and severally liable to Happy Tax in at least the amount of $517,848.89, excluding interest, attorney's fees and costs.

**E.   Greene Breaches His Agreements with Happy Tax.**

78.   On August 3, 2017, Happy Tax and Greene entered into a Franchise Agreement wherein Happy Tax agreed to provide Greene with the right to operate a franchise relating to the establishment and operation of an income tax preparation business under the name "Happy Tax®" ("**Greene Franchise Agreement**").

79.   The Greene Franchise Agreement provided "[t]his Agreement, including the exhibits, and all ancillary agreements executed contemporaneously with this Agreement is the entire agreement between the parties…."  Greene Franchise Agreement at § 17.1.

80.     To secure Greene's performance of its obligations under the Greene Franchise Agreement and the ancillary agreements incorporated therein (such as the Area Representative Agreement), in the Greene Franchise Agreement Greene personally guaranteed the performance of "each and every obligation in this Agreement" ("**Greene Guarantee**").

81.     As part of the Greene Franchise Agreement, on July 14, 2017 Happy Tax and Greene executed an Area Representative Agreement whereby Happy Tax provided Greene with a specific geographic territory from which Greene could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Greene ("**Greene First Area Representative Agreement**").

82.     In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the First Area Representative Agreement required Greene to pay Happy Tax an initial fee in the amount of $91,600.00 ("**Greene First Area Fee**").

83.     In conjunction with the Greene First Area Representative Agreement, on July 14, 2017 Greene executed a Promissory Note in favor of Happy Tax, which Greene personally guaranteed pursuant to Sections 17.1 and 21 of the Greene Franchise Agreement, and pursuant to Section 29 of the Greene First Area Representative Agreement ("**Greene First Promissory Note**") (Greene Area Representative Agreement at Exhibit "F").

84.     As part of the Greene Franchise Agreement, on December 12, 2017 Happy Tax and Greene executed a Second Area Representative Agreement whereby Happy Tax provided Greene with a specific geographic territory from which Greene could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Greene ("**Greene Second Area Representative Agreement**").

19

85.     In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the Area Representative Agreement required Greene to pay Happy Tax an initial fee in the amount of $368,400 ("**Greene Second Area Fee**").

86.     In conjunction with the Greene Area Representative Agreement, on December 12, 2017 Greene executed two additional Promissory Notes in favor of Happy Tax, which Greene personally guaranteed pursuant to Sections 17.1 and 21 of the Greene Franchise Agreement, and pursuant to Section 29 of the Greene Area Representative Agreement ("**Greene Additional Promissory Notes**") (Greene Area Representative Agreement at Exhibit "F").

87.     The Greene Promissory Notes set forth the payment terms for Greene's required payment of the Initial Greene Area Fee to Happy Tax, and stated as follows:

> 4.      "Maker represents and warrants that this Note is being made in consideration for granting a Happy Tax franchisee to Maker….
>     *           *           *           *
> 6.      It shall be deemed a default of this Note if…(iii) Maker shall fail to make any payment due under this Note.  If Maker defaults under this Note, then the Payee may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable.
>
> 7.      All costs, expenses and expenditures including, and without limitation, the costs and attorney fees incurred by the Payee in enforcing this Note as a result of any default by the Maker, will be added to the principal then outstanding and will immediately be paid by the Maker. In the case of the Maker's default and the acceleration of the amount due by the Payee all amounts outstanding under this Note will bear interest at the rate of ten percent (10%) per annum from the date of demand until paid.
>     *           *           *           *
> 12.     The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment or adjustment whatsoever.

Greene Promissory Notes at §§ 4, 6, 7, 12.

88.     On   January   9,   2019,   Happy   Tax   (as   "Franchisor"),   Greene (as "Area Representative") and Greene (as "Guarantor") executed an amendment agreement which Greene executed Individually ("**Greene Amendment Agreement**").

89.     In the Greene Amendment Agreement, Greene agreed and acknowledged:

a.      Greene entered into the entered into two Area Representative Agreement with Happy Tax dated July 14, 2017 and December 12, 2017.

b.      Greene executed the Greene Promissory Notes payable to Happy Tax in the amounts of $41,000.00 and $326,400.00.

c.      Greene personally guaranteed Greene's obligations under the Greene Area Representative Agreements and the Greene Promissory Notes.

d.      The Principal on the Greene Promissory Notes due to Happy Tax would be decreased by $45,925.00 to $316,350.00, with a new payment schedule in exchange for Greene making a $30,000 payment by January 9, 2019.

e.      In exchange for allowing this Amendment, Area Representative and all of Area Representative's guarantors, members, officers, directors, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge Franchisor, its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates (collectively "Franchisor Released Parties") from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

f.      Except as modified in the Greene Amendment Agreement, the terms, provisions and obligations contained in the Greene Area Representative Agreements and the Greene Promissory Notes "remain in full force and effect."

90.     On February 28, 2020, Greene defaulted under the Greene Amendment Agreement and Greene Promissory Notes by not paying the annual Promissory Note payment of $45,193.00 plus interest.

91.     Despite the payment being due and acknowledged multiple times by Greene in various documents, Greene has failed to pay the Area Fee when due, as required by the Greene Franchise Agreement, Area Representative Agreement and the Guarantee, has failed to pay the

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

amounts due under the Greene Promissory Notes, and is liable to Happy Tax in at least the amount of $316,350.00, excluding interest, attorney's fees and costs.

### F.   Defamation Defendants Verbally Defame Plaintiffs.

92.     In early 2019 numerous unforeseen events adversely impacted Happy Tax's revenue growth including a downturn in the cryptocurrency market which the company had found a niche in preparing tax returns for those that had traded cryptocurrency.

