September 27, 2019

MA Board of Accountancy
1000 Washington Street, Suite 710
Boston, MA 02118
accountingboard@mass.gov
(617) 727-1806

Division of Professional Licensure
Office of Investigations
1000 Washington Street, Suite 710
Boston, MA 02118


OCT 9 2019

AICPA
Professional Ethics Division
220 Leigh Farm Road
Durham, NC 27707
professionalethicssubmissions@aicpa.org

Federal Trade Commission
Washington, D.C. 20580

Re: Possible irregularities and misleading audited financial statements, financial statement reader concerns, qualification of CPA performing the audit, questionable reliance on audited financial statements, financial statements potentially not free from material misstatement, failure to provide the audited financial statements and FDD 120 days after fiscal year end to franchisees and investors and failure to provide a quarterly update on a lawsuit against Happy Tax in August 2018

To the MA Board of Accountancy, Division of Professional Licensure, AICPA, and Federal Trade Commission,

My name is Jamey Hill and I am writing you today to file a formal complaint/inquiry into the audited financial statements for the periods ended April 30, 2019, April 30, 2018 and April 30, 2017 that were listed in a Franchise Disclosure Document dated September 13, 2019, August 28, 2018, August 23, 2017 (respectively) and used in multiple 2017 WeFunder SAFE Equity investment rounds for a company called Happy Tax Franchising LLC/Happy Tax Holding Corp.

Other investors and I are deeply concerned that these audited financial statements do not provide the minimum level of reasonable assurance that a reader should generally receive with an audited financial statement. We had our suspicions about the 2018 and 2017 audited financials being conducted improperly, and our suspicions grew when we reviewed the 2019 audited financials.

Some concerns are noted below:

- Is the CPA performing the audit qualified?
- Concerns that the financial statements are misleading

- Numerous material restatements without disclosures
- Material adjustments that weren't previously reported in prior audited financial statements
- Balance sheet off balance (2017)
- Potential missing liabilities
- Potential grossly overstated revenues
- Retained earnings/equity totals not carrying forward properly
- Concern that the audited financial statements are not free from material misstatement
- Lack of financial statement disclosures to give the reader accuracy and an understanding over the financial statements
- Concern that the audit does not provide a reasonable level of assurance as required by auditing standards
- Concerns over the internal control environment and testing
- Concern over the lack of board of director and management inquiries
- Questionable presentation of SAFE equity and discontinued operations
- Discrepancies between footnotes and financial statement values
- Inaccurate FMV and allowance for doubtful accounts notes presentation
- Concerns over inconsistent/irrelevant notes to the financial statements
- Concerns that the financial statements are not substantiated
- And many other concerns not listed here

As you all know, a financial statement audit is intended to provide creditors, investors, and other outside parties with a high level of comfort on the accuracy of the financial statements. A material misstatement is one where the severity or nature of the difference (i.e., misstatement) would cause a user to form an incorrect conclusion about a financial statement. It is because of these two very important reasons that we would like to call your attention to these audited financial statements.

The audited financial statements that I have attached to this letter contain inconsistencies and irregularities that concern us and appear, on the surface, to not be audited as accepted by the AICPA generally accepted auditing standards. As listed above, these financial statements show numerous irregularities, balance sheets off balance, material restatements in audited numbers being reported for the same period, missing footnotes, unexplained restatements, and the footnotes do not give the reader of the financial statements a clear picture of the entity being audited.

Of high concern is these financial statements were used by over 400 investors to make decisions to invest in a Wefunder & SAFE Equity Investor Campaign in 2017, purchase additional territories and franchises through SAFE offerings, as well as to potential prospects to buy franchise and area rep territories for the company in excess of $3m. The Happy Tax Wefunder campaign alone solicited over $800k from 360 investors. These securities were solicited using the financials presented in the 2017 audited financial statements. These financials were completely restated with no explanation in the 2019 audited financial statements.

We respectfully request that all 4 agencies investigate this company and the nature of this audit engagement to ensure these financials were audited in accordance with generally accepted auditing standards, including confirmation that proper inquiries with the entity's board of directors and management were completed (to include the CFO Ted Muftic), that adequate testing was completed and documented, that legal attorneys were interviewed for potential lawsuits that should have been accrued on the balance sheet, that proper

approval was obtained and confirmed and which principal approved and who was fiduciary of the audited financial statements presented to investors.

