## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-24539-CIV-MORENO/LOUIS

HAPPY TAX FRANCHISING, LLC, *et al.*,

    Plaintiffs,

v.

JAMEY HILL et al.,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

**THIS CAUSE** comes before the Court upon Defendants Jamey Hill ("Hill"), The JL Hill Group, LLC ("Hill Group"), Tricia Drago ("Drago"), and Banyan Accounting, LLC's ("Banyan") Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 85). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) by the Honorable Federico A. Moreno, United States District Judge, to take all necessary and proper action as required by law, with respect to any and all pretrial matters (ECF No. 15). Having reviewed the Motion to Dismiss, Plaintiffs' Response (ECF No. 89), Defendants' Reply (ECF No. 90) and being otherwise duly advised on the matter, the undersigned recommends that the Motion to Dismiss be **GRANTED, in part**, as follows:

## I. BACKGROUND

### A. Factual Background[1]

Since 2014, Happy Tax Franchising LLC ("Happy Tax") has operated a nationwide network that provides tax preparation services to consumers through franchisees and certified public accountants (ECF No. 81 ¶ 14). Between 2015 and 2018, Happy Tax entered into franchise agreements with Defendants Hill Group and Banyan (*id*. at ¶ 27). Each franchise agreement contained an identical non-disparagement clause that was to survive termination (*id*. at ¶ 19), and also included covenants not to take any actions that would injure or prejudice the goodwill associated with Happy Tax's business model (*id*. at ¶ 20). In connection with its franchise agreement and subsequent amendments, Hill Group executed a promissory note guaranteed by Hill (*id*. at ¶ 26). Banyan also executed a promissory note guaranteed by Defendant Drago in connection with its franchise agreement and subsequent amendments (*id*. at ¶¶ 9, 57).

In 2019, Drago began forming a group of investors to purchase Plaintiff Mario Costanz's ownership interest in Happy Tax (*id*. at ¶ 99). Costanz provided Drago with the required due diligence documents concerning Happy Tax's finances and business operations, but ultimately no agreement was reached (*id*. at ¶ 100). Plaintiffs allege that Drago was upset by her inability to acquire ownership interest in Happy Tax, and as a result, Drago began recruiting other Happy Tax franchisees to take part in an unlawful scheme to destroy the company (*id*. at ¶¶ 101). In mid-2019, she and her recruits, Hill and Hill Group, began a "destructive campaign of defamation and commercial disparagement against Plaintiffs" (*id*. at ¶ 102).

The Third Amended Complaint alleges that Costanz was informed of Defendants' statements from other employees and franchisees of Happy Tax. These defamatory statements

---

[1] The following facts are derived from Plaintiffs' Third Amended Complaint (ECF No. 81).

included falsely telling Happy Tax team members and potential investors that there was criminal activity at the company, that Costanz was a fraud and was dishonest, that Happy Tax's financials and franchise disclosures were fraudulent, and that a big class action type lawsuit was coming against the company and its team members (*id*. at ¶ 104).

Plaintiffs alleges that Defendants made both verbal and written statements that form the bases of their claims. The Third Amended Complaint details four defamatory verbal statements made by Drago and one defamatory verbal statement made by Defendant Hill, all of which accuse Plaintiffs of fraud, criminality and/or dishonesty (*id*. at ¶¶ 105-110). Specific details, such as the individual publisher and the Happy Tax employees and franchisees to whom the defamatory statements were said, are alleged in the Third Amended Complaint (*id*.).

Plaintiffs further claim that "[d]uring the month of September 2019, Drago (individually and on behalf of Banyan Accounting) and Hill (individually and on behalf of Hill Group) published a barrage of negative, demanding and disrespectful emails regarding Plaintiffs" (*id*. at ¶ 112). Plaintiffs allege that "*someone* created the email address 'Team Happy Tax happytax@protonmail.com'" (*id*. at ¶ 116) (emphasis added) and used this account to send multiple emails in September 2019 (*id*. at ¶¶ 118, 120, 121); that in October of 2019, other defamatory anonymous emails "*believed* to have originated from and been disseminated by Defendants coming from 'Team Happy Tax happytax@protonmail.com'" were sent (*id*. at ¶¶ 129-130) (emphasis added); and that in October of 2019 two more "*anonymous* defamatory email from a new email address of alltrue@tuta.io" were sent (*id*. at ¶¶ 135-137, 140-146) (emphasis added).

