**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24539-CIV-MORENO/Louis

HAPPY TAX FRANCHISING LLC and
MARIO COSTANZ,

      Plaintiffs,

v.

JAMEY HILL, *et al.*,

      Defendants.
_____ /

JAMEY HILL *et al.*,

      Counter-Plaintiffs and
      Third-Party Plaintiffs,

v.

MARIO COSTANZ, *et al.*,

      Counter-Defendants and
      Third-Party Defendants.
_____ /

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Third-Party Defendant Theodore Muftic's ("Muftic") Motion for Summary Judgment (ECF No. 294). Third-Party Plaintiffs Jamey Hill, the JL Hill Group LLC, Tricia Drago, and Banyan Accounting, LLC ("Third-Party Plaintiffs") filed a response in opposition (ECF No. 315), to which Muftic filed a reply (ECF No. 332). Plaintiffs/Counter-Defendants Mario Costanz ("Costanz") and Happy Tax Franchising, LLC ("HT Franchising"), and Third-Party Defendants Happy Tax Holdings Corp. ("HT Holdings") and Michael Hadzipanajotis ("Hadzipanajotis"), filed notices joining in and adopting Muftic's Motion

1

with respect to his arguments regarding general release and the statute of limitations. (ECF Nos. 321, 325). The matter was referred to the undersigned by the Honorable Federico A. Moreno, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to any and all pretrial matters. (ECF No. 15). Having considered the Motion, Response, Reply, the Parties' Statements of Material Facts, the record as a whole, and being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Motion (ECF No. 294) be **GRANTED, in part**, and **DENIED, in part**.

## I.     BACKGROUND

### A.     Procedural History

This action began as a suit for breach of a promissory note, breach of guaranty, breach of a franchise agreement, defamation, and tortious interference with advantageous business contracts and relationships, brought by an income tax preparation service franchisor against former and current franchisees. Plaintiffs/Counter-Defendants HT Franchising and Costanz initiated this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on October 4, 2019. Third-Party Plaintiffs removed the action to this Court on November 1, 2019, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. After motion practice and a series of amendments, Costanz and HT Franchising filed the operative Third Amended Complaint (ECF No. 81), on December 15, 2020.

In broad strokes, Costanz and HT Franchising claim that Third-Party Plaintiffs entered into agreements with Costanz and HT Franchising to serve as area representatives for the Happy Tax income tax preparation service, where Third-Party Plaintiffs were tasked with recruiting franchise operators within their respective geographic areas. Third-Party Plaintiffs also operated their own

Happy Tax franchises.  Costanz and HT Franchising claim that Third-Party Plaintiffs failed to make payments owed to Costanz and HT Franchising under the respective franchise agreements and Third-Party Plaintiffs' related personal guaranty and promissory note obligations.  Costanz and HT Franchising also allege that, in 2019 following a downturn in the cryptocurrency market and an intellectual property lawsuit involving a Happy Tax income tax preparation service competitor, Drago sought to purchase Happy Tax.  According to Costanz and HT Franchising, when that deal fell apart, Drago began to recruit other Happy Tax franchisees to engage in an unlawful scheme to destroy the company by defaming the company and by harassing Happy Tax corporate employees.  Among other things, Third-Party Plaintiffs allegedly sent defamatory and abusive false statements in anonymous emails to Happy Tax employees, investors, board members, and advisors.

Accordingly, in their Third Amended Complaint, Costanz and HT Franchising raise nine causes of action against Third-Party Plaintiffs: (1) breach of promissory note, brought by HT Franchising against the Hill Group; (2) breach of guaranty, brought by HT Franchising against Hill; (3) breach of promissory note, brought by HT Franchising against Banyan; (4) breach of guaranty, brought by HT Franchising against Drago; (5) breach of franchise agreement, brought by HT Franchising against Banyan; (6) breach of promissory note, brought by HT Franchising against now-dismissed defendant Chad Greene, *see* (ECF No. 95); (7) defamation *per se*, brought by both Costanz and HT Franchising against the Hill Group, Hill, Banyan, and Drago; (8) defamation, brought by both Costanz and HT Franchising against the Hill Group, Hill, Banyan, and Drago; and (9) breach of non-disparagement clauses in franchise agreements, brought by HT Franchising against the Hill Group and Banyan.  (ECF No. 81).

On September 17, 2021, Third-Party Plaintiffs answered the Third Amended Complaint (ECF No. 125).  Concurrently, they also filed their nine-count Counterclaims and Third-Party Complaint, naming Costanz and HT Franchising as Counter-Defendants, and HT Holdings, Muftic, Hadzipanajotis, and Monica Poirier as Third-Party Defendants.[1]  (*Id.* at 16).  Third-Party Plaintiffs assert the following third-party claims and counterclaims:

(1)    securities fraud, for making untrue statements of material fact as an issuer of a security, in violation of Section 4(a)(2) and 4A(c) of the Securities Act of 1933 (the "'33 Act"), 15 U.S.C. §§ 77d(a)(2), 77d-1(c), and Regulation CF, 17 C.F.R. §§ 227.100 *et seq.*, against Costanz, Muftic, Hadzipanajotis, HT Franchising, and HT Holdings ("Count I");

(2)    securities fraud, for making untrue statements of material fact in connection with the purchase and sale of securities, in violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), against Costanz, Muftic, Hadzipanajotis, HT Franchising, and HT Holdings ("Count II");

(3)    securities fraud, by employing a scheme or artifice to defraud, in violation of Section 10(b) of the '34 Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), against Costanz, Muftic, Hadzipanajotis, HT Franchising, and HT Holdings ("Count III");

(4)    a claim asserting control-person liability, under Section 20 of the '34 Act, 15 U.S.C. § 78t(a), against Costanz, Muftic, Hadzipanajotis, HT Franchising, and HT Holdings ("Count IV");

(5)    a claim under Section 29(b) of the '34 Act, 15 U.S.C. § 78cc(b), against HT Franchising and HT Holdings ("Count V");

(6)    a claim under the Federal Trade Commission Franchise Rule, 16 C.F.R., Part 436, and the Florida Deceptive and Unfair Practices Act ("FDUTPA"), Florida Statutes § 501.201 *et seq.* against Costanz, Muftic, and HT Franchising ("Count VI");

(7)    fraudulent inducement, against Costanz, HT Franchising, and HT Holdings ("Count VII");

(8)    breach of contract, against HT Franchising and HT Holdings ("Count VIII"); and

(9)    breach of fiduciary duty ("Count IX").

(ECF No. 125 at 16–71).

---

[1]  Third-Party Defendant Monica Poirier was dismissed from this action after Third-Party Plaintiffs settled their claims against her.  (ECF Nos. 201, 203).

Following motion practice, eight counterclaims/third-party claims remain. *See* (ECF No. 205). Now, Muftic moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1.

**B.     Factual Background**

The following facts are drawn from Muftic's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (ECF No. 295, "Muftic SOF"), Third-Party Plaintiffs' Statement of Disputed and Undisputed Material Facts in Opposition to Ted Muftic's Motion for Summary Judgment (ECF No. 316, "Response SOF"), Muftic's Reply to Third-Party Plaintiffs' Statement of Undisputed Material Facts (ECF No. 331, "Muftic Reply SOF"), a corresponding review of the evidence attached thereto, and a review of the record. While the Parties' statements of material facts do not comply with Local Rule 56.1, the undersigned summarizes the facts relevant to the arguments raised in Muftic's Motion, noting disputes and objections to the extent ascertainable.[2]  The pertinent facts are as follows.