93.     Moreover, at the beginning of the 2019 tax season, the largest retail tax preparation firm, H&R Block, began unlawfully advertising itself as the only company to offer upfront, transparent tax preparation pricing, which Happy Tax had been offering since opening in 2015.

94.     When H&R Block refused to cease infringing on the Happy Tax Model, Happy Tax sued H&R Block in state and then federal court.  Although the case was ultimately resolved, it cost Happy Tax significant legal fees and opportunity cost, thereby reducing Happy Tax's revenues and putting a significant strain on Costanz, who was then the acting Chief Executive Officer of Happy Tax.

95.     To make matters worse, at the start of H&R Block litigation Costanz suffered an agonizing bicep injury which led to a donor tendon replacement surgery right in the middle of tax season.

96.     The stress from the H&R Block litigation, combined with Costanz's physical injuries, took a significant physical and emotional toll on Costanz that required him to work less than his normal 14-16 hour days he typically worked during tax season.

97.     This forced Costanz to rely in large part on his team of executives to operate and manage Happy Tax while Costanz recovered, specifically Salyer and Randall Pevin ("**Pevin**"), the former Vice President of Operations for Happy Tax.

98.     Pevin enlisted Drago to prepare the franchisee accounting reconciliations for Happy Tax, which Drago started in April of 2019 but never completed.

99.     Smelling blood in the water and sensing an opportunity to seize control of the company, in early 2019 Drago began forming a group of investors to purchase Costanz's ownership interest in Happy Tax so Drago could take control of the Happy Tax operations.

100.    Consequently, in early 2019 due diligence ensued and Costanz provided Drago with extensive amounts of information and documents concerning Happy Tax's finances and business operations.  Ultimately, Drago and Costanz were unable to reach an agreement.

101.    Angered she was unable to purchase Costanz's ownership interest in and take control of Happy Tax, from that point forward Drago began recruiting other Happy Tax franchisees to take part in an unlawful scheme to destroy the company and assist Drago with her personal vendetta to injure Costanz.

102.    Beginning in mid-2019, Drago recruited Hill and Hill Group and together they began a destructive campaign of defamation and commercial disparagement against Plaintiffs.

103.    Drago even publicly and boldly proclaimed her intent to take over Happy Tax by distributing a picture of herself to other Happy Tax franchisees containing the words "new candidate for Happy Tax CEO" ("**Drago Picture**"), attached as **Exhibit "1."**

104.    On numerous occasions, Pevin and Salyer, among other Happy Tax employees and franchisees, informed Costanz that Defamation Defendants were each making and publishing false, defamatory and injurious statements regarding Happy Tax and Costanz, falsely telling Happy Tax team members and potential investors that there was criminal activity at the company, that Costanz was a fraud and was dishonest, that Happy Tax's financials and franchise disclosures were fraudulent, and that a big class action type lawsuit was coming against the company and its team members.   No such case was ever filed.

105.     Specifically, on May 27, 2019 Drago told Monica Porier ("**Poirier**") who was a franchisee at that time that "there was fraud going on with the company and that there was criminal activity at the company."

106.     On May 29, 2019, Hill said that "the company was fraudulent" on a conference call with franchisees Porier, Mike Halpern, Don Fontana, David Kipp, Jeremy Noble, Anteneh Dejene, Scott Lucas and Jennifer Raimondi.

107.     On June 21, 2019, franchisee Mike Halpern told Porier who was then assisting Happy Tax with their accounting, "that Tricia told him the financials were fraudulent and that Mario was a criminal."

108.     On August 26, 2019, Pevin sent a text message to Porier stating, "Between you and me, I think she is about to drop a bomb on us" in reference to Drago.

109.     On a subsequent phone conversation between the two later that day, Pevin detailed that "Tricia was calling him almost daily crying to him about how she was supposed to be the CEO and she was very mad and crushed over it."  Pevin additionally stated to Porier, that Drago said "Mario was a compulsive liar who only cared about himself."

110.     On September 4, 2019, on a monthly franchise conference call, Drago and Hill barraged the executives with a number of in inappropriate, accusatory, negative and destructive questions and comments in an attempt to undermine the confidence in Happy Tax with its franchisees.

111.     On September 6, 2019, Drago and Hill further emailed out a letter entitled "Partner List of Questions" containing over 120 inappropriate, accusatory, negative and destructive question to thirty one Happy Tax employees, Board members and franchisees ("**Partner Questions**").

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

112.     During the month of September 2019, Drago (individually and on behalf of Banyan Accounting) and Hill (individually and on behalf of Hill Group) published a barrage of negative, demanding and disrespectful emails regarding Plaintiffs to the same thirty-one recipients of the Partner Questions.

113.     On September 18, 2019, the company's Vice President of Operations resigned because she could handle the overwhelming stress caused by the incessant lawsuit talk from Drago and Hill.

114.     As a direct result of the unlawful scheme perpetrated by Drago (individually and on behalf of Banyan Accounting), Hill (individually and on behalf of Hill Group), Happy Tax went from a fast growing and innovative company to one where Happy Tax team members were constantly intimidated and bombarded by these Defamation Defendants, keeping everyone in constant fear of a lawsuit thereby irrevocably poisoning the company and its ability to generate revenue.

115.     Because of the financial damages sustained by Happy Tax caused by the Defamation Defendants acting individually and in concert to intentionally destroy Happy Tax and injure Costanz, in 2019 the company ceased growing, became unable to continue paying many of its employees, and Happy Tax was forced to lay off many Happy Tax team members.