We would like to see supported evidence that the financial statements were presented to all listed board of directors, and that such board members provided subsequent approval of the audited financial statements, confirmation that the internal control environment was reviewed and tested, and that the management representation letter was signed by the CEO and CFO.

I personally have worked in the auditing industry for quite some time and there appears to be enough irregularities within these financial statements to make them appear questionable and not conducted in accordance with generally accepted auditing standards as claimed in the CPA cover letter. We believe based on our concerns above, that these audited financials warrant a deeper view into ensuring audit procedures were performed to gain a level of assurance that these financials are free from material misstatement, as they were relied upon by investors, franchisees, and area representatives which caused millions of dollars to be invested under false and potentially misleading representations, which may include the intentional concealing of material financial facts by management.

The Certified Public Accountant signing off on these financials for the past 3 years is listed below:

MIKE J HADZIPANAJOTIS
56 White Street Belmont, MA 02478
(508) 648 9502
CPA License #30343

Happy Tax Franchising LLC is a franchisor located in Miami Beach, FL and specializes in selling franchises and territories in the tax preparation industry. They are required by franchise law to submit their annual franchise disclosure document ("FDD") each year and it is within the FDD where we are able to see the audited financial statements of Happy Tax Franchising LLC/Happy Tax Holding Corp. With the exception of the WeFunder campaign, this is our only opportunity to see the health of this company so they are relied upon heavily. As you know, a full financial statement audit increases the assurance level that readers place on the information within the financial statements. However, after review of the past 3 years audited financial statements of this company, it appears that they contain enough errors and questions that raise substantial concerns over the reliability of the financial statements and the qualifications of the CPA conducting the audit.

## Company Overview

Happy Tax Holdings Corp
919 North Market Street, Suite 950
Wilmington, DE 19801

Happy Tax Franchising LLC
350 Lincoln Road
Miami Beach, FL 33139

## List of Officers
Monica Poirier, CEO

Mario Costanz, Chairman and Founder (Former CEO)
Ted Muftic, Chief Financial Officer (Has since resigned)
Melissa Salyer, Vice President (Has since resigned)
Marcus Slater, VP of Marketing/Secretary (Has since resigned)

**Board of Directors Per SEC Published Form C & WeFunder Offering**
Keith Alessi
Marcus Slater
Ted Muftic
Mario Costanz
Melissa Salyer

Per AICPA standards, the audit is the highest level of assurance service that a CPA performs and is intended to provide a user comfort on the accuracy of financial statements. The CPA performs procedures in order to obtain "reasonable assurance" (defined as a high but not absolute level of assurance) about whether the financial statements are free from material misstatement.

In an audit, a CPA is required to obtain an understanding of a business's internal control and assess fraud risk. The CPA is also required to corroborate the amounts and disclosures included in the financial statements by obtaining audit evidence through inquiry, physical inspection, observation, third-party confirmations, examination, analytical procedures, and other procedures.

When performing an audit engagement, the CPA is required to determine whether his or her independence has been impaired. If the CPA's independence has been impaired, the CPA cannot perform the audit engagement.

The CPA will issue a formal report that expresses an opinion on whether the financial statements are presented fairly, in all material aspects, in accordance with the applicable financial reporting framework. In addition, the CPA is required to report any significant or material weaknesses in the organization's system of internal control that are identified during the audit. By becoming aware of internal control weaknesses and discussing these with the CPA, an organization might be able to improve the way it does business.

As the highest level of assurance, an audit typically is appropriate – and often required – when a client is seeking complex or high levels of financing and credit. An audit also is appropriate if the client is seeking outside investors or preparing to sell or merge with another business.