Plaintiffs contend that as a result of these "unlawful actions" they sustained "damages in excess of $5 million consisting of at least approximately $1-2 million in lost franchise sales fees in 2019 alone, millions in lost future royalties and note payments associated with new franchisees,

3

and significant harm to Plaintiffs' reputations and ability to generate revenue for the company" (*id*. at ¶ 2). Plaintiffs further aver that "[a]s a direct result direct result of the unlawful scheme perpetrated by Drago (individually and on behalf of Banyan Accounting), Hill (individually and on behalf of Hill Group), Happy Tax went from a fast growing and innovative company to one in which Happy Tax team members were constantly intimidated and bombarded by these Defamation Defendants, keeping everyone in constant fear of a lawsuit thereby irrevocably poisoning the company and its ability to generate revenue" and that "the company ceased growing, became unable to continue paying many of its employees, and Happy Tax was forced to lay off many Happy Tax team members" (*id*. at ¶¶ 114-115).

The Third Amended Complaint further alleges that on September 16, 2019, Hill sent an email to Happy Tax terminating Hill Group's franchise agreements (*id*. at ¶ 34). Happy Tax responded, noting that Hill had the right to terminate the agreements subject to all other provisions including payment of all monies owed to Happy Tax, which is said to be $224,000.00—the "Area Fee" owed pursuant to Hill Group's Amended Franchise Agreement (*id*. at ¶¶ 32, 35-36). The fee has not been paid (*id*. at ¶ 38).

As for the franchise agreements between Happy Tax and Banyan, the Third Amended Complaint states the agreement was breached in multiple respects, including Banyan mentioning Happy Tax on an unauthorized website, and failing to report its gross revenue by the 5th of each month (*id*. at ¶¶ 67-69). On February 28, 2020, Banyan defaulted on its fourth amendment franchise agreement (incorporated into the Banyan franchise agreement) and the original Banyan promissory note by not paying the annual promissory note payment of $64,731.11 plus interest (*id*. at ¶ 76).

### B. Procedural Background

These claims were originally brought in two separate lawsuits. Plaintiffs initially filed this lawsuit in state court on October 4, 2019, against Defendants Jamey Hill and the Hill Group only. The suit was removed to this Court on November 1, 2019 (ECF No.1). On November 4, 2019, Plaintiffs filed a related case before this Court, *Happy Tax Holding Corp. et al. v. Jamey Hill et al.*, Case No. 19-cv-24552-JEM ("Related Case"), against all Defendants presently named in the instant action, and others. The Related Case was dismissed without prejudice due to its overlap with the instant action, and Plaintiffs were given leave in the instant action to amend the Complaint to include all claims and defenses raised in the Related Case. The Second Amended Complaint, which encompasses claims initially raised in the Related Case, was filed on April 10, 2020 (ECF No. 36).

Defendants moved, in three separate motions, to dismiss the Second Amended Complaint for failure to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure and failure to state a claim for which relief can be granted in violation of Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF Nos. 41, 51, 58). Finding that the Second Amended Complaint failed to comply with Rules 8(a)(2) and 12(b)(6), the undersigned issued a Report and Recommendation recommending that the Second Amended Complaint be dismissed with leave to amend (ECF No. 75). More specifically, the undersigned found that Plaintiffs' incorporation of all general allegations into each count constituted a shotgun pleading, and that the Second Amended Complaint lacked the requisite detail to determine which Defendants were responsible for the alleged bad acts or whether any of the Defendants are responsible for the publication of the false

statements.[2]

The Third Amended Complaint contains ten counts: Counts I-VI and IX allege breaches of the franchise agreements and promissory notes; Count VII alleges Defamation *Per Se* against all Defendants; Count VIII alleges Defamation against all Defendants; and Count X alleges Tortious Interference against all Defendants (ECF No. 81). The instant Motion to Dismiss seeks to dismiss the claims asserted in Counts VII-X (ECF No. 85).

In their Motion to Dismiss, Defendants aver that the Third Amended Complaint fails to allege a facially plausible defamation claim and thus Counts VII and VIII should be dismissed. Specifically, Defendants aver that the Third Amended Complaint suffers from the same deficiencies as the prior complaint in that it lacks the requisite detail to connect all Defendants to the alleged written defamatory statements; fails to provide requisite details as to the verbal statements including when the statements were made, and that the statements were in fact defamatory; and fails to allege that the defamatory statements were published in Florida. Defendants seek dismissal of the clams asserted in Counts IX and X on the basis that they are predicated on the same false and defamatory statements alleged in the defamation claims, and incorporate the same general allegations, and are thus barred by Florida's Single Publication Rule.