**1.     The Happy Tax Franchise, HT Franchising, and HT Holdings**

Costanz formed HT Franchising in 2014.  (Muftic SOF ¶ 1).  Its business model was to operate a nationwide network of tax preparation service franchises that used virtual tax filing systems with assistance from Certified Public Accountants ("CPAs").  (*Id.*) (citing (ECF No. 295-

---

[2]  Muftic's statement of material facts fails to use paragraphs "limited as far as practicable to a single material fact," as required by Local Rule 56.1(b)(1)(B).  S.D. Fla. L.R. 56.1(b)(1)(B).  His statement of material facts also contains paragraphs consisting of argument without citation to record evidence.  *See, e.g.*, (Muftic SOF ¶ 26).  The Court disregards paragraphs containing argument and no citation to evidence.  Third-Party Plaintiffs' Response SOF also fails to comply with Local Rule 56.1, in multiple respects.  First, Third-Party Plaintiffs' almost-20-page Response SOF is double the 10-page limit.  S.D. Fla. L.R. 56.1(b)(1), (b)(2)(A).  Second, the Response SOF repeats the text of the movant's paragraphs.  S.D. Fla. L.R. 56.1(b)(2)(A).  Third, in asserting legal objections to Muftic's evidence within the Response SOF, Third-Party Plaintiffs' Response SOF fails to both "use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed,'" S.D. Fla. L.R. 56.1(b)(2)(B), and provide citations to record evidence in support of any factual dispute, S.D. Fla. L.R. 56.1(b)(2)(C).  Fourth, the Response SOF exceeds the 5-page limit for additional facts that Third-Party Plaintiffs' contend are material to a motion for summary judgment.  S.D. Fla. L.R. 56.1(b)(2)(D).

1 ¶ 2)).  Third-Party Plaintiffs, for their part, appear to take issue with this characterization of HT Franchising's business model, as they dispute that HT Franchising had proprietary technology, a unique business system, and that qualified CPAs would prepare customers' tax returns.  (Response SOF ¶ 1) (citing (ECF No. 316 at 31 ¶ 5); (ECF No. 316 at 41 ¶ 5)).

The Parties dispute whether HT Franchising conducted business in Florida.  Muftic contends that HT Franchising has minimal connections to Florida, attesting that, while HT Franchising is a Florida LLC, it does not operate business in Florida, maintaining only a WeWork location in Miami Beach, Florida; Muftic also attests that HT Franchising's officers did not work for it in Florida.  (Muftic SOF ¶ 32).  Rather, Muftic attests that he lived and worked out of New York, HT Franchising's employees with franchising-related responsibilities were based in Virginia, HT Franchising's attorneys who prepared the franchise disclosure documents at issue in this case were based in New York and Virginia, and none of Third-Party Plaintiffs' franchise agreements concerned territory in Florida.  (*Id.*).

Third-Party Plaintiffs do not initially dispute that Muftic did not conduct business relating to HT Franchising in Florida.  (Response SOF ¶ 2).  However, Third-Party Plaintiffs point to Costanz and HT Franchising's complaints in this action, Uniform Franchise Registration Applications filed with state regulatory agencies, unit and area representative franchise disclosure documents, franchise agreements and area representative agreements, and corporate records filed with the Florida Secretary of State, all of which identify HT Franchising's principal place of business or corporate headquarters as Miami Beach, Florida.  (*Id.* ¶ 33).

In 2016, Muftic was introduced to Costanz.  (Muftic SOF ¶ 2).  In September of that year, Muftic signed an Area Representative Agreement with HT Franchising to recruit franchisees in the Denver, Colorado area.  (*Id.*).  Approximately two months later, in November 2016, Muftic

became HT Franchising's chief financial officer ("CFO") pursuant to a verbal agreement with Costanz.  (*Id.*).

In February 2017, HT Holdings was formed by Costanz for the purpose of raising capital for HT Franchising.  (*Id.* ¶ 4).  HT Holdings acquired the membership units of HT Franchising on March 30, 2017, (*id.*), and began raising capital, (*id.* ¶ 5).  Third-Party Plaintiffs raise evidentiary objections to these facts, but do not otherwise indicate whether they dispute these facts.  (Response SOF ¶¶ 4–5).  For the reasons discussed further below, the objections are not meritorious and I recommend that they be overruled and the facts be construed as undisputed.

In any event, it is not disputed that Muftic served as HT Holdings's CFO, beginning in March of 2017.  (Muftic SOF ¶ 4); (Response SOF ¶ 4).  In that role, Muftic signed a Form C on behalf of HT Holdings, which was filed with the Securities and Exchange Commission ("SEC") on April 5, 2017; the purpose was to raise money through a "crowdfunding" administered by an entity identified as Wefunder.  (Muftic SOF ¶ 5); (Response SOF ¶ 5).  It is also not disputed that Muftic signed a new Form C on May 8, 2017, because the April 5, 2017 Form C was being withdrawn by Wefunder.  (Muftic SOF ¶ 5); (Response SOF ¶ 5).  Third-Party Plaintiff Hill invested $2,100.00 in simple agreements for future equity ("SAFEs") with HT Holdings during this initial fundraising, consisting of $300.00 invested on May 9, 2017, and $1,900.00 invested on May 11, 2017.  (Muftic SOF ¶ 6); (Response SOF ¶ 6).

HT Holdings thereafter sought to raise additional capital; thus, on November 6, 2017, HT Holdings filed another Form C with the SEC, signed by Muftic as CFO, for a follow-on crowdfunding offering of SAFEs through Wefunder.  (Muftic SOF ¶ 7); (Response SOF ¶ 7).  An amended Form C for this follow-on offering was signed on November 30, 2017.  (Muftic SOF ¶ 7); (Response SOF ¶ 7).  Banyan invested $71,000.00 in SAFEs during this round of fundraising

on October 12, 2017, $225,920.00 on December 8, 2017, and $100,000.00 on December 12, 2017. (Muftic SOF ¶ 8); (Response SOF ¶ 8).  Hill invested another $5,000.00 on December 21, 2017. (Muftic SOF ¶ 8); (Response SOF ¶ 8).

### 2.     Hill and the Hill Group Agreements

With respect to Hill and the Hill Group, the Hill Group had already been a franchisee with HT Franchising by the time Muftic associated with HT Franchising, as the Hill Group had signed a franchise agreement in September of 2015.  (Muftic SOF ¶ 3).  On July 13, 2017, the Hill Group, Hill as guarantor, and HT Franchising executed an Area Representative Agreement.  (Muftic SOF ¶ 9).  This agreement contains provisions providing for a contractual limitations period during which to bring claims; conferring third-party beneficiary status to HT Franchising's officers, directors, members, shareholders, agents, and employees; binding Hill as guarantor; and a choice of law provision.  (*Id.*).  The Hill Group provided a promissory note to HT Franchising in the amount of $39,000.00, to be paid in installments.  (*Id.* ¶ 10).  The Hill Group's assigned territory under the Area Representative Agreement was Nevada.  (*Id.* ¶ 11).  Third-Party Plaintiffs raise non-meritorious evidentiary objections, but do not otherwise dispute these facts.  (Response SOF ¶¶ 3, 9–11).  As explained below, the objections should be overruled.

On August 13, 2018, the Hill Group renewed its Franchise Agreement with HT Franchising; the renewed Franchise Agreement contains provisions identical to those described above with respect to the July 13, 2017 Area Representative Agreement.  (Muftic SOF ¶ 17). Third-Party Plaintiffs raise evidentiary objections to this fact, (Response SOF ¶ 17); the objections should be overruled.