G.     **Defamation Defendants' Written Defamatory Publications.**

116.     Happy Tax discovered that on September 9, 2019, without authorization and in violation of Happy Tax's rights, someone created the email address "Team Happy Tax happytax@protonmail.com" to send emails to Happy Tax franchisees, employees, board members, investors and others.

117.     Happy Tax was alerted to the abusive actions and defamatory emails by multiple parties including Happy Tax board members, employees and current franchisees who received the emails.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

118.    On September 27, 2019, Hill and certain other current and former franchisees and area representatives sent a letter to four different organizations and agencies in three different states raising issues with the financial statements prepared by Happy Tax's outside auditor ("**September 27th Regulator Letter**"), attached as **Exhibit "2."**

119.    The September 27th Regulator Letter was signed by:

Jamey Hill, MSA And on behalf of Tricia Drago, MSA, Sean McDonald, CPA, Chad Greene, CPA, Johnnie Jemel Mainer Smith and those similarly situated Concerned citizen for protecting the public interest Happy Tax Investors.

120.    On September 28, 2019—the very next day after the September 27th Regulator Letter was sent—an email was published and sent anonymously from the "Team Happy Tax happytax@protonmail.com" email address to at least fifteen Happy Tax investors, employees, Board Members and advisors ("**September 28th Email**").

121.    The September 28th Email subject line was "Mario Costanz and Happy Tax" and contained the following defamatory statements injurious to Plaintiffs:

a.    "As of today, Mario is under preliminary criminal investigation in at least two states and by one federal entity. More will follow."

b.    "Mario Costanz, Happy Tax and his executive team will soon be served with civil complaints in multiple states."

c.    "his [Mario Costanz] dishonesty";

d.    "Mario Costanz is unstable and dishonest.  He is a thief and a bully.";

e.    'There is no doubt that Mario Costanz will soon be under scrutiny and going to prison.":

f.    "You have entrusted a dishonest person [Mario Costanz] with your money...";

g.    "Mr. Costanz is a pathological liar."

h.    "If you are employed by Happy Tax LLC, you should leave before your good-faith efforts are rewarded with turmoil, uncertainty and legal liability.";

i.    "If you are Mario Constanz's new employer, you have made a mistake entrusting him with your business and your reputation."

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

122.     The fact the September 28th Email references a "preliminary criminal investigation in at least two states and by one federal entity," and claimed that "Mario Costanz, Happy Tax and his executive team will soon be served with civil complaints in multiple states," along with the fact that the September 27th Regulator Letter was signed by Defamation Defendants just the day before, provides evidence demonstrating Defamation Defendants are responsible for creating and publishing the September 28th Email.

123.     Moreover, based on Pevin, Salyer, Porier and Halpern's statements to Plaintiffs that Defamation Defendants were each making and publishing false, defamatory and injurious statements regarding Happy Tax and Costanz, as outlined in Section "F" above, based on the language used in the September 28th Email, and based on the fact that the email commences, "We are writing this communication anonymously," and repeats "we" at the close of the email, provides further proof evidencing Defamation Defendants are responsible for the contents of and for publishing the September 28th Email.

124.     Furthermore, the statement in the September 28th Email that "If you are Mario Constanz's new employer, you have made a mistake entrusting him with your business and your reputation," raises an additional point leading back to Defamation Defendants.

125.     This is because Hill had previously misspelled Costanz's last name as "Constanz" on 12 previous emails in the exact same way Costanz's name is misspelled in the September 28th Email.

126.     In addition, the statement in the September 28th Email that "Happy Tax LLC recently received a one million dollar investment" raises an additional point which again leads back to Defamation Defendants.

127.     The one million dollar investment Happy Tax received had not been announced to all the franchisees; however Pevin was directly aware of this as Costanz had told Pevin, who then shared that information with Drago and Hill.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

128.     On or about October 11, 2019, Happy Tax's then Chief Tax Officer, Knox Wimberly sent a letter from Happy Tax's counsel to the owner of the "Team Happy Tax happytax@protonmail.com" email account demanding that the owner of the email account cease and desist from sending such emails.

129.     On October 14, 2019, another anonymous email believed to have originated from and been disseminated by Defamation Defendants coming from "Team Happy Tax happytax@protonmail.com," containing no subject line, was sent to Knox Wimberly, Happy Tax's Chief Tax Officer, stating: "As you know, we have been defrauded by Happy Tax and you are no small part of that. You may know that we have specific knowledge about you and the company." The email asserted or implied that Mr. Wimberly was part of a fraud by Happy Tax, which statement was false and defamatory.

130.     Another email later the same day from "Team Happy Tax happytax@protonmail.com" to Mr. Wimberly stated: "We did not threaten you and you have had many chances to help us. Trying to trick us with that png file and yesware was lazy. And sending it from your Happy Tax email account betrayed your intentions. The only way you can prove your honesty is to denounce Happy Tax rather than perpetuating the fraud." The reference to "fraud" in such email was false and defamatory. The email to Mr. Wimberly also was abusive because the sender or sender group sought to persuade Mr. Wimberly to denounce his employer and injure Happy Tax's business and reputation.

131.     Happy Tax, by their counsel, contacted Proton Technologies Gmbh in Switzerland and reported the transmission of abusive and defamatory emails from "Team Happy Tax happytax@protonmail.com." Happy Tax also noted that owner of "Team Happy Tax happytax@protonmail.com" was violating Happy Tax's trademark rights by using its trademark in the section of the email address.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

132.     Proton Technologies responded and advised that they had suspended the "Team Happy Tax happytax@protonmail.com" email account.