Key Aspects of an Audit

- Intended to provide creditors, investors, and other outside parties with a high level of comfort on the accuracy of financial statements
- CPA issues a formal report that expresses an opinion on whether the financial statements are presented fairly, in all material aspects, in accordance with the applicable financial reporting framework
- Typically appropriate and often required when seeking high levels of financing or outside investors, or when selling a business

- Seeks to obtain reasonable (defined as high, but not absolute) assurance about whether the financial statements as a whole are free of material misstatement
  - A material misstatement is one where the severity or nature of the difference (i.e., misstatement) would cause a user to form an incorrect conclusion about a financial statement
  - Misstatements can arise from either fraud or error
    - The risk of not detecting a material misstatement resulting from fraud is higher than the risk of not detecting one resulting from error, as fraud may involve sophisticated and carefully organized schemes designed to conceal it (e.g. forgery, deliberate failure to record transactions, collusion, intentional misrepresentations being made to the auditor)
    - An audit is not an official investigation into alleged wrongdoing, and an auditor is not given specific legal powers (such as the power of search) that may be necessary for such an investigation
    - The primary responsibility for the prevention and detection of fraud rests with those charged with governance of the entity and management
- When engaged to perform an audit, a CPA is required to:
  - be independent
  - obtain an understanding of the entity's internal control and assess fraud risk
  - perform inquiry and analytical procedures
  - perform verification and substantiation procedures

*Statutes and Regulations*

**252 CMR: Board of Registration in Public Accountancy**
Section 2.10: Code of Ethics and Rules of Professional Conduct
Section 2.13: Non-prohibited and Prohibited Services
Section 2.15: (2) Quality Review Certification and Compliance of Requirements

**AICPA Code of Conduct**
Section 0.300.030 The Public Interest
Section 0.300.070 Scope and Nature of Services

**Generally Accepted Auditing Standards**
AU-150: Generally Accepted Auditing Standards
AU-C 200: Overall Objectives of the Independent Auditor
AU-C 240: Considerations of Fraud in a Financial Statement Audit

**Federal Trade Commission**
Franchise Rule 16 C.F.R. Part 436 – Compliance Guide

The reliance on these "audited financial statements" is being questioned because of the multiple discrepancies discovered. We do not feel that these audited financial statements are a fair and material representation of the entities in question. We do not feel that the audited financials have ever portrayed a fair representation of the entity and are materially misstated.

Thank you for taking the time to look into these financial statement audits. We feel a duty to protect the public interest and feel there is substantial concern over the audited financial statements being presented to make informed investment decisions.

Should you have any questions, you can reach out to me at 702-286-7900 or at jameylhill@yahoo.com.

Respectfully,

Jamey Hill, MSA
And on behalf of Tricia Drago, MSA, Sean McDonald, CPA, Chad Greene, CPA, Johnnie Jemel Mainer-Smith and those similarly situated
Concerned citizen for protecting the public interest
Happy Tax Investors

*Enclosures:*
Recent Timeline of Events Leading Up To Filing This Complaint
A Summary of 2017/2018 Financial Statement Questions (Please refer to Happy Tax Analysis Schedule)
Division of Professional Licensure Application for Complaint
MA Board of Accountancy License Verification – Michael J. Hadzipanajotis
Michael J. Hadzipanajotis LinkedIn Profile
Happy Tax WeFunder List of Board of Directors & Officers
04-30-2017 Happy Tax Audited Financial Statements & Consent
04-30-2018 Happy Tax Audited Financial Statements & Consent
04-30-2019 Happy Tax Audited Financial Statements (Consent not available)
Happy Tax WeFunder Offering Narrative (https://wefunder.com/happy.tax/about)
Happy Tax WeFunder Past Equity Raises
Happy Tax Financial Statement Analysis
September 5, 2019 Partner/Investor List of Questions Sent To The Board of Directors/Management
September 13, 2019 Email From Keith Alessi
September 13, 2019 Email From Tricia Drago/Jamey Hill to Monica Poirier Requesting Audited Financials and FDD
Exhibit L (Receipt) From FDD Listing Where To Send a Complaint for False/Misleading Statements or a Material Omission
Franchise Rule 16 C.F.R. Compliance Guide – "Instructions For Updating Disclosures"
Happy Tax WeFunder Investor Presentation
Happy Tax 2017 Investor Letter (https://gethappytax.com/happy-tax-investor-letter-2017/)
Happy Tax WeFunder SAFE Equity Investment
FDD Paragraph Indicating Happy Tax Acquired Opportunity Tax on April 30, 2017
Screenshot of Investor Deck Showing Happy Tax Owns Majority Stake In TaxMatic