In Response, Plaintiffs aver that the prior deficiencies for which their last complaint was dismissed have been remedied, and the Third Amended Complaint contains sufficient facts to state a claim for relief that is plausible on its face (ECF No. 89).[3] Plaintiffs argue that the Third Amended

---

[2] The Court also found that it lacked jurisdiction over former Defendant Melissa Salyer and dismissed her as a defendant (ECF No. 75). Defendant Chad Greene was also dismissed because he was never served (ECF Nos. 94-95).

[3] In making this assertion, Plaintiffs attempt to incorporate by reference the facts, arguments and legal authorities previously asserted in Plaintiffs' response to Moving Defendants' prior dismissal motion (ECF No. 89 at 8, n.3). However, the Court does not recognize such arguments incorporated by reference. *See Lane v. United States*, 338 F. Supp. 3d 1324, 1341 n.12 (S.D. Ga. 2018) (refusing to consider any arguments incorporated by reference because such arguments attempt to avoid the page limits set by the courts).

Complaint contains all the requisite facts to maintain claims for defamation, including the contents of the verbal statements, who made each statement, precisely when the statements were made or the timeframe within which they were published, the recipient(s) of Defendants' respective verbal statements, and the defamatory nature of the statements made (*id.*). Plaintiffs further argue that the Third Amended Complaint provides the additional factual support to sufficiently establish Plaintiffs' belief these Defendants published the anonymous emails that support the defamation claims (*id.*). Lastly, Plaintiffs contest the applicability of the Single Publication Rule to their claims asserted in Counts IX and X (*id.*). Defendants filed a Reply (ECF No. 90) and the Motion to Dismiss is ripe for consideration.

## II. STANDARD OF REVIEW

Defendants bring their Motions to Dismiss pursuant to both Rules 8 and 12(b)(6), Federal Rules of Civil Procedure (ECF No. 85 at 1).

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not provide detailed allegations, a plaintiff's complaint must provide "more than labels and conclusions." *Id.* at 555 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to "state a claim for relief that is plausible on its face." *Id.* at 570; Fed. R. Civ. P. 12(b)(6). This requires a plaintiff to allege facts sufficient to raise grounds for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Id.* Such a reasonable inference is possible if the factual allegations are "enough to raise a right to relief above the speculative level." *Fed. Trade Comm. v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1331 (S.D. Fla. Dec. 30,

2016) (citing *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the reviewing court is limited to the facts contained in the complaint and the attached exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). These alleged facts are to be taken as true and all reasonable inferences are to be drawn in plaintiffs' favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

### III. DISCUSSION

#### A. Defamation Claims

Plaintiffs allege their defamation claims in two separate counts: Count VII for Defamation *Per Se* and Count VIII for Defamation. "False imputations may be actionable *per se*, that is in themselves, or *per quod*, that is on allegation and proof of special damage." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (emphasis added*).* A publication is defamatory *per se* "when, considered alone and without innuendo, it subjects a person to hatred, distrust, ridicule, contempt, or disgrace, tends to injure a person in her trade or profession, or imputes to a person conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office." *Id.* at 1339. If a publication is not defamatory *per se*, a plaintiff may still succeed on a defamation claim *per quod*, by "specifically alleg[ing] the facts and innuendo which make the words defamatory, as well as pleading special damages from such defamation." *Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996).

"To state a claim of defamation, the plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (citation omitted) (applying Florida law). A plaintiff must also "allege certain facts such as

the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (citation omitted).

The Third Amended Complaint lays out the details of the specific defamatory statements that form the basis of Plaintiffs' claims; that these "statements by the Defamation Defendants were false, defamatory, abusive and inflammatory because they asserted or implied, among other things, that Happy Tax was and is engaged in fraudulent conduct and that Costanz is a thief and a fraudster"; that "Defendants either each knew that the statements were false or each of them reckless disregarded that the statements were false despite the awareness of the probable falsity of the statement"; and that Plaintiffs were damaged as a result of these defamatory statements (ECF No. 81 at 42-44).