These facts therefore are not in dispute; indeed, Third-Party Plaintiffs assert as additional facts that the Hill Group and Hill were induced to enter into these agreements by Costanz, HT

Franchising, HT Holdings, and later Muftic's false statements.  (*Id.* ¶ 34).

### 3.    Drago and Banyan Agreements

With respect to Drago and Banyan, on October 20, 2017, Banyan signed a Franchise Agreement with HT Franchising to serve as a Happy Tax franchisee. (Muftic SOF ¶ 12). Banyan's Franchise Agreement contains provisions providing for a contractual limitations period during which to bring claims; conferring third-party beneficiary status; binding Drago as guarantor; and a choice of law provision.  (*Id.*).  In lieu of paying a franchise fee, Banyan agreed in an addendum to the Franchise Agreement to make the investment of $71,000.00 in SAFEs with HT Holdings. (*Id.* ¶ 13).

Thereafter, on December 11, 2017, Banyan, Drago as guarantor, and HT Franchising executed an Area Representative Agreement.  (*Id.* ¶ 14).  This Area Representative Agreement, like the Franchise Agreement, contains provisions providing for a contractual limitations period during which to bring claims; conferring third-party beneficiary status to HT Franchising's officers, directors, members, shareholders, agents, and employees; binding Drago as guarantor; and a choice of law provision.  (*Id.*).  Banyan's territory under its Area Representative Agreement was Hawaii, California, and Nevada.  (*Id.* ¶ 16).  Third-Party Plaintiffs raise evidentiary objections to these facts, but do not otherwise indicate whether they would dispute these facts in the event the Court overrules their objections, (Response SOF ¶¶ 12–16); I recommend that the objections be overruled for the reasons set out below.  As such, the objected-to facts are not in dispute.

These facts therefore are not in dispute; indeed, Third-Party Plaintiffs assert as additional facts that Drago and Banyan were induced to enter into these agreements by Costanz, HT Franchising, HT Holdings, and later Muftic's false statements.  (*Id.* ¶ 35).

### 4.      Amendments to the Foregoing Agreements

According to Muftic, the Franchise Agreements and Area Representative Agreements described above were amended four times by Banyan, Drago, and HT Franchising, first on May 31, 2018, (Muftic SOF ¶ 18) (citing (ECF No. 295-1 at 236–39)), then on January 9, 2019, (*id.* ¶ 19) (citing (ECF No. 295-1 at 240–44)), next on February 27, 2019, (*id.* ¶ 20) (citing (ECF No. 295-1 at 245–48)), and last on April 2, 2019, (*id.* ¶ 21) (citing (ECF No. 295-1 at 249–52)), and twice by Hill, the Hill Group, and HT Franchising, first on September 5, 2018, (*id.* ¶ 22) (citing (ECF No. 295-1 at 253–57)), and then on April 18, 2019, (*id.* ¶ 23) (citing (ECF No. 295-1 at 258–60)).  All of these amendments contained general release provisions.  (Muftic SOF ¶¶ 18–23).

Third-Party Plaintiffs raise evidentiary objections to these facts, (Response SOF ¶¶ 18–23); the objections should be overruled.  As such the foregoing facts are not in dispute.

### 5.      Breakdown of Relationship

It is undisputed that Muftic resigned as CFO of HT Franchising and HT Holdings on November 3, 2018.  (Muftic SOF ¶ 24); (Response SOF ¶ 24).  Thereafter, in May of 2019, Drago told Monica Poirier that she "believed that Mario [Costanz] was a criminal and a fraud, and the business was fraudulent."  (Muftic SOF ¶ 25) (citing Deposition of Monica Poirier at 20:21–21:5, (ECF No. 295-3 at 17–18)).  Third-Party Plaintiffs dispute this fact but fail to explain what about Ms. Poirier's testimony they dispute, (Response SOF ¶ 25); this fact is uncontroverted.

Between May and July 2019, Hill told Poirier that HT Franchising's financial statements or franchise disclosure documents were fraudulent.  (Muftic SOF ¶ 25) (citing Deposition of Monica Poirier at 277:10–280:16, (ECF No. 295-3 at 17–18)).  Third-Party Plaintiffs do not clearly identify whether they dispute this fact, (Response SOF ¶ 25); the fact is uncontroverted.

In June 2019, Drago sent the following text messages to Poirier:

> Would you have invested if you knew HT didn't have a real tax department?  I was told we had over 100 tax pro nationwide[.]  That's why I invested so much[.]  How comfortable would you be pitching investors when you know there's a high chance of a class action coming against HT – Mario/Ted for misrepresentation, fraud among other things.

(Muftic SOF ¶ 25) (quoting (ECF No. 295-4)).  Third-Party Plaintiffs object to the text messages on hearsay grounds; the objection is misplaced, as the text messages are statements of a party-opponent.  (Response SOF ¶ 25).  They also dispute these text messages, without explaining what about the text messages they dispute.  (*Id.*).  The facts advanced in the text messages are thus uncontroverted.

Nonetheless, Third-Party Plaintiffs advance that Costanz, HT Franchising, HT Holdings, Muftic, and Hadzipanajotis made false statements in and omitted material facts from the franchise disclosure documents and from the Form Cs filed with the SEC.  (*Id.* ¶ 36) (listing the specific statements and omissions).  Third-Party Plaintiffs claim that they did not know of these statements and omissions, and could not have known of them through reasonable diligence before September 17, 2019.  (*Id.* ¶ 37) (listing the specific statements and omissions Third-Party Plaintiffs assert they did not know nor could have known).  Muftic contends that these assertions are conclusory and not relevant to the issues raised in his opening Motion.  (Muftic Reply SOF ¶¶ 36–37).

It is undisputed that, in the summer of 2019, Hill, Drago, and other area representatives and franchisees asked Poirier when HT Franchising's updated franchise disclosure documents and updated audited financial statements would be distributed and filed with state regulatory agencies.  (Response SOF ¶ 38); (Muftic Reply SOF ¶ 38).  Muftic adds that the audited financial statements were issued on August 26, 2019.  (Muftic Reply SOF ¶ 38).

It is also undisputed that, on September 5, 2019, Drago, Hill and other area representatives and franchisees wrote to Costanz and Poirier, and other members of HT Franchising management,

to express concern with HT Franchising's operational and financial instability, its leadership's purported unwillingness to provide HT Franchising's internal financial information, the accuracy of statements made in HT Franchising's franchise disclosure documents, and the accuracy and validity of HT Franchising's and HT Holdings's financial statements.  (Response SOF ¶ 40);[3] (Muftic Reply SOF ¶ 40).

On September 20, 2019, Drago and Hill later obtained access to HT Franchising's franchise disclosure documents that contained consolidated financial statements for the 2017, 2018, and 2019 fiscal years.  (Response SOF ¶ 41); (Muftic Reply SOF ¶ 41).  The Parties dispute whether those financial statements contained unexplained restatements that overstated HT Franchising's financial position.  *Compare* (Response SOF ¶¶ 42–44), *with* (Muftic Reply SOF ¶¶ 42–44).  Third-Party Plaintiffs contend that, as a result, they on September 27, 2019 made a formal inquiry to the Massachusetts Board of Accountancy to express their concerns, which led to Hadzipanajotis surrendering his CPA license to avoid professional discipline.  (Response SOF ¶ 44).