133.     After the "Team Happy Tax happytax@protonmail.com" email account was suspended, Defamation Defendants continued their campaign of sending further abusive, defamatory emails to an employee and a recent investor in Happy Tax.

134.     On October 23, 2019, additional anonymous defamatory email commenced being sent from a new email address of alltrue@tuta.io.

135.     An "anonymous" email was sent to Nathan Pratt, Happy Tax's then Director of Marketing (**"October 23rd Email"**).   The October 23rd Email, captioned "HT - be careful," published false information and was defamatory.   It stated in part: "You are now in danger of Mario Costanz's fraud affecting you.   We hear that you are a good Christian man. We don't want you to be hurt."   The reference to "fraud" in such email was false and defamatory.

136.     The October 23rd Email also stated: "The attached documents are a precursor to new regulatory, civil and criminal charges coming to Mario Costanz and possibly Monica Poirier and Knox Wimberley.   The October 23rd Email mirrors the tone of the Partner List of Questions and the September 27th Regulator Letter.

137.     The October 23rd Email attached copies of a settled case "BRONX TAX, LLC, against HUBTAX, LLC, HAPPY TAX FRANCHISING LLC, et al," and the Partner Questions previously sent out by Defamation Defendants.   Notably, this same Hubtax case was referenced once in the Partner Questions and twice in the September 27th Regulator Letter.

138.     Furthermore, Drago had also referenced the Hubtax case in a September 10, 2019 email to Poirier stating "It looks like there was a settlement judgement on 8/13/18 and subsequent confession of judgement due to default on said settlement in 10/26/18," showing Drago knew the detailed specifics of the case.

139.     The next day, on October 24, 2019 Happy Tax's counsel  sent a letter to Tutao GmbH, the operator of the tuta.io email, in Germany, requesting that the email account alltrue@tuta.io be suspended and requesting the turning over of information regarding the owner of the account.

140.     On October 29, 2019, another anonymous defamatory email was sent to a new major investor in Happy Tax ("**October 29th Email**").  The October 29th Email used the identical subject line "Mario Costanz and Happy Tax" as the defamatory email sent from the "Team Happy Tax happytax@protonmail.com" email account.

141.     The October 29th Email indicated it was being sent by a group of franchisees and area representatives for Happy Tax: "We are contacting you to enlighten you about your recent investment.  We are franchisees and area reps for Happy Tax. We understand that you are a recent investor and we also know you have the reputation of an honorable man."

142.     The October 29th Email published false statements about Plaintiffs as follows:

a.     "Mario has committed fraud on many levels in his dealings with us. We know that he completely misrepresented the business to you when negotiating your investment. We also know that he is continuing to misrepresent the business to you by lying about revenue and existing partner relationships.  There are very few active partners if any.  Happy Tax has simply destroyed these relationships through incompetence, mistreatment and fraud."

b.     "Mario and Happy Tax are currently under investigation in several states and by several regulatory agencies. We know this to be factual because we are directly involved in providing information to these agencies.  There is a wave of civil, regulatory and criminal investigations underway."

c.     "We are at the point where we think mental illness [Mario Costanz] might be involved."

d.     "Mario is sue-happy and is already suing some of us" (referencing the fact Happy Tax had already filed suit against Hill and Hill Group in state court).

e.      "He [Mario Costanz] is a conman and a fraudster.  We will soon have access to explosive documents that we will send you when we can.  These documents will prove the statements in this email.  Should you want one of us to contact you directly and without anonymity, please let us know.  We are not hiding. We are just well aware that Mario will try to destroy anyone who speaks the truth.  He is already doing it to some of us who invested and worked our backsides off for Happy Tax.  Mario is shameless and we will see to it that he gets what he deserves and we are made whole."

143.    The fact the October 29th Email stated that "Mario and Happy Tax are currently under investigation in several states and by several regulatory agencies. We know this to be factual because we are directly involved in providing information to these agencies.  There is a wave of civil, regulatory and criminal investigations underway," and Defamation Defendants sent the letters to several regulatory agencies, provides further support that Defamation Defendants are behind the statements in the October 29th Email.

144.    Furthermore, the October 29th Email included the same attachments as the October 23rd Email regarding the Hubtax case and Partner Questions.

145.    The next day, a second "anonymous" defamatory email was sent from alltrue@tuta.io to the major investor ("**October 30th Email**").

146.    The October 30th Email used the identical caption "Mario Costanz and Happy Tax" as the email sent from the "Team Happy Tax happytax@protonmail.com" email account.  The October 30th Email asserted false and defamatory statements as follows:

a.      "HT has pretty much abandoned the business you invested in"

b.      "the [Happy Tax] franchise model is dead due to Mario's incompetence and fraud."

c.      "Mario is using your money to grow cryptotaxacademy.com and cryptotaxprep.com. He is then calling this "growth"

147.    The statement "Mario is using your money to grow cryptotaxacademy.com and cryptotaxprep.com. He is then calling this 'growth'" is similar with statements that Drago had made previously.

148.    For example, on March 18, 2019 Drago emailed Pevin "Happy tax's current tax revenue stream without CTP and CTA isn't valuable" (CTP is cryptotaxprep.com and CTA is cryptotaxacademy.com).

149.    On June 15, 2019, Drago sent a text message to Poirier stating "because it's [Crypto Tax Academy] the only thing generating profit right now."

150.    Plaintiffs have retained the undersigned law firm and have agreed to pay them a reasonable fee for its legal services.

151.    All conditions precedent to the maintenance of this action have occurred, have been performed by Plaintiffs, or have otherwise been waived or excused by Defendants.