Defendants' Motion examines each of the verbal statements underlying Plaintiffs' defamation claims and raises the same or similar arguments in favor of dismissing each. Defendants argue that Plaintiffs' claims of defamation fail to allege that the defamatory statements were published to any person *in Florida* and accordingly, Defendants contend, Plaintiffs have failed to allege defamation that is actionable here. Defendants' reliance, however, on *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1202–03 (Fla. 2010) is utterly misplaced. The Florida Supreme Court did not, as Defendants' Motion suggests, articulate a pleading requirement but rather answered a question arising from the application of Florida's Long Arm statute: "The only issue in this case is whether Marshall's allegedly defamatory posts on her website subject her to personal jurisdiction in Florida under this state's long-arm statute." *Id.* Defendants have offered no support for their contention that Plaintiffs' defamation claims require allegation that the publication occurred in Florida.

Defendants additionally assert that the details provided about the defamatory statements are insufficient to state a claim—challenging the written statements for failure to identify any specific Defendant as a publisher and attacking each of the verbal statements for insufficient detail. While not every incident described in the Third Amended Complaint alleges sufficient detail to survive a motion to dismiss on its own, Plaintiffs have alleged sufficient detail with respect to certain statements attributable to Defendants Drago and Hill for their defamation claims against these Defendants to survive a Motion to Dismiss. Specifically, the Third Amended Complaint alleges that Drago made defamatory statements to named franchisees, regarding fraud, dishonesty and criminality, including "on May 27, 2019 Drago told Monica Porier . . . that 'there was fraud going on with the company and that there was criminal activity at the company'" (ECF No. 81 at ¶ 105). This identifies what was said, the specific Defendant who made the statement, to whom the statement was made, and when it was said. The Third Amended Complaint also alleges that "[o]n May 29, 2019, Hill said that 'the company was fraudulent' on a conference call with franchisees [Monica] Porier, Mike Halpern, Don Fontana, David Kipp, Jeremy Noble, Anteneh Dejene, Scott Lucas and Jennifer Raimondi" (*id.* at ¶ 106). This likewise identifies what was specifically said by Defendant Hill, when she said it, and to whom it was said as required to state a plausible claim for defamation.

Defendants further dispute that the alleged statements constitute actionable defamation, however, statements regarding fraud and dishonestly are *per se* defamatory as they impute "conduct/characteristics incompatible with the proper exercise of his lawful business, trade, profession, or office." *Taslidzic v. Luther*, No. 9:18-CV-80038, 2018 WL 3134419, at *7 (S.D. Fla. May 21, 2018); *see also Friedman v. Schiano*, No. 16-CV-81975, 2017 WL 2901211, at *1 (S.D. Fla. Jan. 9, 2017) (finding that defendants' false statements accusing plaintiffs of engaging

in "fraudulent and criminal misconduct constituting illegal and immoral acts . . . constitute[d] defamation *per se* inasmuch as they tend to subject [p]laintiffs to being avoided, distrusted, condemned, ridiculed, disgraced, and otherwise injure [p]laintiffs' personal, business and professional reputations"). As such, Plaintiffs have sufficiently alleged plausible claims of defamation against defendants Drago and Hill,[4] and the undersigned recommends that the Motion to Dismiss be denied as to Counts VII and VIII with respect to these Defendants.

Plaintiffs' claims of defamation are also brought against Defendants Hill Group and Banyan. Defendants challenge the sufficiency of the allegations, which seek to attribute statements by the individual Defendants to the corporate Defendants on the basis that they acted in concert with the individual Defendants. "In Florida, a corporation may be liable for its employees' slanderous comments." *Ohrn v. JP Morgan Chase & Co.*, No. 13-80136-CIV, 2014 WL 3809181, at *7 (S.D. Fla. Aug. 1, 2014) (citation omitted). In determining a corporation's liability, however, courts are to consider the following: (a) whether the person who uttered the slanderous words was an authorized agent of the corporation; (b) if so, whether he or she was acting within the scope of her employment when making the slanderous statements; and (c) whether the language charged was used in the actual performance of her duties touching the matter in question. *Id*.