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact."  *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for

---

[3]  The letter is not part of the record, but both Drago and Hill attested in their respective Declarations that they wrote to Happy Tax representatives to express their collective concern with the financial stability of Happy Tax Franchising, LLC, and "the accuracy and validity" of the "'consolidated' purported audited financial statements."  (ECF No. 316 at 38 ¶ 17 (Drago Decl.)); (ECF No. 316 at 48 ¶ 15 (Hill Decl.)).

its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Id.* at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial no reasonable jury could find for the nonmoving party," then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

However, "when the *moving* party has the burden of proof at trial," as Muftic, Costanz, Hadzipanajotis, HT Franchising, and HT Holdings do with respect to affirmative defenses, "that party must show *affirmatively* the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis in original). That is, the moving party "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* (citing *Celotex*, 477 U.S. at 331). To satisfy that burden, the moving party "must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id.* (citing *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (citations omitted).

If the moving party satisfies this initial burden, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Id.* The movant should be permitted to prevail without a full trial on the issues only if "the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial—that is, such that no reasonable jury could find for the non-movant." *Id.* (citing *Anderson*, 477 U.S. at 249–50).

## III.   DISCUSSION

Third-Party Defendant Ted Muftic moves for summary judgment on four grounds. First,

Muftic argues that Third-Party Plaintiffs' claims against him are improperly asserted as third-party claims under Federal Rule of Civil Procedure 14, as those claims seek to impose direct as opposed to derivative liability.  Second, Muftic asserts that the Hill Group and Banyan released him of all claims.  Third, Muftic avers that the Federal securities law violations alleged in Counts I, II, III, and IV are time-barred under the relevant statutes of limitation and franchise agreements.  And fourth, Muftic contends that the relevant misrepresentations and omissions comprising the FDUTPA claim in Count VI took place outside Florida, and thus Third-Party Plaintiffs cannot maintain a cause of action.[4]

### A.      Evidentiary Objections Should Be Overruled for Purposes of This Motion

Third-Party Plaintiffs raise numerous evidentiary objections to the evidence advanced by Muftic in his Motion; the objections are not meritorious.  As Third-Party Plaintiffs have failed to show that the objected-to evidence would be inadmissible in evidence at trial, I recommend, for purposes of this motion for summary judgment only, that the objections be overruled.

Under Federal Rule of Civil Procedure 56(c)(2), Third-Party Plaintiffs may "object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  "Once a party makes a Rule 56(c)(2) objection, 'the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.'"  *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendments); *see also Jacoby v. Keers*, 779 F. App'x 676, 679 (11th Cir. 2019) ("When a Rule 56(c)(2) objection is made, it is within the district court's discretion to determine if the material used to support a fact can be presented in a form that would be admissible at trial.").

---

[4]  As noted above, Costanz, HT Franchising, HT Holdings, and Hadzipanajotis join in and adopt Muftic's arguments regarding general release and the statute of limitations.

Third-Party Plaintiffs first argue that Muftic is not competent to testify to the corporate relationship between HT Franchising and HT Holdings, Costanz's purpose in forming HT Holdings, and a transaction involving those entities. Third-Party Plaintiffs contend that Muftic does not have personal knowledge as to these matters. The objection should be overruled. In his declaration (ECF No. 295-2), Muftic attests that the information contained therein is based on his personal knowledge, he advised Costanz with respect to HT Franchising, and that he later became HT Franchising's CFO pursuant to a verbal agreement with Costanz. (*Id.* ¶¶ 3–4). For purposes of this Motion, this is sufficient to overcome Third-Party Plaintiffs' objection on competency.

Next, Third-Party Plaintiffs object to Costanz's declaration (ECF No. 295-1) in its entirety. According to Third-Party Plaintiffs, Costanz's declaration "contains no facts that show Mario Costanz is competent to testify on behalf of Happy Tax Franchising, LLC or Happy Tax Holdings, Corp., or to purportedly authenticate any Happy Tax Franchising, LLC or Happy Tax Holdings Corp. corporate record." (ECF No. 315 at 3). The argument borders on frivolous. Third-Party Plaintiffs' own Counterclaim and Third-Party Complaint identifies Costanz as the president and CEO of HT Franchising who "otherwise owned, controlled and dominated HT Franchising," and as the CEO and chairman of the board of HT Holdings, who "otherwise owned, controlled and dominated HT Holding." (ECF No. 125 at 17 ¶¶ 7–8). The District Court should reject Third-Party Plaintiffs' argument that HT Franchising's and HT Holdings's CEO is not competent to testify on their behalf. The District Court should likewise reject the argument that Costanz is not competent to authenticate the corporate records attached to his declaration (*i.e.*, the franchise agreements, area representative agreements, and amendments), where review of those documents reveals that Costanz executed those documents and their addenda on behalf of HT Franchising. *See, e.g.*, (ECF

No. 295-1 at 36, 57, 82, 119, 132, 152, 154, 177, 182, 192, 224, 229, 231, 234, 238, 242, 247, 251, 256, 259).

Third-Party Plaintiffs also contend that the franchise agreements, area representative agreements, and addenda are inadmissible hearsay.  (ECF No. 315 at 3–4).  It is elementary that contracts are verbal acts affecting the legal rights of the parties and thus contracts are not hearsay.  *See United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989) (noting that the granting of consent is not hearsay "but rather a verbal act, similar to the utterances involved in making a contract, to which the law attaches independent significance"); Fed. R. Evid. 801(c), Advisory Committee Notes ("The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."); *see also Moody v. Coliseum Psychiatric Ctr., LLC*, No. 5:04-CV-364 (DF), 2006 WL 1652281, at *6 (M.D. Ga. June 12, 2006) (citing *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992)) ("The contract between Med-Source and AAS is a verbal act that affects the legal rights of Moody vis-à-vis Med-Source, AAS, and Coliseum.  It is thus not hearsay and is not inadmissible on that basis.").  The objection should be overruled.

Further, Third-Party Plaintiffs object to the introduction of the eleven contracts attached to Costanz's declaration on the ground that they were not disclosed or produced during the re-opened discovery period.  Muftic responds that he produced these documents as part of his initial disclosures.  (ECF No. 332 at 3) (identifying the Bates numbers for the contracts attached to Costanz's declaration that were produced in connection with Muftic's initial disclosures).  The objection should be overruled.

For the foregoing reasons, the District Court should overrule Third-Party Plaintiffs'

evidentiary objections for purposes of this summary judgment motion.

**B.      Third-Party Liability Under Rule 14**

The Court turns to Muftic's legal arguments.  Muftic first argues that the Third-Party Complaint fails to advance claims against him that are properly predicated upon derivative or secondary liability, as required by Federal Rule of Civil Procedure 14.  Muftic asserts that the Third-Party Complaint instead alleges direct liability causes of action against him for his own wrongdoing and seeks direct as opposed to derivative damages; according to Muftic, the third-party claims asserted are not dependent upon the outcome of the claims Costanz and HT Franchising assert in their Third Amended Complaint.  Muftic contends that the Court may properly enter summary judgment on this ground, as, according to a treatise, a third-party defendant may advance such a defense when the defect is apparent on the face of a third-party complaint.

In their Response, Third-Party Plaintiffs take issue with Muftic's failure to move to strike the Third-Party Complaint, and in opposition argue that misjoinder is not a legal defense that can be raised to oppose the third-party claims on summary judgment.  According to Third-Party Plaintiffs, Federal Rule of Civil Procedure 21 makes clear that misjoinder is not grounds for dismissing an action.