## <u>COUNT I—BREACH OF PROMISSORY NOTE</u>
### *(Happy Tax Against Hill Group)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 38, and 150 through 151 above, as if fully set forth herein.

152.    As part of the First Franchise Agreement, on July 7, 2017 Happy Tax and Hill Group executed the Area Representative Agreement whereby Plaintiff provided Hill Group with a specific geographic territory from which Hill Group could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Hill Group.

153.    In exchange for the right to recruit new franchisees and receive a portion of their royalties and fee Happy Tax, section 4.1 of the Area Representative Agreement required Hill Group to pay Plaintiff the Initial Area Representative Fee in the original amount of $39,000.00.

154.    To secure payment of the Initial Area Representative Fee, on July 13, 2017 Hill Group executed the Promissory Note in favor Happy Tax wherein Hill Group expressly acknowledged that the Promissory Note "is being made in consideration for granting a Happy Tax franchisee to [Hill Group]."

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

155.    On August 8, 2018, Happy Tax and Hill Group executed the Amendment Agreement wherein Hill Group agreed and acknowledged that (i) the Initial Area Representative Fee due to Plaintiff, as secured by the Promissory Note, would be increased from $39,000.00 to $224,000.00 with a new payment schedule in exchange for Hill Group receiving a larger geographic territory from which Hill Group could recruit new franchisees, and (ii) except as modified in the Amendment Agreement, the terms, provisions and obligations contained in the Area Representative Agreement and the Promissory Note "remain in full force and effect."

156.    Happy Tax fully performed its obligations under the applicable agreements.

157.    Despite having already received and operated the franchise, having already received the expanded geographic territory under the Area Representative Agreement, as amended by the Amendment Agreement, and despite being obligated to pay the full amount due under the Promissory Note pursuant to Section 15 of the Area Representative Agreement (Post Termination Obligations), Hill Group has failed to pay Happy Tax the liquidated amount of $224,000.00 due under the Promissory Note, and has advised Happy Tax it does not intend to make any of the future payments due to Happy Tax thereunder.

158.    As a direct and proximate result of Hill Group's breach of the Hill Promissory Note Happy Tax has suffered, and continues to suffer, liquidated damages in the amount of $224,000.00.

**WHEREFORE,** Happy Tax demands judgment against Hill Group for liquidated damages in the amount of $224,000.00, attorney's fees and costs pursuant to Section 25.11 of the Area Representative Agreement and Section 7 of the Promissory Note, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

## COUNT II---BREACH OF GUARANTY
### (*Happy Tax Against Hill*)

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 38, and 150 through 158 above, as if fully set forth herein.

159.    In July 2017, Happy Tax and Hill Group entered into the First Franchise Agreement.

160.    The First Franchise Agreement provided "[t]his Agreement, including the exhibits, and all ancillary agreements executed contemporaneously with this Agreement is the entire agreement between the parties…."  First Franchise Agreement at § 17.1.

161.    To secure Hill Group's performance of its obligations under the First Franchise Agreement and the ancillary agreements incorporated therein, in the First Franchise Agreement Hill personally guaranteed Hill Group's performance of "each and every obligation in this Agreement."  First Franchise Agreement at § 21 (Guarantee).

162.    As part of the First Franchise Agreement, on July 7, 2017 Happy Tax and Hill Group executed the Area Representative Agreement whereby Happy Tax provided Hill Group with a specific geographic territory from which Hill Group could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Hill Group.

163.    In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the Area Representative Agreement required Hill Group to pay Happy Tax the Initial Area Representative Fee in the original amount of $39,000.00.

164.     To secure payment of the Initial Area Representative Fee, on July 13, 2017 Hill Group executed the Promissory Note in favor of Happy Tax, which Hill personally guaranteed pursuant to Sections 17.1 and 21 of the First Franchise Agreement, and pursuant to Section 29 of the Area Representative Agreement.

165.     On August 8, 2018, Happy Tax and Hill Group executed the Amendment Agreement wherein Hill Group agreed and acknowledged that (i) the Initial Area Representative Fee due to Happy tax, as secured by the Promissory Note, would be increased from $39,000.00 to $224,000.00 with a new payment schedule in exchange for Hill Group receiving a larger geographic territory from which Hill Group could recruit new franchisees, and (ii) except as modified in the Amendment Agreement, the terms, provisions and obligations contained in the Area Representative Agreement and the Promissory Note "remain in full force and effect."

166.     Happy Tax has fully performed its obligations under the applicable agreements.

167.     Despite having already received and operated the franchise, having already received the expanded geographic territory under the Area Representative Agreement, as amended by the Amendment Agreement, and despite being obligated to pay the full amount due under the Promissory Note pursuant to Section 15 of the Area Representative Agreement (Post Termination Obligations), Hill Group has failed to pay Happy Tax the liquidated amount of $224,000.00 due under the Promissory Note, Hill personally has failed to pay this liquidated amount to Happy Tax pursuant to the Guaranty, and has advised Happy Tax he does not intend to make any of the future payments to Happy Tax under the Promissory Note or Guaranty.

168.     As a direct and proximate result of Hill Group's breach of the Promissory Note and Hill's breach of the Guaranty, Happy Tax has suffered, and continues to suffer, liquidated damages in the amount of $224,000.00.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

**WHEREFORE,** Happy Tax demands judgment against Hill for joint and several liquidated damages in the amount of $224,000.00, attorney's fees and costs pursuant to Section 25.11 of the Area Representative Agreement and Section 7 of the Promissory Note, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT III—BREACH OF PROMISSORY NOTE
### *(Happy Tax Against Banyan Accounting)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 39 through 77, and 150 through 151 above, as if fully set forth herein.