Plaintiffs' conclusory allegations that all Defendants were acting individually and in concert fails to provide any facts to demonstrate that the defamatory statements published by Hill and/or Drago were made while acting within the scope of their duties as sole proprietors of their respective companies, and whether the language charged was used in the actual performance of

---

[4] Where, as here, a plausible claim is made, the Court need not address or strike those general allegations that fall short. *See Holguin v. Celebrity Cruises*, Inc., No. 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010) (declining to strike allegations from complaint that were non-actionable where plaintiff otherwise alleged facts in support of a plausible claim); *Havana Docks Corp. v. Carnival Corp*., No. 19-CV-21724, 2020 WL 5517590, at *12 (S.D. Fla. Sept. 14, 2020) ("[C]ourts routinely refuse to excise "in line-item fashion" portions of a complaint where the claim at hand is otherwise adequately stated.").

11

their duties. As such, it is recommended that the Motion to Dismiss be granted, in part, and that Counts VII and VIII be dismissed against Defendants Hill Group and Banyan. *See Bell v. Novartis Pharm. Corp.*, No. 8:08–cv–30–T–17–EAJ, 2008 WL 2694893, at * 4–5 (M.D. Fla. July 3, 2008) (granting a motion to dismiss where the plaintiff did not identify how the defamatory statement was made in connection with the employee's job performance or duties).

### B. Tortious Interference Claim

Defendants claim that Florida's Single Publication Rule requires dismissal of Count X for Tortious Interference against all Defendants, arguing that this claim is based on the same false and defamatory statements that form the basis of Plaintiffs' defamation claims (ECF No. 85 at 10-11).

"In Florida, a single publication gives rise to a single cause of action. Consequently, the various injuries resulting from it are merely items of damage arising from the same wrong." *Klayman v. Jud. Watch, Inc*., 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (citing *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.,* 831 So.2d 204, 208 (Fla. 4th DCA 2002)). This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication upon which plaintiff's defamation claim is based. *See Klayman*, 22 F. Supp. 3d at 1256; *Callaway Land & Cattle Co*, 831 So.2d at 208; *Kamau v. Slate*, No. 4:11CV522-RH/CAS, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012), *report and recommendation adopted*, No. 4:11CV522-RH/CAS, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012).

In Response, Plaintiffs contend that the Single Publication/Single Action Rule only bars a plaintiff from bringing alternative claims if doing so would circumvent a *failed* claim of defamation, citing in support *Synergy Billing, LLC v. Priority Mgmt. Grp., Inc*., No. 617CV00929ORL31DCI, 2017 WL 4922203, at *8 (M.D. Fla. Oct. 31, 2017) (refusing to dismiss

a claim for tortious interference that was based on the same facts as a properly pled claim of defamation).

However, other courts have considered whether the Single Publication/Single Action Rule precluded a plaintiff from suing on multiple torts in tandem with a well-pled defamation count. *See Klayman*, 22 F. Supp. 3d at 1256 (holding counts for tortious interference and emotional distress were barred under Florida's Single Publication rule because they were based on the same facts as plaintiff's defamation claim, which had survived summary judgement); *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581-WM, 2020 WL 5750499, at *3 (S.D. Fla. Sept. 25, 2020) (dismissing a claim for tortious interference under the Single Publication Rule but declining to dismiss plaintiff's defamation claim); *Ortega Trujillo* 17 F. Supp. 2d at 1340 (finding plaintiffs sufficiently pled their defamation claim, but dismissing plaintiffs' false light privacy claim because it was based on the same facts as the defamation claim and thus was precluded by the Single Publication Rule). Notwithstanding my recommendation that the Third Amended Complaint states a cognizable claim for defamation, consistent with prior decisions by this Court, I have considered whether Florida's Single Publication/Single Action Rule bars Plaintiffs' tortious interference claim.

Plaintiffs' tortious interference claim[5] alleges that the Defendants knowingly interfered with the business and contract relationships between Happy Tax and their employees, team members, board members, and franchises. Defendants argue that Plaintiffs' claim for tortious interference here is barred under the Single Publication/Single Action Rule because the conduct

---

[5] "A claim for tortious interference with a contract or business relationship requires proof of: "(1) the existence of a business relationship . . . under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Klayman*, 22 F. Supp. 3d at 1255 (citation omitted).

13

on which the claim is based is the defamatory statements on which Plaintiffs also predicate their defamation claims and similarly, the harm alleged is the same with respect to both counts—damage to Plaintiffs' business relationships. Review of the Complaint supports Defendants' argument.