In his Reply, Muftic asserts that Third-Party Plaintiffs acknowledge that their claims are improperly asserted as third-party claims, and that they have not shown good cause to permit untimely amendment to reframe their claims as counterclaims.  Muftic again points to a treatise in support of his argument that the Court can consider Rule 14 at the summary judgment stage.

Federal Rule of Civil Procedure 14 provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part

of the claim against it." Fed. R. Civ. P. 14(a)(1).  It is well-established that "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987).  Rather, Rule 14(a) "is intended to permit 'a defending party to join an absentee for the purpose of deflecting to that absentee all or part of its potential liability to the plaintiff on the underlying claim.'" *Osorio v. State Farm Bank, F.S.B.*, 278 F.R.D. 671, 673 (S.D. Fla. 2011) (quoting 3 Moore *et al.*, Moore's Federal Practice § 14.03(1) (3d ed. 2009)).  Indeed, "Rule 14 is most commonly used in cases 'in which the third-party defendant is obligated by contract to indemnify the defendant against the liability on which the plaintiff has sued,' for 'contribution among joint tortfeasors,' where subrogation is appropriate because 'the third-party defendant's liability arises from rights which the defendant acquires from the plaintiff,' or 'based on a breach of an express or implied warranty.'" *U.S. Distributors, Inc. v. Block*, No. 09-21635-CIV, 2010 WL 337669, at *2 (S.D. Fla. Jan. 22, 2010) (quoting 3 Moore *et al.*, Moore's Federal Practice §§ 14.03(1), 14.04(3)(b) (3d ed. 2009)).

Muftic is correct that he is not properly joined in this action as a third-party defendant.  As I noted in my Report and Recommendation (ECF No. 337) on Hadzipanajotis's motion for judgment on the pleadings, Third-Party Plaintiffs do not in this action seek through their third-party claims to hold Third-Party Defendants derivatively liable to Costanz and HT Franchising for Third-Party Plaintiffs' alleged breaches of franchise agreements, personal guaranties, promissory notes, or defamation.  I again note that it is clear that the third-party claims asserted in this case stand on their own as independent claims for direct liability for the economic loss Third-Party Plaintiffs allegedly suffered.  Third-Party Plaintiffs again cite to no authority to support their theory of third-party liability in this action, and they again otherwise fail to explain how the third-party

defendants' liability to them is in any way dependent on the outcome of the defamation claims and breach of contract claims in the Third Amended Complaint.  *See Olavarrieta*, 812 F.2d at 643 ("Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim.").

Thus, Third-Party Plaintiffs' third-party claims against Muftic are plainly improper under Federal Rule of Civil Procedure 14.

Nonetheless, the District Court should not on this basis enter summary judgment as to the third-party claims asserted against Muftic.  In his Motion, Muftic points the Court to the following language quoted from Wright and Miller's *Federal Practice and Procedure*: "[W]hen a defect is apparent on the face of the third-party complaint, the third-party defendant may advance the defense by a motion for summary judgment."  (ECF No. 294 at 5) (alteration in original) (quoting 6 Wright & Miller, Federal Practice & Procedure § 1455 (3d ed. 2022)).  However, that language is taken out of context from a paragraph discussing the assertion of affirmative defenses in third-party practice—the specific language quoted in briefing here is drawn from a sentence discussing the assertion of *statute of limitations* affirmative defenses on a motion for summary judgment:

> Similarly, the third-party defendant may assert in the answer that the statute of limitations has run on the third-party plaintiff's claim, or, when a defect is apparent on the face of the third-party complaint, the third-party defendant may advance the defense by a motion for summary judgment or a pretrial motion to dismiss.

Wright & Miller, *supra*, § 1455 (footnotes omitted).  Thus, the authority Muftic cites does not stand for the proposition for which he offers it.

Accordingly, I recommend that the Motion be denied to the extent Muftic seeks summary judgment on Rule 14 grounds.  Instead, I recommend that the District Court apply the same relief

to Muftic as to the Rule 14 arguments raised in the instant Motion as the District Court applies for Hadzipanajotis, when considering Hadzipanajotis's Motion for Judgment on the Pleadings (ECF No. 235) and the undersigned's Report and Recommendations (ECF No. 337) on the Rule 14 arguments raised in that motion.

### C. General Release of Claims

Next, Muftic, joined by HT Franchising, HT Holdings, Costanz, and Hadzipanajotis and pointing to language in Banyan's four amendments to Banyan's Area Franchising Agreement with HT Franchising, argues that Banyan released them from any and all claims that Banyan could have asserted against them.[5]  Muftic points to the same language in an amendment to the Hill Group's Area Franchising Agreement as releasing Muftic, Costanz, HT Franchising, HT Holdings, and Hadzipanajotis, from any claims that the Hill Group could have asserted against them.  According to Muftic, by the time the releases were executed, Banyan and the Hill Group could have asserted all their claims against Muftic, Costanz, HT Franchising, HT Holdings, and Hadzipanajotis, for Federal securities law and FDUTPA violations.[6]  Muftic asserts that it is undisputed that Banyan and the Hill Group both purchased their franchises and securities long before they signed the last releases in April of 2019.

Third-Party Plaintiffs respond that the general releases at issue here violate the FTC Franchise Rule, 16 C.F.R. § 436.9, which prohibits franchisors from requiring franchisees to waive

---

[5]  That Third-Party Plaintiffs have released Counter-Defendants and Third-Party Defendants of all claims is asserted as Muftic's Fourth Affirmative Defense.  (ECF No. 282 at 13).  Costanz, HT Franchising, and HT Holdings did not allege as an affirmative defense that Third-Party Plaintiffs released them of their claims.  *See* (ECF No. 208).  Nor did Hadzipanajotis, notwithstanding that his affirmative defenses have been stricken.  (ECF Nos. 155, 170).  However, "an omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense." *Edwards v. Fulton Cnty., Ga.*, 509 F. App'x 882, 887 (11th Cir. 2013).  Third-Party Plaintiffs have not here objected to the assertion of this defense on prejudice grounds.
[6]  Muftic's Motion makes no mention of the breach of contract and fraudulent inducement claims asserted as Counts VII and VIII of the Counterclaim and Third-Party Complaint.

reliance on representations made in disclosure documents or in exhibits or amendments. Third-Party Plaintiffs also argue that their claims did not accrue before the most recent releases were executed in April of 2019. Rather, Third-Party Plaintiffs assert that their claims did not accrue before September 17, 2019.

In his Reply, Muftic argues that the releases in the amendments at issue here are releases of claims, not waivers of reliance on representations in the Franchise Disclosure Documents, and that the releases were made in exchange for consideration. Muftic also argues that Third-Party Plaintiffs could have brought their claims prior to April of 2019, as the alleged fraudulent conduct all occurred before that time.

First, the Court notes that there is no dispute that Third-Party Plaintiffs executed the general releases contained in the amendments Muftic relies upon. Having recommended that the District Court overrule Third-Party Plaintiffs' evidentiary objections, there is no genuine dispute that Banyan executed amendments that contained general releases, which state that Banyan

> fully and finally release[d] and forever discharge[d] [HT Franchising], its past and present agents, employees, officers, directors, members, franchisees, Area Representatives, successors, assigns and affiliates (collectively 'Franchisor Released Parties') from any and all claims which Area Representative could assert against Franchisor Released Parties or any of them up through and including the Effective Date of this Amendment.

*E.g.*, (Muftic SOF ¶ 18) (quoting (ECF No. 295-1 at 238)); *see also* (Muftic SOF ¶¶ 19–21). The last of those amendments was executed on April 2, 2019. (Muftic SOF ¶ 21); (ECF No. 295-1 at 250). There is also no genuine dispute that the Hill Group executed amendments containing materially similar release language to that above, with the most recent amendment executed on April 18, 2019. (Muftic SOF ¶ 23); (ECF No. 295-1 at 259).

Second, the Court finds that the general releases at issue here do not violate 16 C.F.R. § 436.9, as Third-Party Plaintiffs argue. That regulation provides, in relevant part, as follows:

It is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act for any franchise seller covered by part 436 to: . . .

(h) Disclaim or require a prospective franchisee to waive reliance on any representation made in the disclosure document or in its exhibits or amendments. Provided, however, that this provision is not intended to prevent a prospective franchisee from voluntarily waiving specific contract terms and conditions set forth in his or her disclosure document during the course of franchise sale negotiations.

16 C.F.R. § 436.9(h).

Here, the general releases at issue do not require Third-Party Plaintiffs to "waive reliance on any representation made in the disclosure document or in its exhibits or amendments." Third-Party Plaintiffs also assert that HT Franchising's franchise agreements and area representative agreements provide: "However, this release does not apply to any claim you may have arising from representations in our Franchise Disclosure Document," (ECF No. 315 at 5) (quoting (ECF No. 295-2 at 23)).  However, the language Third-Party Plaintiffs rely upon is present in *Muftic*'s area representative agreement executed with HT Franchising.  To the extent any of Third-Party Plaintiffs' executed agreements contain similar language, *e.g.*, (ECF No. 295-1 at 80), the later general releases in the April 2019 amendments do not contain the limiting language.

Nonetheless, and third, the uncontroverted facts *Muftic* has advanced here preclude the entry of summary judgment on the ground that the general releases bar Third-Party Plaintiffs' claims.  As applicable here, "[u]nder Florida law, a general release 'will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution."[7] *Hold v. Manzini*, 736 So. 2d 138, 141 (Fla. Dist. Ct. App. 1999) (quoting *Scheck v. Burger King Corp.*, 756 F. Supp. 543, 547 (S.D. Fla. 1991)).  Thus, and "[c]onversely, a general release . . . does not bar a claim which had not yet accrued when the release was executed." *Id.*

---

[7] The agreements at issue appear to be governed by Florida law.  (ECF No. 295-1 at 33, 78, 116, 138 174, 221).

The Court must determine if there is a genuine dispute of material fact whether Third-Party Plaintiffs' operative claims accrued prior to April 2019.[8]  Muftic, Costanz, Hadzipanajotis, HT Franchising, and HT Holdings, are movants who bear the burden of proof on this issue at trial. Neither side has briefed the issue sufficiently.

In his Motion, Muftic, joined by Costanz, Hadzipanajotis, HT Franchising, and HT Holdings, asserts that Third-Party Plaintiffs could have brought their claims (*i.e.*, that their claims accrued) prior to April 2019, but Muftic does not identify when the individual claims actually accrued.  Muftic asserts in his Motion only that Banyan and the Hill Group purchased their Happy Tax franchises and their securities in HT Holdings in 2017 and 2018, prior to April 2019.  Thus, Muftic argues that Third-Party Plaintiffs could have asserted their claims prior to the execution of the general releases, as the alleged fraudulent conduct occurred before April 2019.  Implicit in Muftic's argument is an assumption, unsupported by citation to authority, that Third-Party Plaintiffs' claims accrued at the time the allegedly fraudulent conduct occurred, that is, apparently when the investments were made.

But, at least for purposes of the statute of limitations, a Federal securities fraud private cause of action does not necessarily accrue when the alleged fraud occurs.  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (holding, within the context of the statute of limitations for private causes of action for Federal securities fraud, that a "cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first"); *cf. Gabelli v. S.E.C.*, 568 U.S. 442,

---

[8]  In construing a general release, courts apply "the principles governing the construction of contracts."  *Martinez v. Preferred Care Partners, Inc.*, 223 So. 3d 1117, 1118 (Fla. Dist. Ct. App. 2017).  The Parties do not dispute the construction of the general release at issue here—in their briefing, both sides appear to construe the release as barring claims that Third-Party Plaintiffs could have asserted by the time the last releases were signed, in April 2019.  The Court agrees with this construction.

448 (2013) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (noting, within the context of the statute of limitations for SEC enforcement actions, but stating the rule for claims arising under Federal law generally, that "the 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action'").

Considering the facts advanced by Muftic on the issue, which are uncontroverted, those facts fail to demonstrate that Third-Party Plaintiffs' causes of action accrued before the execution of the latest releases.  Here, Muftic relies on undisputed evidence from (i) May of 2019 that Drago believed Costanz was a criminal and a fraud, and that the business was fraudulent, (Muftic SOF ¶ 25) (citing Deposition of Monica Poirier at 20:21–21:5, (ECF No. 295-3 at 17–18)), (ii) evidence from around the same time that Hill told Poirier that HT Franchising's financial statements or franchise disclosure documents were fraudulent, (*id.*) (citing Deposition of Monica Poirier at 277:10–280:16, (ECF No. 295-3 at 17–18)), and (iii) a June 2019 text message from Drago to Poirier, wherein Drago asserts that a class action would be filed against Muftic and Costanz for misrepresentation and fraud, (*id.*) (quoting (ECF No. 295-4)).  Notwithstanding that Muftic resigned from HT Franchising and HT Holdings 6 months before April 2019, and Third-Party Plaintiffs purchased their franchises and securities prior to April 2019, the text messages and conversations Muftic relies on, with respect to the general release issue, all occurred *after the April 2019 releases were signed*.[9]  I therefore find that the evidence Muftic relies upon would not entitle him to a directed verdict if not controverted at trial, because a reasonable jury could still find for Third-Party Plaintiffs under the timeline presented here.  Thus, summary judgment is not proper on the ground that Third-Party Plaintiffs contractually released Muftic, Costanz, Hadzipanajotis,

---

[9]  Indeed, Muftic improperly asserts as a material fact, argument that by July 2019, Hill and Drago "had discovered the facts constituting the federal securities violations they are claiming here (or given their concerns, would have discovered the facts constituting the violations had they been reasonably diligent)."  (Muftic SOF ¶ 26).  The Court construes this paragraph of Muftic's statement of material fact as argument and disregards it as evidence.

HT Franchising, and HT Holdings of their claims.  *See Fitzpatrick*, 2 F.3d at 1115; *Four Parcels*, 941 F.2d at 1438.

Accordingly, the undersigned recommends that Muftic's Motion be denied to the extent it seeks the entry of summary judgment on the ground that the general releases signed in April 2019 bar Third-Party Plaintiffs' claims.

### D.     Statute of Limitations

Next, Muftic, joined by HT Franchising, HT Holdings, Costanz, and Hadzipanajotis, argue that Counts I, II, III, and IV are time-barred under the relevant statutes of limitations.[10]

### 1.     Count I

In Count I, Third-Party Plaintiffs assert that Muftic, Hadzipanajotis Costanz, HT Franchising, and HT Holdings, as "issuers" of securities, made untrue statements of material fact and omitted to state material facts required to be stated or necessary to make the statements not misleading, in offering and selling securities to Third-Party Plaintiffs, who relied on the statements to their detriment, all in violation of Section 4(a)(2) and 4A(c) of the '33 Act, 15 U.S.C. §§ 77d(a)(2), 77d-1(c), and Regulation CF, 17 C.F.R. §§ 227.100 *et seq.*  In their Response, Third-Party Plaintiffs do not oppose Muftic's argument that Count I is barred under the statute of limitations.  (ECF No. 315 at 6 n.3).

Accordingly, as it is undisputed that Third-Party Plaintiffs purchased the securities at issue (*i.e.*, SAFEs) in December 2017 and the Counterclaim and Third-Party Complaint was filed more than 3 years later, and upon Third-Party Plaintiffs' decision not to oppose Muftic's statute-of-limitations argument with respect to Count I, the undersigned recommends that the Motion be

---

[10]  That Third-Party Plaintiffs' claims are barred by the statute of limitations is asserted as Muftic's First Affirmative Defense (ECF No. 282 at 12).  Costanz, Hadzipanajotis, HT Franchising, and HT Holdings did not raise this defense in their answers.  *See* (ECF No. 208); (ECF No2. 155, 170).  No objection has been raised by Third-Party Plaintiffs to the presentation of this defense by Costanz, Hadzipanajotis, HT Franchising, and HT Holdings.

granted with respect to Count I, and that the District Court enter summary judgment on Count I as to Muftic, Costanz, HT Franchising, HT Holdings, and Hadzipanajotis.

### 2.       Counts II, III, and IV

In Count II, Third-Party Plaintiffs assert a claim against Muftic, Costanz, Hadzipanajotis, HT Franchising, and HT Holdings under Section 10(b) of the '34 Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), promulgated thereunder.   In Count III, Third-Party Plaintiffs assert a claim against Muftic, Costanz, Hadzipanajotis, HT Franchising, and HT Holdings under Section 10(b) of the '34 Act and Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), promulgated thereunder.  In Count IV, Third-Party Plaintiffs seek to impose control person liability against Hadzipanajotis, Costanz, Muftic, HT Franchising, and HT Holding, pursuant to Section 20(a) of the '34 Act, 15 U.S.C. § 78t(a).

With respect to Counts II and III, Muftic first asserts that Third-Party Plaintiffs discovered the facts forming the basis of their claims in Counts II and III in July of 2019, and thus Counts II and III are untimely as they were brought more than 2 years later, on September 17, 2021.  (ECF No. 294 at 8) (citing 28 U.S.C. § 1658(b)).  Muftic reiterates in his Reply that Third-Party Plaintiffs knew of the facts underlying their claims more than 2 years before Third-Party Plaintiffs filed their Counterclaim and Third-Party Complaint.  Second, Muftic asserts in passing that Counts II and III are barred by the contractually shortened limitations period in agreements Third-Party Plaintiffs executed with HT Franchising.

With respect to Count IV, Muftic asserts that, because the violations underlying Third-Party Plaintiffs' claim for control-person liability are time-barred (*i.e.*, Counts II and III), Count IV is also time-barred.

Third-Party Plaintiffs respond that they have adduced evidence that they did not know nor could they have known *all* the facts constituting the securities fraud violations alleged in Counts II and III, before September 17, 2019.  Third-Party Plaintiffs do not respond to Muftic's argument regarding the contractually shortened limitations period.

Title 28, United States Code, Section 1658 provides, in relevant part, that

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
> > (1) 2 years after the discovery of the facts constituting the violation; or
> > (2) 5 years after such violation.

28 U.S.C. § 1658(b).  As noted above, the limitations period begins to run, and Federal securities law violation causes of action "accrue[] (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Merck*, 559 U.S. at 637.  Thus, in explaining the operation of the statute of limitations in § 10(b) cases, the Eleventh Circuit has noted that, even if the plaintiff "did not in fact discover the information necessary to plead each element of a proper complaint, as long as a reasonably diligent plaintiff would have had sufficient information to adequately plead an effective complaint more than two years prior to when this action was commenced, [the plaintiff's] claim would still be time barred." *100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*, 596 F. App'x 744, 748 (11th Cir. 2014).

First, Muftic has failed to substantiate his assertion that the Court should apply the contractually shortened 1-year limitations period to bar Third-Party Plaintiffs' claims.  True, it is undisputed that the franchise agreement and area representative agreement executed by Banyan and Drago, and the area representative agreement executed by the Hill Group with Hill as guarantor, all contain a contractual limitations period, requiring Third-Party Plaintiffs to bring their

claims, "if at all, within one (1) year of the occurrence of the facts giving rise to such Claims." (Muftic SOF ¶¶ 9, 12, 14).  However, the contractual language, which bases the running of the limitations period on the occurrence of the facts underlying the claim, conflicts with § 1658(b), which imposes a discovery rule for the statute of limitations.  Muftic's argument, that the Parties' agreement to shorten the statutory period may be enforced notwithstanding this conflict, is not supported by citation to authority.[11]

Nonetheless, summary judgment is proper as to Counts II, III, and IV, on the ground that the statute of limitations bars those claims.

Here, Muftic has adduced undisputed evidence that in May and June of 2019, Third-Party Plaintiffs suspected that the Happy Tax franchise was fraudulent, as Third-Party Plaintiffs do not contest that Hill and Drago separately told Poirier that they believed the Happy Tax franchise was fraudulent and that HT Franchising's financial statements or financial disclosure documents were fraudulent, respectively.  *See* (Muftic SOF ¶ 25) (citing Deposition of Monica Poirier at 20:21–21:5, (ECF No. 295-3 at 17–18); Deposition of Monica Poirier at 277:10–280:16, (ECF No. 295-3 at 17–18)) (quoting (ECF No. 295-4)).  These communications show that Hill and Drago were aware, *months* before September 17, 2019, of the potential (in)accuracy of HT Franchising's and HT Holdings's financial statements and franchise disclosure documents.  That Third-Party

---

[11]  As District Judge Robert N. Scola, Jr., has noted:

> "Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk."  *Sideridraulic System SpA v. Briese Schiffahrts GmbH & Co. KG*, No. 10-0715, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (citations and quotations omitted).  "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."  *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.).  In short, the Court will not do parties' research for them.  *Id.*

*Adderley v. Three Angels Broad. Network, Inc.*, No. 18-23362-CIV, 2019 WL 7189887, at *4 (S.D. Fla. Dec. 26, 2019).

Plaintiffs may not have, in fact, discovered *all* the information necessary to plead the elements of their claims is of no moment; the limitations period does not begin to run *only* when a securities fraud plaintiff in fact discovers the facts constituting the violation.  *Merck*, 559 U.S. at 637.

Based on the foregoing, I find that Muftic has met his initial burden of an affirmative showing that no reasonable jury could find for Third-Party Plaintiffs on the issue of the statute of limitations if Muftic's evidence is uncontroverted at trial.

The burden shifts to Third-Party Plaintiffs to "come forward with evidence sufficient to call into question the inference created by the movant's evidence[.]"  *Fitzpatrick*, 2 F.3d at 1116. Third-Party Plaintiffs fail to do so.  They rely on conclusory assertions in Hill's and Drago's affidavits attesting that Third-Party Plaintiffs could not have brought their claims prior to April 2019 because Drago and Hill did not know nor could have known of the specific statements or omissions that were misleading, prior to September 17, 2019.   (ECF No. 315 at 6) (citing (Response SOF ¶ 37); (Declaration of Tricia Drago ¶ 6, (ECF No. 316 at 30–39)); (Declaration of Jamey Hill ¶ 6, (ECF No. 316 at 41–49)).  However, and again, the statute of limitations does not begin to run only when Third-Party Plaintiffs in fact knew of all the facts necessary to plead their claims.

In any event, *Third-Party Plaintiffs*' own evidence is fatal here with respect to the statute of limitations.  In his Reply, Muftic points the Court to Third-Party Plaintiffs' evidence that, on September 5, 2019, they (Drago and Hill, among others) wrote to Costanz, Poirier, and other HT Franchising management and board members "to express [their] collective concern with Happy Tax Franchising, LLC's operational and financial instability, leadership's unwillingness to provide Happy Tax Franchising, LLC internal financial information, the accuracy of statements made in Happy Tax Franchising, LLC's [Franchise Disclosure Documents], and the accuracy and validity

of Happy Tax Franchising, LLC's and Happy Tax Holdings Corp.'s 'consolidated' purported audited financial statements."  (ECF No. 332 at 6–7); (Response SOF ¶ 40); (Muftic Reply SOF ¶ 40).  This evidence is not disputed.  Thus, not only were Third-Party Plaintiffs aware of the potential (in)accuracy of HT Franchising's and HT Holdings's financial statements and franchise disclosure documents, as noted above, they also sought an audience with Third Party Defendants regarding the very issues that underlie their current claims.

Based on the evidence both sides rely upon, which is undisputed, "the combined body of evidence presented . . . is still such that the [Muftic] would be entitled to a directed verdict at trial" with respect to the statute of limitations.  *Fitzpatrick*, 2 F.3d at 1116.

Accordingly, the undersigned recommends that the Motion be granted to the extent it requests the entry of summary judgment on Counts II, III, and IV on statute of limitations grounds.[12]

### E.    FDUTPA Claim

Last, Muftic argues that Third-Party Plaintiffs cannot establish a FDUTPA violation in Count VI because Third-Party Plaintiffs are out-of-state consumers, and there is no jurisdictional nexus between the unfair and deceptive conduct alleged and the State of Florida.  According to Muftic, the deceptive or unfair conduct, consisting of inaccurate disclosures and material omissions in HT Franchising's franchise disclosure documents, did not occur within Florida, as none of HT Franchising's franchise-supporting employees were based in Florida.  Rather, Muftic asserts that HT Franchising was only a Florida LLC with a WeWork location in Miami Beach,

---

[12] Count IV of Third-Party Plaintiffs' Counterclaim and Third-Party Complaint incorporates as underlying violations only Counts II and III.  *See* (ECF No. 125 at 63 ¶ 145).  Thus, the limitations period applicable to Counts II and III applies to Count IV, and summary judgment is proper as to Count IV for the same reasons as Counts II and III.  *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 n.2 (2d Cir. 1993) ("Because Section 20 merely creates a derivative liability for violations of other sections of the Act, claims under Section 20 are governed by the limitations periods for those other sections.").

Florida, and that Muftic and HT Franchising's officers and attorneys never did business in, and Third-Party Plaintiffs' franchise areas were not located in, Florida.

Third-Party Plaintiffs respond that FDUTPA is not limited to Florida consumers or to unfair or deceptive conduct occurring within Florida. Third-Party Plaintiffs argue that the evidence they adduce establishes a sufficient nexus between Florida and Muftic, as HT Franchising identified Miami Beach, Florida as its principal place of business or corporate headquarters in pleadings related to this action, in uniform franchise registration applications filed with state regulatory agencies, in unit and area franchise disclosure documents, in franchise agreements and area representative agreements, and in corporate records filed with the State of Florida. Third-Party Plaintiffs also contend that HT Franchising solicited and sold franchises and area representative agreements, and sold unregistered securities, in Florida to Florida residents.

As the courts in this District have explained "Florida's Deceptive and Unfair Trade Practices Act ('FDUTPA') is a consumer protection law intended to 'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce.'" *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (quoting Fla. Stat. § 501.202(2)). The Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1). The Florida legislature has provided that, in construing § 501.204(1) of FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. § 501.204(2).

Muftic is correct that "[t]he law in Florida on FDUTPA's applicability to out-of-state consumers is somewhat unclear." *F.T.C. v. Info. Mgmt. F., Inc.*, No. 6:12-CV-986-ORL-31, 2013 WL 3323635, at *6 (M.D. Fla. June 28, 2013) (citing *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999); *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 439 (Fla. Dist. Ct. App. 1999); *Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. Dist. Ct. App. 2000)).

The Florida District Courts of Appeal have held that "there are no geographical or residential restrictions contained in the express language of section 501.202." *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000). Courts in the Southern District of Florida that have considered the applicability of FDUTPA claims brought by out-of-state consumers "have followed *Millennium* and held that 'FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida.'" *Bank of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2897410, at *9 (S.D. Fla. May 18, 2016) (quoting *Karhu v. Vital Pharma., Inc.*, No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013)); *see also Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *6 (S.D. Fla. May 2, 2012) (following *Millennium*, 761 So. 2d 1256) ("The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers.").

Indeed, as the state court in *Millenium* explained:

> As we read FDUTPA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation. Therefore, where the allegations in this case reflect that the offending conduct occurred entirely within this state, we can discern no legislative intent for the Department to be precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state.

*Millennium*, 761 So. 2d at 1262 (emphasis added).

Courts in this District have applied *Millenium* broadly.  Indeed, in *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, Chief District Judge Cecilia M. Altonaga noted that "nothing in *Millennium* suggests that the FDUTPA applies only when conduct occurs entirely within Florida. To the contrary, *Millennium* highlighted the broad statutory language used in the FDUTPA."  2012 WL 1570057, at *6.  Thus, Chief Judge Altonaga concluded that "[g]iven the FDUTPA's broad, plain language, whether the FDUTPA applies to Defendants requires an inquiry into the Court's personal jurisdiction over them."  *Id.*  Chief Judge Altonaga, in *Barnext Offshore*, denied the defendants' motion for summary judgment, as the defendants "fail[ed] to explain why, if at all, personal jurisdiction is lacking over them such that the FDUTPA does not apply," and because the defendants had waived the challenge to personal jurisdiction by not raising it.  *Id.  Barnext Offshore*'s broad application of *Millenium* has been followed in other cases in this District.  *See Buckley v. Moore*, No. 20-CIV-61023, 2021 WL 3173185, at *8–9 (S.D. Fla. July 26, 2021) (Ruiz, J.) (following *Barnext Offshore*'s broad reading of *Millenium* and denying motion to dismiss FDUTPA claim where the motion failed to challenge the court's personal jurisdiction over the defendant as to the FDUTPA claim).

Notwithstanding the evidence advanced here by both sides with respect to the nexus of the FDUTPA claim, the Court has already found that Muftic waived his objection to personal jurisdiction by failing to raise that objection in the first of his motions brought under Federal Rule of Civil Procedure 12(b).  Indeed, the Court denied Muftic's motion to dismiss for lack of personal jurisdiction on that basis.  *See* (ECF Nos. 226, 241, 273).

Accordingly, I recommend that the motion be denied to the extent it seeks the entry of summary judgment on the FDUTPA claim asserted against Muftic.

## IV.     RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Third-Party Defendant Theodore Muftic's Motion for Summary Judgment (ECF No. 294) be **GRANTED, in part,** and **DENIED, in part,** as set forth above.

The undersigned further **RECOMMENDS** that the District Court enter summary judgment as to Counts I, II, III, and IV of the Counterclaim and Third-Party Complaint, asserted against Muftic, Costanz, Hadzipanajotis, HT Franchising, and HT Holdings.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 25th day of January, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE


cc:     Honorable Federico A. Moreno
        Counsel of Record