169.     October 20, 2017, Happy Tax and Banyan Accounting entered into the Banyan Franchise Agreement.

170.     As part of the Banyan Franchise Agreement, on December 11, 2017 Happy Tax and Banyan Accounting executed the Banyan Area Representative Agreement whereby Happy Tax provided Banyan Accounting with a specific geographic territory from which Banyan could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Banyan Accounting.

171.     On February 28, 2020, Banyan Accounting defaulted on the April 2, 2019 Fourth Banyan Amendment Agreement and the Banyan Promissory Note by not paying the annual Promissory Note payment of $64,731.11 plus interest.

172.     Section 3 of the Original December 11, 2017 Promissory Note states: "If the Maker defaults under this Note, then the Payee may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable."

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

173.     Despite the payment being due and acknowledged multiple times by Banyan Accounting and Drago in various documents, Banyan Accounting has failed to pay the amounts due under the Promissory Note to Happy Tax in at least the amount of $517,848.89, excluding interest, attorney's fees and costs.

174.     Happy Tax fully performed its obligations under the applicable agreements.

175.     As a direct and proximate result of Banyan Accounting's breach of the Banyan Accounting Promissory Note Happy Tax has suffered, and continues to suffer, liquidated damages in the amount of $517,848.89.

**WHEREFORE,** Happy Tax demands judgment against Banyan Accounting for liquidated damages in the amount of $517,848.89, attorney's fees and costs pursuant to the Area Representative Agreement and the Promissory Note, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT IV---BREACH OF GUARANTY
### *(Happy Tax Against Drago)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 39 through 77, 150 through 151, and 169 through 175 above, as if fully set forth herein.

176.     October 20, 2017, Happy Tax and Banyan Accounting entered into the Banyan Franchise Agreement.

177.     As part of the Banyan Franchise Agreement, on December 11, 2017 Happy Tax and Banyan Accounting executed the Banyan Area Representative Agreement whereby Happy Tax provided Banyan Accounting with a specific geographic territory from which Banyan could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Banyan Accounting.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

178.    In conjunction with the Banyan Area Representative Agreement, on December 11, 2017 Banyan Accounting executed the Banyan Promissory Note in favor of Happy Tax, which Drago personally guaranteed pursuant to Sections 17.1 and 21 of the Banyan Franchise Agreement,  and pursuant to Section 29 of the Banyan Area Representative Agreement.

179.    On February 28, 2020, Banyan Accounting defaulted on the April 2, 2019 Fourth Banyan Amendment Agreement and the Banyan Promissory Note by not paying the annual Promissory Note payment of $64,731.11 plus interest.

180.    Section 3 of the Original December 11, 2017 Promissory Note states: "If the Maker defaults under this Note, then the Payee may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable."  The principal amount owed as of the date of this Complaint is $517,848.89.

181.    Despite the payment being due and acknowledged multiple times by Banyan Accounting and Drago in various documents, Banyan Accounting and thus Drago pursuant to her Guaranty have each failed to pay the amounts due under the Promissory Note to Happy Tax in at least the amount of $517,848.89, excluding interest, attorney's fees and costs.

182.    As a direct and proximate result of Drago's breach of her Guaranty Happy Tax has suffered, and continues to suffer, liquidated damages in the amount of $517,848.89.

**WHEREFORE,** Happy Tax demands judgment against Drago for joint and several liquidated damages in the amount of $517,848.89, attorney's fees and costs pursuant to the Area Representative Agreement and the Promissory Note, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

## COUNT V---BREACH OF FRANCHISE AGREEMENT
### (*Happy Tax Against Banyan Accounting*)

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 39 through 77, and 150 through 151 above, as if fully set forth herein.

183.    October 20, 2017, Happy Tax and Banyan Accounting entered into the Banyan Franchise Agreement.

184.    After receiving and operating its franchise, Banyan Accounting breached the Banyan Franchise Agreement in multiple respects.

185.    Banyan Accounting violated Section 5.1(g) of the Banyan Franchise Agreement by mentioning Happy Tax on an unauthorized website promoting other services.

186.    Banyan Accounting further breached Section 7.7 of the Banyan Franchise Agreement in that it did not report to Happy Tax by the 5th of each month Banyan Accounting's Gross revenues for Happy Tax to prepare a reconciliation.

187.    Bayan Accounting had been secretly working on a separate accounting business in direct breach of Sections 7.4, 7.13 and 9.1(a)(1) of the Banyan Franchise Agreement.

188.    Happy Tax fully performed its obligations under the applicable agreements.

189.    As a direct and proximate result of Banyan Accounting's breach of the Banyan Franchise Agreement, Happy Tax has suffered, and continues to suffer damages.

**WHEREFORE,** Happy Tax demands judgment against Banyan Accounting for compensatory damages,  attorney's fees and costs pursuant to the Area Representative Agreement, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

## COUNT VI—BREACH OF PROMISSORY NOTE
### *(Happy Tax Against Greene)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 78 through 91, and 150 through 151 above, as if fully set forth herein.

190.   On August 3, 2017, Happy Tax and Greene entered into the Greene Franchise Agreement wherein Happy Tax agreed to provide Greene with the right to operate a franchise relating to the establishment and operation of an income tax preparation business under the name "Happy Tax®."

191.   As part of the Greene Franchise Agreement, on July 14, 2017 Happy Tax and Greene executed the Greene Area Representative Agreement whereby Happy Tax provided Greene with a specific geographic territory from which Greene could recruit new franchise candidates for the "Happy Tax®" program in exchange for a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Greene.

192.   In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the First Area Representative Agreement required Greene to pay Happy Tax the Greene First Area Fee.

193.   In conjunction with the Greene First Area Representative Agreement, on July 14, 2017 Greene executed the Greene First Promissory Note in favor of Happy Tax, which Greene personally guaranteed pursuant to Sections 17.1 and 21 of the Greene Franchise Agreement, and pursuant to Section 29 of the Greene First Area Representative Agreement.

194.   As part of the Greene Franchise Agreement, on December 12, 2017 Happy Tax and Greene executed a Second Area Representative Agreement whereby Happy Tax provided Greene with a specific geographic territory from which Greene could recruit new franchise candidates for the "Happy Tax®" program in exchange for, among other things, a percentage of the franchise royalties and fees received by Happy Tax from the new franchisee procured by Greene.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

195.   In exchange for the right to recruit new franchisees and receive a portion of their royalties and fees paid to Happy Tax, section 4.1 of the Area Representative Agreement required Greene to pay Happy Tax the Greene Second Area Fee in the amount of $368,400.00

196.   In conjunction with the Greene Area Representative Agreement, on December 12, 2017 Greene executed two additional Promissory Notes in favor of Happy Tax, which Greene personally guaranteed pursuant to Sections 17.1 and 21 of the Greene Franchise Agreement, and pursuant to Section 29 of the Greene Area Representative Agreement.

197.   On February 28, 2020, Greene defaulted on the January 9, 2019 Greene Amendment Agreement and Promissory Notes by not paying the amounts due to Happy Tax thereunder.

198.   Despite the payment being due and acknowledged multiple times by Greene in various documents, Greene has failed to pay the Area Fee when due, as required by the Greene Franchise Agreement, Area Representative Agreement and the Guarantee, have failed to pay the amounts due under the Promissory Note, and is liable to Happy Tax in at least the amount of $316,350.00, excluding interest, attorney's fees and costs.

199.   Happy Tax fully performed its obligations under the applicable agreements.

200.   As a direct and proximate result of Greene's breaches, Happy Tax has suffered, and continues to suffer damages.

**WHEREFORE,** Happy Tax demands judgment against Greene for liquidated damages in the amount of $316,350.00, attorney's fees and costs pursuant to the Area Representative Agreement and Promissory Note, pre-judgment and post-judgment interest, and for such other and further relief as this Court deems just and proper.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

## COUNT VII—DEFAMATION *PER SE*
### *(Plaintiffs Against Defamation Defendants)*

Plaintiffs adopt and re-allege the allegations contained in paragraphs 1 through 20, 92 through 115, and 116 through 151 above, as if fully set forth herein.

201.    Hill Group, Hill, Banyan Accounting and Drago individually and acting in concert, each knowingly published and disseminated false and defamatory statements regarding Happy Tax and Costanz.

202.    These false and defamatory statements made and published by Defamation Defendants fall into two separate categories: (a) the false and defamatory verbal statements set forth in paragraphs 92 through 115 above; and (b) the false and defamatory written statements contained in the allegedly "anonymous" emails set forth in paragraphs 116 through 149 above.

203.    These statements by the Defamation Defendants were false, defamatory, abusive and inflammatory because they asserted or implied, among other things, that Happy Tax was and is engaged in fraudulent conduct and that Costanz is a thief and a fraudster.

204.    The statements were extremely injurious and prejudicial in nature and subjected Plaintiffs to humiliation, ridicule and contempt.

205.    The statements were made with malicious intent to harm Happy Tax and Costanz by, among other things, injuring the reputation of Happy Tax's executives with its new major investor, encouraging Happy Tax employees to quit their employment and encouraging existing Happy Tax franchisees to terminate their business relationships with Happy Tax.

206.    Defamation Defendants either each knew that the statements were false or each of them reckless disregarded that the statements were false despite the awareness of the probable falsity of the statements.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

207.    As a direct and proximate result of the widespread dissemination of the false statements, Happy Tax has suffered monetary damages, lost profits, reputational harm including injury to its business operation, goodwill, and in Costanz's case, humiliation, mental anguish and suffering, damaged business reputation and loss of his significant investment in Happy Tax.

**WHEREFORE,** Plaintiffs demand judgment against Hill Group, Hill, Banyan Accounting and Drago for compensatory damages, punitive pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

## COUNT VIII—DEFAMATION
### *(Plaintiffs Against Defamation Defendants)*

Plaintiffs adopt and re-allege the allegations contained in paragraphs 1 through 20, 92 through 115, 116 through 151 above, as if fully set forth herein.

208.    Hill Group, Hill, Banyan Accounting and Drago individually and acting in concert, each knowingly published and disseminated false and defamatory statements regarding Happy Tax and Costanz.

209.    These false and defamatory statements made and published by Defamation Defendants fall into two separate categories: (a) the false and defamatory verbal statements set forth in paragraphs 92 through 115 above; and (b) the false and defamatory written statements contained in the allegedly "anonymous" emails set forth in paragraphs 116 through 149 above.

210.    These statements by Defamation Defendants were false, defamatory, abusive and inflammatory because they asserted or implied, among other things, that Happy Tax was and is engaged in fraudulent conduct and that Costanz is a thief and a fraudster.

211.    The statements were extremely injurious and prejudicial in nature and subjected Plaintiffs to humiliation, ridicule and contempt.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

212.    The statements were made with malicious intent to harm Happy Tax and Costanz by, among other things, injuring the reputation of Happy Tax's executives with its new major investor, encouraging Happy Tax employees to quit their employment and encouraging existing Happy Tax franchisees to terminate their business relationships with Happy Tax.

213.    Defamation Defendants either each knew that the statements were false or each of them reckless disregarded that the statements were false despite the awareness of the probable falsity of the statements.

214.    As a direct and proximate result of the widespread dissemination of the false statements, Happy Tax has suffered monetary damages, lost profits, reputational harm including injury to its business operation, goodwill, and in Costanz's case, humiliation, mental anguish and suffering, damaged business reputation and loss of his significant investment in Happy Tax.

**WHEREFORE,** Plaintiffs demand judgment against Hill Group, Hill, Banyan Accounting and Drago for compensatory damages, punitive pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

## COUNT IX—BREACH OF FRANCHISE AGREEMENTS (NON-DISPARAGEMENT)
### *(Happy Tax Against Hill Group and Banyan Accounting)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 92 through 115, and 116 through 151 above, as if fully set forth herein.

215.    Hill Group and Banyan Accounting are each a party to a Franchise Agreement with Happy Tax.

216.    Each Franchise Agreement contains a non-disparagement clause that provides: "Non-Disparagement. Franchisee agrees that at no time will it disparage Franchisor or its officers, members, agents, employees, and franchisees."

217.    Each Franchise Agreement also provides that the non-disparagement clause survives termination of the agreement and thereby is equally enforceable against any Happy Tax franchisees who have been terminated.

218.    In each Franchise Agreement the franchisee covenants to not directly or indirectly "take any action injurious or prejudicial to the goodwill associated with the [Happy Tax Model]."

219.    Hill (individually and on behalf of Hill Group) and Drago (individually and on behalf of Banyan Accounting) each made and/or published and disseminated false and defamatory statements regarding Happy Tax and Costanz.

220.    These false and defamatory statements made and published by Defamation Defendants fall into two separate categories: (a) the false and defamatory verbal statements set forth in paragraphs 92 through 115 above; and (b) the false and defamatory written statements contained in the allegedly "anonymous" emails set forth in paragraphs 116 through 149 above.

221.    These statements violate the non-disparagements clauses and the provision barring injurious or prejudicial actions contained in each of the Franchisee Agreements with these Defendants.

222.    Happy Tax has suffered monetary damages, lost profits, reputational harm including injury to their business operation, goodwill, and in Costanz's case, humiliation, mental anguish suffering, loss of income and loss of the value of his shares of Happy Tax.

**WHEREFORE,** Happy Tax demands judgment against Hill Group and Banyan Accounting for compensatory damages pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

## COUNT X - TORTIOUS INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS CONTRACTS AND RELATIONSHIPS
### *(Happy Tax Against Defamation Defendants)*

Happy Tax adopts and re-alleges the allegations contained in paragraphs 1 through 20, 92 through 115, and 116 through 151 above, as if fully set forth herein.

223.   Happy Tax enjoyed advantageous business relationships with each of its employees, team members, board members and franchisees.

224.   Defamation Defendants are each aware of those prospective and existing business contracts and relationships and have been aware of those contracts and relationships at all times material hereto.

225.   Defamation Defendants individually and acting in concert each knowingly published and disseminated false and defamatory statements regarding Happy Tax and Costanz.

226.   These false and defamatory statements made and published by Defamation Defendants fall into two separate categories: (a) the false and defamatory verbal statements set forth in paragraphs 92 through 115 above; and (b) the false and defamatory written statements contained in the allegedly "anonymous" emails set forth in paragraphs 116 through 149 above.

227.   These  statements by Defamation Defendants were false, defamatory, abusive and inflammatory because they asserted or implied, among other things, that Happy Tax was and is engaged in fraudulent conduct and that Costanz is a thief and a fraudster.

228.   The statements were extremely injurious and prejudicial in nature and subjected Plaintiffs to humiliation, ridicule and contempt.

229.   Defamation Defendants had no privilege or justification for publishing false and defamatory statements to third parties concerning Happy Tax and Costanz, and made such statements with malice, knowledge of their falsity and/or no reasonable grounds for so believing the truth of them, and with a specific intent to harm Plaintiffs.

**JEFFREY M. BERMAN, P.A.**
1722 SHERIDAN STREET NO. 225 | HOLLYWOOD, FLORIDA 33020 | OFFICE: 305.834.4150 | FAX: 305.832.0145

230.    Without justification, Defamation Defendants have intentionally and wrongfully interfered with Happy Tax's relationships with its employees, team members, board members and franchisees by continuously publishing false and defamatory statements regarding Happy Tax, which instilled fear and caused many Happy Tax team members to resign and numerous franchisees to terminate their business relationships with Happy Tax and significantly decreased Happy Tax revenue and value.

231.    As a direct and proximate result of Defamation Defendants' tortious interference with Happy Tax's advantageous business contracts and relationships, Happy Tax has, and continues to suffer, damages in the State of Florida.

**WHEREFORE,** Happy Tax demands judgment against Hill, Hill Group, Banyan Accounting and Drago for compensatory damages, pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

**DATED** this 15th day of December 2020.

Respectfully submitted,

JEFFREY M. BERMAN, P.A.
1722 Sheridan Street No. 225
Hollywood, Florida 33020
Tel  305.834.4150
Fax  305.832.0145

By:_____
JEFFREY M. BERMAN
Fla. Bar No. 14979
jeff@jmbermanlaw.com

## CERTIFICATE OF SERVICE

**I CERTIFY** that on December 15, 2020 the foregoing was served through CM/ECF to all those authorized to receive such electronic notice.

By:_____
Jeffrey M. Berman

47