Plaintiffs' counts for defamation and tortious interference adopt and re-allege the same exact general allegations contained in same paragraphs of the Third Amended Complaint, specifically paragraphs 1-20 (describing the nature of the claims, the parties and the franchise agreements), 92-115 (describing the verbal defamatory statements made by Hill and Drago), and 116- 151 (describing the defamatory emails) (ECF No. 81 at 42-46). Indeed, the tortious interference claim is based solely on Defendants' publication of the defamatory statements described in paragraphs 92-151 of the Third Amended Complaint; claiming "Defendants have intentionally and wrongfully interfered with Happy Tax's relationships with its employees, team members, board members and franchisees by continuously publishing false and defamatory statements" (ECF No. 81 at ¶ 230). No other factual basis for Plaintiffs' tortious interference claim is provided. Nor does the Third Amended Complaint allege any damages resulting from the tortious interference unique from those damages claimed under Plaintiffs' defamation claims. Both the defamation claims and the claim for tortious interference assert damages relating to lost profits and injury to Happy Tax's business operations, including allegations of employees quitting their jobs and franchisees terminating their business relationships (*id.* at ¶¶ 205, 207, 212, 214, 230).

Plaintiffs argue that the Single Publication Rule is inapplicable to Count X for Tortious Interference because the Third Amended Complaint alleges multiple defamatory publications, not a single publication. Plaintiffs' argument erroneously depends on the name of the Rule rather than its application; the Rule limits a plaintiff to a single cause of action, no matter the number of defamatory statements the claim is predicated upon. *See Plain Bay Sales,* LLC, 2020 WL 5750499,

at *3 (rejecting the argument that pleading multiple publications allows for multiple causes of action). Each of the alleged defamatory publications are incorporated into the defamation claims, as they are identically incorporated in the claim for tortious interference–different publications do not form the basis for the different claims. As noted above, the claims do not arise from different occurrences and the undersigned recommends that the Motion to Dismiss be granted and Count X for Tortious Interference be dismissed against all Defendants.

### C. Breach of Franchise Agreements (Non-Disparagement) Claim

Count IX alleges that Defendants Hill Group and Banyan each breached the Franchise Agreements entered into with Happy Tax. Plaintiffs allege that "Hill (individually and on behalf of Hill Group) and Drago (individually and on behalf of Banyan Accounting) each made and/or published and disseminated false and defamatory statements regarding Happy Tax and Costanz" and that "[t]hese statements violate the non-disparagements clauses and the provision barring injurious or prejudicial actions contained in each of the Franchisee Agreements with these Defendants" (ECF No. 81 at ¶¶ 219, 221). Defendants contend that this claim must also be dismissed pursuant to the Single Publication/Single Action Rule for it is based on the same facts as Plaintiffs' Defamation claims. In their Reply, Defendants further assert that this claim should be dismissed for failure to tie a particular defendant to the alleged defamatory statements.

As addressed above, Plaintiffs allege sufficient facts to tie Hill and Drago to certain defamatory statements, but not Hill Group and Banyan. Specifically, the Third Amended Complaint fails to allege facts sufficient to attribute the conduct of the individual Defendants to the corporate Defendants.

"A claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

15

*Ashcroft*, 556 U.S. at 678. Here, the facts alleged are insufficient to allow the Court to reasonably infer that Hill Group or Banyan are liable for the defamatory statements made by the individual Defendants, all of which are also incorporated into Count IX. In other words, as pled, the Court cannot reasonably infer that *Banyan* and *Hill Group* materially breached the non-disparagement clause of the Franchise Agreement, which is an essential element for a breach of contract claim.[6] Because the undersigned finds Count IX for Breach of Franchise Agreements (Non-Disparagement) fails to state a facially plausible claim, it is unnecessary to address whether this claim would otherwise be precluded by the Single Publication/Single Action Rule, and it is recommended that the Motion to Dismiss be granted as to Count IX.

## IV.     RECOMMENDATIONS

For the forgoing reasons, it is **RECOMMENDED** the Defendants' Motion to Dismiss (ECF No. 85) be **GRANTED, in part**; that Count IX for Breach of Franchise Agreements (Non-Disparagement) and Count X for Tortious Interference be **DISMISSED** with prejudice; and that Counts VII and VIII for defamation be **DISMISSED** with prejudice as to Defendants Hill Group and Banyan only.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. See 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; Patton v.

---

[6] "In Florida, a cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages." *Khanimov v. St. Tropez II, LLC*, No. 08-23321-CIV, 2009 WL 10667415, at *2 (S.D. Fla. Aug. 18, 2009).

Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 7th day of June, 2020.

*[signature]*

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE